**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE THOMAS J. AQUILINO, JR., JUDGE**

| | |
|---|---|
| **AD HOC SHRIMP TRADE ACTION COMMITTEE,** | |
| Plaintiff, | |
| **and** | |
| **AMERICAN SHRIMP PROCESSORS ASSOCIATION,** | |
| Plaintiff-Intervenor, | |
| **and** | |
| **MEGAA MODA PRIVATE LIMITED,** | |
| Consolidated-Plaintiff, | **PUBLIC VERSION** |
| v. | |
| **UNITED STATES,** | **Consol. Court No. 23-00202** |
| Defendant, | |
| **and** | |
| **MEGAA MODA PRIVATE LIMITED,** | |
| Defendant-Intervenor, | |
| **and** | |
| **AMERICAN SHRIMP PROCESSORS ASSOCIATION, et al.,** | |
| Defendant-Intervenors. | |

**RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD OF THE AD HOC SHRIMP TRADE ACTION COMMITTEE AND THE AMERICAN SHRIMP PROCESSORS ASSOCIATION**

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade,

Plaintiff Ad Hoc Shrimp Trade Action Committee and Plaintiff-Intervenor the American Shrimp

Processors Association (collectively, the "Domestic Industry") hereby move for judgment on the

agency record with respect to the final results of the U.S. Department of Commerce's

("Commerce") seventeenth administrative review of the antidumping duty order on certain frozen warmwater shrimp from India.  The challenged determination was published in the *Federal Register* as *Certain Frozen Warmwater Shrimp From India: Final Results of Antidumping Duty Administrative Review; 2021-2022*, 88 Fed. Reg. 60,431 (Dep't Commerce Sept. 1, 2023) ("*Final Results*").

For the reasons explained in the accompanying memorandum, the Domestic Industry respectfully moves that this Court hold that the contested portions of the *Final Results* are not supported by substantial evidence or otherwise not in accordance with law.  The Domestic Industry further moves for the Court to remand this matter to Commerce for disposition consistent with the order and opinion of the Court.

Respectfully submitted,

/s/ Zachary J. Walker

| | |
|---|---|
| Roger B. Schagrin | Zachary J. Walker |
| Nicholas J. Birch | Nathaniel Maandig Rickard |
| | |
| **SCHAGRIN ASSOCIATES** | **PICARD KENTZ & ROWE LLP** |
| 900 Seventh Street NW, Suite 500 | 1750 K Street NW, Suite 800 |
| Washington, DC 20001 | Washington, D.C. 20006 |
| | |
| *Counsel to the American Shrimp* | *Counsel to the Ad Hoc Shrimp Trade* |
| *Processors Association* | *Action Committee* |

Dated: February 6, 2024

2

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE THOMAS J. AQUILINO, JR., JUDGE

| | |
|---|---|
| AD HOC SHRIMP TRADE ACTION COMMITTEE, | |
| Plaintiff, | |
| and | |
| AMERICAN SHRIMP PROCESSORS ASSOCIATION, | |
| Plaintiff-Intervenor, | |
| and | |
| MEGAA MODA PRIVATE LIMITED, | |
| Consolidated-Plaintiff, | Consol. Court No. 23-00202 |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| and | |
| MEGAA MODA PRIVATE LIMITED, | |
| Defendant-Intervenor, | |
| and | |
| AMERICAN SHRIMP PROCESSORS ASSOCIATION, et al., | |
| Defendant-Intervenors. | |

**PROPOSED ORDER**

Upon consideration of the Rule 56.2 Motion for Judgment on the Agency Record filed by the Ad Hoc Shrimp Trade Action Committee and the American Shrimp Processors Association, and upon all other papers and proceedings had herein, it is hereby,

**ORDERED** that the Rule 56.2 Motion for Judgment on the Agency Record is granted; and it is further

**ORDERED** that this case be remanded to the U.S. Department of Commerce for disposition consistent with the Court's opinion;

**SO ORDERED.**

_____
The Honorable Thomas J. Aquilino, Jr. Judge

Dated: _____
New York, New York

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE THOMAS J. AQUILINO, JR., JUDGE**

| | |
|---|---|
| **AD HOC SHRIMP TRADE ACTION COMMITTEE,** | |
| Plaintiff, | |
| **and** | |
| **AMERICAN SHRIMP PROCESSORS ASSOCIATION,** | |
| Plaintiff-Intervenor, | |
| **and** | |
| **MEGAA MODA PRIVATE LIMITED,** | **PUBLIC VERSION** |
| Plaintiff, | |
| v. | **Consol. Court No. 23-00202** |
| **UNITED STATES,** | |
| Defendant, | |
| **and** | |
| **MEGAA MODA PRIVATE LIMITED,** | |
| Defendant-Intervenor, | |
| **and** | |
| **AMERICAN SHRIMP PROCESSORS ASSOCIATION, et al.,** | |
| Defendant-Intervenors. | |

**BRIEF IN SUPPORT OF THE RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD OF THE AD HOC SHRIMP TRADE ACTION COMMITTEE AND THE AMERICAN SHRIMP PROCESSORS ASSOCIATION**

**SCHAGRIN ASSOCIATES**
900 Seventh Street NW, Suite 500
Washington, DC 20001

*Counsel to the American Shrimp Processors Association*

Dated: February 6, 2024

**PICARD KENTZ & ROWE LLP**
1750 K Street NW, Suite 800
Washington, D.C. 20006

*Counsel to the Ad Hoc Shrimp Trade Action Committee*

PUBLIC VERSION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................ 1

STATEMENT PURSUANT TO USCIT RULE 56.2(c) ................................................ 1

    A.    Administrative Determination to Be Reviewed ................................................ 1

    B.    Issues of Law and Fact Presented ................................................................... 2

STATEMENT OF FACTS ............................................................................................... 2

STANDARD OF REVIEW ............................................................................................. 10

ARGUMENT .................................................................................................................... 11

    I.    Determination of Normal Value ...................................................................... 11

    II.    Commerce Erred in Calculating the Normal Value of Megaa Moda's Subject Merchandise ....................................................................................... 13

        A.    Documentary Evidence Shows that Megaa Moda Knew or Should Have Known that Certain Sales Were Not Sold for Consumption in India ....... 13

        B.    Commerce's Analysis of Record Evidence Is Unreasonable and Unsupported by Substantial Evidence ..................................................... 18

    III.    Commerce Must Revise the Dumping Margin Assigned to the Non-Selected Companies Under Review ................................................................................. 23

CONCLUSION AND PRAYER FOR RELIEF ............................................................. 23

# TABLE OF AUTHORITIES

## Cases

*Allegheny Ludlum Corp. v. United States*,
215 F. Supp. 2d 1322 (Ct. Int'l Trade 2000) ........................................................................ 12

*Coal. of Am. Flange Producers v. United States*,
448 F. Supp. 3d 1340 (Ct. Int'l Trade 2020) ........................................................................ 21

*Consol. Edison Co. v. NLRB*,
305 U.S. 197 (1938) ............................................................................................................... 10

*INA Walzlager Schaeffler KG v. United States*,
957 F. Supp. 251 (Ct. Int'l Trade 1997) ................................................................. 12, 13, 22

*Itochu Bldg. Prods., Co. v. United States*,
163 F. Supp. 3d 1330 (Ct. Int'l Trade 2016) ........................................................................ 21

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ............................................................................................. 19

*Matsushita Elec. Indus. Co. v. United States*,
750 F.2d 927 (Fed. Cir. 1984) ............................................................................................... 11

*Nippon Steel Corp. v. United States*,
301 F. Supp. 2d 1355 (Ct. Int'l Trade 2003) ........................................................................ 11

*Stupp Corp. v. United States*,
359 F. Supp. 3d 1293 (Ct. Int'l Trade 2019) ........................................................................ 13

*Timken U.S. Corp. v. United States*,
421 F.3d 1350 (Fed. Cir. 2005) ............................................................................................. 21

*Universal Camera Corp. v. NLRB*,
340 U.S. 474 (1951) ............................................................................................................... 11

*Z.A. Sea Foods Pvt. Ltd. v. United States*,
569 F. Supp. 3d 1338 (Ct. Int'l Trade 2022) ................................................................. 10, 21

*Z.A. Sea Foods Pvt. Ltd. v. United States*,
606 F. Supp. 3d 1335 (Ct. Int'l Trade 2022) ........................................................................ 22

## Statutes

19 U.S.C. § 1516a ...................................................................................................................... 10

19 U.S.C. § 1673 .................................................................................................................11

19 U.S.C. § 1675 ................................................................................................................. 3

19 U.S.C. § 1677b ......................................................................................................... *passim*

19 U.S.C. § 1677f-1 ............................................................................................................ 3

## Regulations

19 C.F.R. § 351.404 ........................................................................................................4-5

## Administrative Determinations

*Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation;*
     *Opportunity To Request Administrative Review and Join Annual Inquiry Service*
     *List*, 87 Fed. Reg. 7,112 (Dep't Commerce Feb. 8, 2022) ......................................... 3

*Canned Pineapple Fruit from Thailand*, 68 Fed. Reg. 65,247 (Dep't Commerce
     Nov. 19, 2003) .................................................................................................... 12

*Certain Frozen Warmwater Shrimp From India: Final Results of Antidumping Duty*
     *Administrative Review; 2021-2022*, 88 Fed. Reg. 60,431 (Dep't Commerce
     Sept. 1, 2023) ................................................................................................. *passim*

*Certain Frozen Warmwater Shrimp From India: Preliminary Results of Antidumping*
     *Duty Administrative Review; 2021-2022*, 88 Fed. Reg. 13,430 (Dep't Commerce
     Mar. 3, 2023) ........................................................................................................ 8

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
     87 Fed. Reg. 21,619 (Dep't Commerce Apr. 12, 2022) ............................................ 3

*Notice of Amended Final Determination of Sales at Less Than Fair Value and*
     *Antidumping Duty Order: Certain Frozen Warmwater Shrimp from India*,
     70 Fed. Reg. 5,147 (Dep't Commerce Feb. 1, 2005) ................................................ 1

## INTRODUCTION

Plaintiff, Ad Hoc Shrimp Trade Action Committee ("AHSTAC"), and Plaintiff-Intervenor, the American Shrimp Processors Association ("ASPA") (collectively, the "Domestic Industry"), respectfully submit this brief in support of their motion for judgment on the agency record pursuant to USCIT Rule 56.2.  For the reasons set forth below, the challenged determination must be remanded because the U.S. Department of Commerce ("Commerce") violated the statute when it included certain sales that were not made for consumption in the home market in determining the normal value of Megaa Moda Private Limited's ("Megaa Moda") sales of the subject merchandise.

## STATEMENT PURSUANT TO USCIT RULE 56.2(c)

### A.    Administrative Determination to Be Reviewed

The Domestic Industry contests the final results issued by Commerce to conclude the agency's seventeenth administrative review of the antidumping duty order on certain frozen warmwater shrimp from India.[1]  The challenged determination was published in the *Federal Register* on September 1, 2023 as *Certain Frozen Warmwater Shrimp From India: Final Results of Antidumping Duty Administrative Review; 2021-2022*, 88 Fed. Reg. 60,431 (Dep't Commerce Sept. 1, 2023) ("*Final Results*"), P.R. 205.[2]  The determinations, findings, and conclusions

---

[1]  The underlying antidumping duty order was published by Commerce in 2005 and continued on multiple occasions based on determinations by Commerce and the U.S. International Trade Commission.  *See Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp from India*, 70 Fed. Reg. 5,147 (Dep't Commerce Feb. 1, 2005).

[2]  Documents on the administrative record are referred to within this brief by the document number assigned in the administrative record index filed by Commerce with the Court on November 8, 2023.  *See* ECF 33.  Confidential documents are identified with the rubric "C.R." followed by the relevant document number while public documents and public versions

PUBLIC VERSION

challenged in this appeal are set out primarily in the "Issues and Decision Memorandum" accompanying the *Final Results*.  *See* Issues and Decision Memorandum for the Final Results of the 2021-2022 Antidumping Duty Administrative Review of Certain Frozen Warmwater Shrimp from India (Aug. 25, 2023) ("IDM"), P.R. 202.

The *Final Results* apply to entries of subject merchandise made from February 1, 2021 through January 31, 2022 (the "POR").  *Final Results*, 88 Fed. Reg. at 60,431-32.

### B.   Issues of Law and Fact Presented

The Domestic Industry seeks judgment on the agency record with respect to the following two issues:

1) Whether Commerce's determination of the normal value of Megaa Moda's sales of subject merchandise was supported by substantial evidence and otherwise in accordance with law when the agency included in its calculation of normal value the prices of certain sales that were not sold for consumption in India.

2) If Commerce's determination of normal value was not supported by substantial evidence or was otherwise contrary to law, whether Commerce must revise the dumping margins assigned to Megaa Moda and the non-selected companies under review after any remand ordered in this action.

### STATEMENT OF FACTS

Commerce published a notice of opportunity to request administrative review of the antidumping duty order on certain frozen warmwater shrimp from India in the *Federal Register*

---

of confidential documents are identified by the rubric "P.R." followed by the relevant document number.

on February 8, 2022.[3]  *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review and Join Annual Inquiry Service List*, 87 Fed. Reg. 7,112 (Dep't Commerce Feb. 8, 2022), P.R. 1.  Based on review requests submitted by AHSTAC and ASPA, as well as other interested parties, Commerce initiated an administrative review covering entries made during the 12-month POR that had been exported from India by the producers and exporters named in Commerce's initiation notice.  *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 21,619 (Dep't Commerce Apr. 12, 2022), P.R. 157; *see also* Letter from Picard Kentz & Rowe LLP to Commerce, "Request for Administrative Reviews" (Feb. 25, 2022), P.R. 5; Letter from Schagrin Associates to Commerce, "American Shrimp Processors Association's Request for Administrative Reviews" (Feb. 25, 2022), P.R. 6.

Following initiation, Commerce limited individual review to the two largest exporters/producers of subject merchandise by volume—The Devi Fisheries Group ("Devi") and Nekkanti Sea Foods Limited ("Nekkanti").[4]  Commerce Memorandum, "Respondent Selection" (May 10, 2022) ("Resp. Selection Memo"), C.R. 4, P.R. 34.  Thereafter, Commerce issued Devi and Nekkanti questionnaires requesting information needed to determine whether sales of subject

---

[3]  The statute directs Commerce to "review, and determine . . . the amount of any antidumping duty" on an annual basis if a request for administrative review is received during the anniversary month of the publication of the antidumping duty order.  19 U.S.C. § 1675(a).  This was the 17th review of the antidumping duty order on frozen warmwater shrimp conducted by Commerce.

[4]  AHSTAC and ASPA both argued that Commerce should select at least three companies as mandatory respondents using a sampling methodology.  *See* Resp. Selection Memo at 4-5, C.R. 4, P.R. 34; 19 U.S.C. § 1677f-1(c)(2)(A) (explaining that Commerce may limit its individual review to a sample of exporters or producers).  Commerce rejected this request, in part, because it determined that its "resources allow individual examination of only two companies."  Resp. Selection Memo at 6, C.R. 4, P.R. 34.

merchandise were made at less than fair value during the POR.  *See, e.g.*, Letter from Commerce to Nekkanti Sea Foods Ltd., "Initial Questionnaire" (May 12, 2022), P.R. 35.

Devi and Nekkanti responded to Commerce's initial questionnaire before all requests for review of these producers were withdrawn.  *See* Commerce Memorandum, "Selection of Additional Respondents for Individual Review" (July 21, 2022), C.R. 32, P.R. 81.  As a result, after explaining that the selection of new mandatory respondents would not inhibit the timely completion of its administrative review, Commerce selected Megaa Moda and NK Marine Exports LLP ("NK Marine"), "the next two largest exporters of shrimp from India to the United States during the POR," to replace Devi and Nekkanti as "mandatory respondents" chosen for individual review.  *Id.* at 3.

Megaa Moda provided its response to Section A of Commerce's questionnaire on August 29, 2022.[5]  *See* Letter from Megaa Moda to Commerce, "Megaa Moda Private Limited's Response to Section A of the Original Antidumping Questionnaire" (Aug. 29, 2022) ("Section A Response"), C.R. 36-41, P.R. 115-17.[6]  In this response, Megaa Moda stated that its home market sales were usable as a basis for normal value because the volume of these sales during the POR was more than five percent of the volume of its sales to the United States.[7]  *See id.* at A-3,

---

[5]  Section A of Commerce's questionnaire collects general information on the company under review.  Meanwhile, Sections B and C solicit information on the respondent's sales in the comparison market and the United States, respectively.  Finally, Section D collects information on the producer's cost of production.

[6]  The original public versions of Megaa Moda's Sections A-C responses contained errors and were rejected and removed from ACCESS by Commerce.  *See* Commerce Memorandum, "Deadline for Megaa Moda Private Limited to Refile Public Versions of Certain Responses" (Sept. 27, 2022), P.R. 128.  Megaa Moda refiled the public versions of its Section A and Sections B-C responses on September 27, 2022.

[7]  Commerce generally considers sales in the home market to be an appropriate basis for determining normal value "if the Secretary is satisfied that sales of the foreign like product . . . are of sufficient quantity."  19 C.F.R. § 351.404(b)(1).  The agency's regulations further explain

PUBLIC VERSION

C.R. 36, P.R. 115.  Megaa Moda included in its Section A response a table reporting the quantity

and value of its sales in the home market and the United States.  *Id.* at Exhibit A.1.  According to

this information, Megaa Moda sold [          ] kilograms to the United States market compared

to [          ] kilograms in the home market.  *Id.*  Put differently, Megaa Moda's home market

shipments were [          ] percent of its shipments to the United States by volume and [

          ].  *See id.*

     Megaa Moda provided Commerce with information regarding its home market shipments

in its Section B response.  *See* Letter from Megaa Moda to Commerce, "Megaa Moda Private

Limited's Response to Section B&C of the Original Antidumping Questionnaire" (Sept. 21,

2022) ("Sections B&C Response"), C.R. 52-59, P.R. 118-127.  In this response, Megaa Moda

assigned each home market sales record a unique sequential number (*i.e.*, "sequence number" or

"SEQH").  *See id.* at B-10–B-11, C.R. 52, P.R. 118.  For each sales observation, Megaa Moda

reported transaction specific information, including the sale invoice number, type of shrimp

product sold (including packaging), customer name, and place of delivery.  *See, e.g.*, *id.* at

Exhibit B.1 (sample printout of Megaa Moda's home market sales database).

     Based on Megaa Moda's response to Commerce's initial questionnaire, AHSTAC

submitted comments regarding certain sales reported in the respondent's comparison market

sales file as having been made "for consumption" in the home market.  *See* Letter from Picard

Kentz & Rowe LLP to Commerce, "Comments on Megaa Moda's Response to Sections A, B,

and C of the Questionnaire" (Dec. 21, 2022) ("AHSTAC Comments on Megaa Moda's IQR"),

at 9-13, C.R. 73, P.R. 134.  In these comments, AHSTAC noted that [          ]

---

that "'sufficient quantity' normally means that the aggregate quantity . . . of the foreign like
product sold by an exporter or producer in a country is 5 percent or more of the aggregate
quantity . . . of its sales of the subject merchandise to the United States."  *Id.* § 351.404(b)(2).

home market sales observations reported by Megaa Moda accounted for [                    ] of the respondent's home market sales by quantity.  *Id.* at 9.  These [        ] sales observations, which correspond to [                                        ], were each made to [                                                        ].  *Id.* Prior to [






].[8]  Given that [                         ], AHSTAC's comments asked Commerce to further inquire whether Megaa Moda knew or should have known that its sales to [            ] were not sold for consumption in the home market.

AHSTAC's comments on Megaa Moda's home market sales further described the various ways in which its sales to [          ] were aberrational compared to the other home market sales reported by the company.  *See* AHSTAC Comments on Megaa Moda's IQR at 9-10, C.R. 73, P.R. 134.  For example, the [        ] home market sales observations corresponding to [                                      ], compared to [                     ] home market sales observations reported by Megaa Moda.  *Id.* at 9.  AHSTAC also highlighted the fact that the [                    ] reported by Megaa Moda for its sales to

---

[8]  While [            ]


].

[          ] corresponded to a [

          ].  *Id.* at 11-12 (citations omitted).

Commerce issued Megaa Moda a supplemental questionnaire on January 17, 2023 seeking additional information regarding the company's sales to [          ] and an explanation as to why it believed such sales "were for consumption in India, rather than for export to another market."  Letter from Commerce to Megaa Moda, "Supplemental Questionnaire" (Jan. 17, 2023), at 7, C.R. 75, P.R. 139.  Megaa Moda's response to Commerce's supplemental questionnaire stated that "{a}s the material was delivered in India and was also destined in India, Megaa classified the same as domestic sales."  Letter from Megaa Moda to Commerce, "Megaa Moda Private Limited's Response to 1st Supplemental Section ABC of the Original Antidumping Questionnaire" (Feb. 3, 2023) ("Megaa Moda 1st Supp. Response"), at 13-14, C.R. 82, P.R. 149.[9]  The respondent additionally claimed that it could "safely say that the goods were sold domestically in India" because the shrimp product was "packaged in unbranded pouches and cartons."  *Id.* at 14.  Megaa Moda's response did not address the differences highlighted by AHSTAC between Megaa Moda's sales to [          ] or why it reasonably believed that the merchandise it sold in "unbranded pouches and cartons" was consumed in the home market.  *See id.*  Additionally, Megaa Moda did not acknowledge the fact that the sales documentation submitted as part of its supplemental response revealed that [

          ].  *See id.* at Exhibit S1-8, C.R. 83, P.R. 150.  Such [

          ].  *Compare id.* (tax

_____

[9]  The business proprietary version of this document does not include page numbers.

invoice for sale to [                                        ]), *with* Section A Response at Exhibit A.8

(tax invoice for sample home market sale reflecting a [               ]), C.R. 37, P.R. 116.

On March 3, 2023, Commerce published the preliminary results of its review.  *Certain Frozen Warmwater Shrimp From India: Preliminary Results of Antidumping Duty Administrative Review; 2021-2022*, 88 Fed. Reg. 13,430 (Dep't Commerce Mar. 3, 2023) ("*Preliminary Results*"), P.R. 168; *see also* Decision Memorandum for the Preliminary Results of the 2021-2022 Administrative Review of the Antidumping Duty Order on Certain Frozen Warmwater Shrimp from India (Feb. 27, 2023) ("PDM"), P.R. 159.  In the *Preliminary Results*, Commerce used the complete universe of Megaa Moda's reported home market sales as the basis for normal value, *see* PDM at 9-10, ultimately calculating a preliminary weighted-average dumping margin of 7.92 percent for Megaa Moda.  *Preliminary Results*, 88 Fed. Reg. at 13,430.

Following the *Preliminary Results*, AHSTAC submitted a case brief arguing, *inter alia*, that Commerce's determination of the normal value of Megaa Moda's merchandise should be revised to exclude certain sales (*i.e.*, [                                        ]) that were not made for consumption in India.  Letter from Picard Kentz & Rowe LLP to Commerce, "Case Brief (Megaa Moda)" (Apr. 10, 2023) ("AHSTAC Case Brief"), at 3-14, C.R. 115, P.R. 172.  ASPA also submitted written argument drawing further attention to record evidence showing that Megaa Moda knew, or at the very least, should have known, that certain sales were not for consumption in the home market.  Letter from Schagrin Associates to Commerce, "ASPA's Rebuttal Brief" (Apr. 20, 2023) ("ASPA Rebuttal Brief"), at 1-6, C.R. 120, P.R. 178.  Like AHSTAC, ASPA argued that sales that were not made for consumption in the home market could not be used to determine normal value for Megaa Moda.  *Id.* at 6.  The written arguments submitted by AHSTAC and ASPA both compared and analyzed the tax invoices on the record

and argued that the [

        ] demonstrated that the respondent knew such sales were destined for export.

AHSTAC Case Brief at 10-14, C.R. 115, P.R. 172; ASPA Rebuttal Brief at 4-5, C.R. 120,

P.R. 178.

      In its rebuttal brief, Megaa Moda disputed the Domestic Industry's arguments that it

knew or should have known that the disputed sales were not for consumption in the home

market.  *See* Letter from Megaa Moda to Commerce, "Rebuttal Brief of Megaa Moda Private

Limited" (May 18, 2023), C.R. 124, P.R. 188.  Megaa Moda's rebuttal focused on the fact that

"the material was delivered in India" and packaged in "unbranded pouches and cartons."  *Id.*

at R-5.  Megaa Moda's rebuttal brief went on to make the additional claim that its sales of

"unbranded shrimp" are exempted from GST.  *Id.* at R-9–R-11.  Megaa Moda failed to support

its novel claim that GSTs are only charged on "branded" shrimp and scrap with any citation to

the governing Indian law or regulation on the record of this proceeding, instead relying on its

own declarations.  *See id.*

      The *Final Results* were published in the *Federal Register* on September 1, 2023.  *Final*

*Results*, 88 Fed. Reg. at 60,431.  In the *Final Results*, Commerce rejected the arguments

presented by AHSTAC and ASPA regarding whether Megaa Moda's sales to [      ] should

be considered for purposes of determining normal value.  IDM at Comments 3 and 4, P.R. 202;

*see also* Commerce Memorandum, "Proprietary Memorandum for the Final Results" (Aug. 25,

2023) ("Proprietary Decision Memorandum"), C.R. 130, P.R. 204.[10]  The agency concluded that

---

     [10]  Because the arguments raised by AHSTAC and ASPA in their respective case and
rebuttal briefs relied extensively on business proprietary information, Commerce issued a
"Proprietary Memorandum for the Final Results" concurrently with the agency's IDM and other
disclosure documents.  *See* IDM at 6 n.27, P.R. 202.

there was "no evidence" on the record demonstrating that "Megaa Moda knew or should have known that certain of its home market sales of shrimp were not sold for consumption in India." IDM at 8-9, P.R. 202; *see also id.* at 9 (asserting that there is "no evidence that Megaa Moda had knowledge at the time of sale these sales were destined for export"). Commerce's analysis reasoned that "the trade patterns of a company's customers do not provide an adequate basis for establishing that sales to such customers are not representative," thereby focusing on whether the sales were *representative* rather than whether they were actually *for consumption* in the home market. *Id.* at 9 (citing *Z.A. Sea Foods Pvt. Ltd. v. United States*, 569 F. Supp. 3d 1338, 1351 (Ct. Int'l Trade 2022) ("*ZASF I*")). Commerce's determination relied on two factual findings. *Id.* First, that "the destination of {the challenged sales} was a location in India" and, second, that "there was no specific packaging or labeling for these sales indicating that they were destined for export." *Id.* Accordingly, Commerce continued to rely on all of Megaa Moda's reported home market sales as the basis for normal value. *Id.*

Commerce made no changes to the margin calculated for Megaa Moda in the *Final Results*. *Id.* at 1. Accordingly, the agency continued to assign the company a weighted-average dumping margin of 7.92 percent. *Final Results*, 88 Fed. Reg. at 60,432. Megaa Moda's rate was then used by Commerce to calculate the rate assigned to the companies not selected for individual review.

## STANDARD OF REVIEW

The statute requires the Court to "hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B). Substantial evidence is such evidence that "a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (citations omitted). While the Court is not to reweigh the

PUBLIC VERSION

evidence or substitute its judgment for that of the agency under the substantial evidence standard, *see Nippon Steel Corp. v. United States*, 301 F. Supp. 2d 1355, 1360 (Ct. Int'l Trade 2003) (citing *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 936 (Fed. Cir. 1984)), the Court must take into account the entire record, including evidence that detracts from the conclusion reached by Commerce.  *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  Furthermore, proffered evidence must be reliable.  "Mere uncorroborated hearsay or rumor does not constitute substantial evidence." *Consol. Edison Corp.*, 305 U.S. at 230.

## ARGUMENT

### I.   Determination of Normal Value

Commerce is directed to impose antidumping duties in an amount equal to the amount by which the normal value exceeds the export price for the merchandise.  19 U.S.C. § 1673; *see also id.* § 1677b ("In determining . . . whether subject merchandise is being, or is likely to be, sold at less than fair value, a fair comparison shall be made between the export price or constructed export price and normal value.").  The statute provides Commerce with multiple methods to determine normal value.  *See id.* § 1677b(a).  Relevant to this appeal, section 773(a)(1)(B)(i) of the Tariff Act of 1930 (the "Act"), as amended, explains that in determining normal value using the prices of home market sales, such sales must be "for consumption in the exporting country." *Id.* § 1677b(a)(1)(B)(i).  Specifically, the statute instructs:

(1) DETERMINATION OF NORMAL VALUE.—

(A) IN GENERAL.—The normal value of the subject merchandise shall be the price described in subparagraph (B), at a time reasonably corresponding to the time of the sale used to determine the export price or constructed export price under section 1677a(a) or (b) of this title.

(B) PRICE.—The price referred to in subparagraph (A) is—

(i) the price at which the foreign like product is first sold (or, in the absence of a sale, offered for sale) *for consumption* in the exporting country, in the usual commercial quantities and in the ordinary course of trade and, to

the extent practicable, at the same level of trade as the export price or constructed export price.

19 U.S.C. § 1677b(a)(1) (emphasis added).  The purpose of the "for consumption in the exporting country" language contained in the statute is to prevent Commerce from calculating dumping margins using sales that were not actually reflective of sales consumed in the comparison market.

Consistent with this statutory directive, Commerce's practice emphasizes that under section 773(a)(1)(B)(i) of the Act, "home market sales are those that are 'for consumption in the exporting country.'" *Canned Pineapple Fruit from Thailand*, 68 Fed. Reg. 65,247 (Dep't Commerce Nov. 19, 2003), and accompanying IDM at Comment 1.  Commerce determines whether sales are "for consumption in the exporting country" by examining "all the circumstances and facts surrounding the sale." *Id.*  For example, in the quoted *Canned Pineapple from Thailand* determination, Commerce concluded that certain sales were properly excluded from the respondent's home market sales reporting (and thus, from use in determining normal value) because the respondent "knew that the sales in question were not for consumption in the home market." *Id.*  Commerce reached this finding after considering "all the circumstances and facts surrounding the sales," as well as the respondent's books and records. *Id.*

The CIT has affirmed Commerce's practice and explained that the appropriate burden of proof for determining whether to exclude sales from the home market database is whether the respondent "knew or should have known that the merchandise was not for home consumption based upon the particular facts and circumstances surrounding the sales." *INA Walzlager Schaeffler KG v. United States*, 957 F. Supp. 251, 264 (Ct. Int'l Trade 1997); *see also Allegheny Ludlum Corp. v. United States*, 215 F. Supp. 2d 1322, 1330-31 (Ct. Int'l Trade 2000) (inquiring

"if the producer 'knew or should have known that the merchandise was . . . for home consumption based upon the particular facts and circumstances of the case.'" (quoting *INA Walzlager*, 957 F. Supp. at 263-65)).

In *INA Walzlager*, the Court held that Commerce reasonably excluded sales from the respondent's home market database even in the absence of evidence showing that the respondent knew the "actual destination of the merchandise." *INA Walzlager*, 957 F. Supp. at 264-65.  The Court, in that case, noted that the agency must be permitted to examine record evidence and extrinsic sources to determine whether the respondent knew or should have known that the sales were not for consumption in the home market. *Id.* at 265.  More recently, the Court has reaffirmed that Commerce is to make an "objective{} assess{ment}" based on the "particular facts and circumstances" whether the foreign producer knew or should have known that the merchandise would be sold domestically or for export. *Stupp Corp. v. United States*, 359 F. Supp. 3d 1293, 1310 (Ct. Int'l Trade 2019) (citations omitted).

## II.   Commerce Erred in Calculating the Normal Value of Megaa Moda's Subject Merchandise

### A.   Documentary Evidence Shows that Megaa Moda Knew or Should Have Known that Certain Sales Were Not Sold for Consumption in India

In this review, Commerce accepted Megaa Moda's self-serving statements instead of analyzing documentary evidence which demonstrated that Megaa Moda's sales to [

] were not made for consumption in India— Commerce's chosen comparison market.  A review of the facts and circumstances surrounding the sales in question show that it was unreasonable for Commerce to elevate Megaa Moda's unsubstantiated statements and declarations over documentary evidence to conclude that there was no evidence that Megaa Moda knew or should have known that the merchandise sold to [          ] was not for consumption in the home market.  As explained below, Commerce

violated the statute and acted inconsistent with agency practice when it calculated the normal

value of Megaa Moda's merchandise using prices of sales that included sales not made for

consumption in the comparison market.  Moreover, Commerce's factual conclusion that "nothing

indicates that Megaa Moda's sales to this customer were not for consumption in India," IDM

at 9, is unreasonable and unsupported by substantial evidence on the record.

Over the course of Commerce's administrative review, Megaa Moda provided detailed

information regarding the respondent's home market sales.  As noted above, Megaa Moda's

home market sales reporting contained [       ] unique sales observations (or SEQHs) that

corresponded to [       ] distinct invoices issued to [     ] different customers.  *See* Home Market

Sales Database.  A review of record information regarding the [       ] home market sales

observations corresponding to Megaa Moda's sales to [          ] (*i.e.*, SEQHs [

   ]) establish that Megaa Moda knew or should have known that these sales were not for

consumption in India.

Importantly, the sales documents submitted by Megaa Moda in response to Commerce's

first supplemental questionnaire demonstrate that Megaa Moda knew that its sales to [          ]

were not sales for consumption in the home market because the included tax invoice shows that

Megaa Moda [

   ].  *See* Megaa Moda 1st Supp. Response at Exhibit S1-8, C.R. 83, P.R. 150.

Meanwhile, tax invoices prepared by Megaa Moda in the ordinary course of business show that,

for other home market sales, the respondent [              ].  *See, e.g.*, *id.* at Exhibits S1-6 (tax

invoice showing the [                    ]) and S1-7 (tax invoice showing the

[                 ]); Sections B&C Response at Exhibit B.5.b (tax invoice showing the

[                    ]), C.R. 52, P.R. 118.  Thus, the tax invoice associated with

SEQH 76 (*i.e.,* [

 ]) is unique from other tax invoices relating to home market sales on the record in this

proceeding because it [                                ].

In contrast, sales documents relating to Megaa Moda's sales to purchasers in the United

States show that [                                                ]. For

example, Megaa Moda invoice number MMPL/2122/ISL044 identifies the United States as the

"country of final destination" and includes a note stating "Supply Meant for Export Under Bond

or Letter of Undertaking without Payment of Integrated Tax (IGST)."  *See, e.g.*, *id.* at Exhibit

C.6.b, C.R. 54, P.R. 120.  The related packing list includes the same "supply meant for export"

language exempting Megaa Moda from payment of domestic consumption taxes.  *Id.*  In addition

to the language expressly stating that payment of IGST is not required for export sales, the

commercial invoice itself [                                ].  *Id.*; *see also* Section A Response at

Exhibit A.7 (sample U.S. market sales documents with invoice language stating "Supply Meant

for Export Under Bond or Letter of Undertaking without Payment of Integrated Tax (IGST)"),

C.R. 36, P.R. 115.  Thus, invoices prepared by Megaa Moda in the ordinary course of business

and on the record of this proceeding show that the company [

                                ].

Second, these sales were made to a particular customer that, as Commerce

acknowledged, was "an exporter."  IDM at 9, P.R. 202.  Thus, while Megaa Moda contends that

sales of "unbranded shrimp" are exempted from certain GSTs, *see* Megaa Moda Rebuttal Brief

at R-3, C.R. 124, P.R. 188, the sales at issue were made to an exporter, while the sales to all other

home market customers were of shrimp [                                ].  Because [

], these circumstances indicate that these taxes are collected based on where the shrimp is to be consumed, with "unbranded shrimp" treated as if it were to be consumed elsewhere, outside of India.

Third, the [        ] of the [        ] sales observations associated with [

        ] than all other reported home market sales observations.  Specifically, SEQHs [            ] report sales [

    ], respectively.  *See* Home Market Sales Database.  Outside of these [      ] home market sales observations, the [

            ].  *Id.* (SEQH [      ]).  In fact, after removing the [

            ], the [                ] of Megaa Moda's remaining [

        ].  *Id.*  Put differently, the [

            ].  This information shows that Megaa Moda was clearly aware that its sales to [        ] were unlike the [        ] of the company's sales to other customers in the home market.

Fourth, Megaa Moda's sales to [        ] were the [      ] sales of product sold in [        ] in the home market.[11]  *See* Home Market Sales Database ([        ] field).

---

[11] The proprietary decision memorandum accompanying the *Final Results* correctly notes that the briefs submitted by AHSTAC and ASPA erred in stating that Megaa Moda's sales to [            ].  Proprietary Decision Memorandum at 5 n.28, C.R. 130, P.R. 204.  This error does not change the fact that, as recognized by Commerce, [            ] of Megaa Moda's sales to [            ].  *See id.*  Indeed, Commerce's correction underscores that while Megaa Moda's sales to all other customers in India were of a

[          ] home market sales reported by Megaa Moda were of [

              ].  *Id.*  Accordingly, the [              ] of Megaa Moda's sales to

[                                                    ].

      Fifth, Megaa Moda's sales to [          ] were the [      ] sales of [

          ] in the home market.  *See* Home Market Sales Database ([          ] field).  The

remaining [      ] home market sales observations report [                        ].

*Id.*  Meanwhile, Megaa Moda [                          ] to customers in

the United States.  *See* U.S. Market Sales Database ([          ] field).  Thus, while the

[

              ], the sales were of a [

              ].

      Finally, other information in the sales documents submitted by Megaa Moda in response

to Commerce's supplemental questionnaire further reveal why the differences between Megaa

Moda's sales to [          ] compared with the other sales reported in the respondent's home

market database show that Megaa Moda knew or should have known that such sales were not

made for consumption in the home market.  *See* Megaa Moda 1st Supp. Response at Exhibit

S1-8, C.R. 83, P.R. 150.  Specifically, these sales documents include customer correspondence

showing that the sale was [                          ].  *Id.*  This

documentation provided Megaa Moda with knowledge that its customer was [

              ].  The record includes no explanation as to why it would be

------

[

                                                    ].

reasonable to believe that Megaa Moda's sales made to a [

] were for consumption

in the home market.

### B. Commerce's Analysis of Record Evidence Is Unreasonable and Unsupported by Substantial Evidence

Commerce should not have considered Megaa Moda's sales to [          ] for purposes

of determining normal value as the statute requires that the prices used to determine normal

value be prices "for consumption."  19 U.S.C. § 1677b(a)(1)(B)(i).  In the *Final Results*,

Commerce rejected the arguments presented by AHSTAC and ASPA and continued to

erroneously determine the normal value of Megaa Moda's sales using sales that the respondent

knew or should have known were not "for consumption" in the home market.  *See* IDM

at Comment 3.  Such a conclusion is contrary to the statute and unsupported by substantial

evidence.

In its final determination, Commerce accepted Megaa Moda's claim that the respondent

had no reason to know at the time of sale that its sales to [          ] were not for consumption

in the home market.  IDM at Comment 3, P.R. 202.  In doing so, Commerce failed to engage

with the arguments presented by AHSTAC and ASPA highlighting documentary and other

evidence showing differences between Megaa Moda's sales to [          ] and its sales to other

home market customers.  Commerce's analysis of this issue in the decision memorandum stated:

> While evidence on the record shows that Megaa Moda sold shrimp in the home market to a domestic customer that is also an exporter, nothing indicates that Megaa Moda's sales to this customer were not for consumption in India.  The CIT has held that the trade patterns of a company's customers do not provide an adequate basis for establishing that sales to such customers are not representative.  Specifically, the record shows that: (1) the destination of these sales was a location in India; and (2) there was no specific packaging or labeling for these sales indicating that they were destined for export.

*Id.* at 9 (citations omitted).

Commerce's analysis of the "absence of certain sales taxes on Megaa Moda's sales

invoices to [          ]" in the proprietary decision memorandum also supports remand of

Commerce's determination.  In that memorandum, Commerce states that "{t}here is no

information on the record that the combined [

          ] are specific to the domestic market or that the absence of these taxes is evidence of an

export sale."  Proprietary Decision Memo at 5, C.R. 130, P.R. 204.  As noted above, contrary to

Commerce's finding, the record shows that Megaa collected [          ] on its sales that were made

for consumption in the home market.  In rejecting the significance of this record information,

Commerce accepted Megaa Moda's unsupported statement that these taxes do not apply to sales

of unbranded shrimp over documentary evidence.  *See id.*  However, the record lacks

information showing the types of shrimp products on which [          ] are collected.  It is well-

settled that speculation does not amount to substantial evidence.  *See, e.g.*, *Lucent Techs., Inc. v.*

*Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009) ("It is well established that speculation does

not constitute 'substantial evidence.'") (internal quotation marks and citation omitted).  While

Megaa Moda's sales to [          ] report to be "unbranded," there is no support that [          ]

are not collected on domestic sales of such product.  The record does however show that [          ]

are not collected on export sales and are collected on home market sales made to other

customers.  Moreover, even if [          ] are not collected on "unbranded" shrimp under Indian

law, it is because "unbranded" merchandise [                              ].  Because [

                              ], the fact that such [

          ] shows that the merchandise was not sold for consumption in India.

Commerce's analysis also failed to address the primary arguments presented by AHSTAC

and ASPA in their written submissions.  For example, neither Commerce's analysis in the issues

PUBLIC VERSION

and decision memorandum nor the proprietary decision memorandum meaningfully addressed

the argument that Megaa Moda's sales to [                                                    ]

compared to its sales to other home market customers.  Specifically, Commerce's proprietary

decision memorandum declared that "the [                    ]" product characteristic reported for the

sales at issue are not unique.  Proprietary Decision Memo at 6, C.R. 130, P.R. 204.  Contrary to

Commerce's determination, the [                    ] of Megaa Moda's sales to [                    ] were, in

fact, unique compared to [            ] home market sales as Megaa Moda reported [

                                                    ].  Thus, not only does this factor fail to support

Commerce's conclusion, but it in fact contradicts it.

Commerce's analysis similarly fails to engage with record evidence showing that Megaa

Moda's sales to [                ] were of a [

        ].  The only mention of this product characteristic by Commerce is the declaration that

such a comparison is not meaningful because "only [        ] percent of Megaa Moda's reported

U.S. sales were of [                    ] shrimp."  *Id.*  Commerce's comparison is inapt because it failed

to consider whether Megaa Moda knew or should have known that the sales in question were not

for consumption in the home market based on the sales being of a [                                ]

in the home market.  Because [

                                                    ], the agency's decision failed to consider

whether this information supports a conclusion that Megaa Moda knew or should have known

that its sales to [                ] were not for consumption in the home market.  Without evidence to

support its conclusion, Commerce's determination cannot be said to amount to substantial

evidence.  As such, because Commerce failed to address arguments material to its determination

a remand is required.  *See, e.g.*, *Itochu Bldg. Prods., Co. v. United States*, 163 F. Supp. 3d 1330,

1337 (Ct. Int'l Trade 2016) (citing *Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1354 (Fed. Cir. 2005)).

Commerce's finding that Megaa Moda's sales to [        ] were delivered to "a location in India" also fails to support the agency's conclusion that Megaa Moda lacked knowledge that the sales in question were not for consumption in the home market. *See* IDM at 9, P.R. 202. Indeed, if the delivery location was a location other than in India, the respondent would have *actual* knowledge that the sales were not for consumption in the home market. Commerce's practice, informed by the Court's guidance, does not however require actual knowledge. As previously noted, Commerce may exclude sales from the home market database if "a producer knew *or had reason to know*" that the merchandise was not for consumption in the home market. *Coal. of Am. Flange Producers v. United States*, 448 F. Supp. 3d 1340, 1346 (Ct. Int'l Trade 2020) (emphasis added). Moreover, whether a sale should be included in normal value is not determined by where that sale is to be delivered, particularly where, as here, the customer is itself, as recognized by Commerce, "an exporter." IDM at 9. Instead, Commerce is instructed to look to where the sale is consumed. *See* 19 U.S.C. § 1677b(a)(1)(B)(i) (requiring that the prices used to determine normal value be prices "for consumption in the exporting country"). In this case, the mere fact that the sales were delivered within the home market cannot override all other record evidence showing that the producer knew or should have known that the sales were not for consumption in the home market.

Commerce's decision memorandum also failed to consider the fact that [        ] is a known exporter of shrimp. IDM at Comment 3. Commerce explained that "{t}he CIT has held that the trade patterns of a company's customers do not provide an adequate basis for establishing that sales to such customers *are not representative*." *Id.* at 9 (citing *ZASF I*).

However, the issue raised by AHSTAC and ASPA in this case was not one of representativeness but whether the merchandise sold by Megaa Moda to [          ] was sold *for consumption* in the home market.  The trade patterns of Megaa Moda's customer are significant and relevant to the issue of whether Megaa Moda knew or should have known that the sales were not consumed in the home market.  *See INA Walzlager*, 957 F. Supp. at 265 ("It is highly unlikely that {a respondent} would have no knowledge of the activities of its buyers.").  Because the knowledge test considers whether a producer knew or had reason to know at the time of sale that the specific sale of merchandise under consideration was destined for export, trade pattern data is clearly a relevant part of "all the facts and circumstances surrounding the sale" and should have been considered by Commerce.  Moreover, the case relied upon by Commerce did not resolve the meaning of the "for consumption" language used in the statute.  *See Z.A. Sea Foods Pvt. Ltd. v. United States*, 606 F. Supp. 3d 1335, 1343 n.5 (Ct. Int'l Trade 2022) (noting that the Court has not resolved "the meaning of 'for consumption'").  Accordingly, the trade patterns of Megaa Moda's customers can and should have been considered by Commerce in analyzing whether Megaa Moda knew or should have known that its sales to [          ] were for consumption in the home market.  These trade patterns are particularly significant here in the context of the many other points discussed above that reasonably gave notice to Megaa Moda that its sales were not for consumption in India.

In this case, Megaa Moda's sales to [          ] should not have been used to calculate normal value.  Inclusion of these sales contravened the statutory requirement that normal value be determined based on the prices of sales for consumption in the comparison market.  As Commerce's determination improperly rejected documentary evidence showing that Megaa

Moda knew or should have known that its sales to [          ] were not for consumption in the home market, the *Final Results* must be remanded for further consideration.

**III.   Commerce Must Revise the Dumping Margin Assigned to the Non-Selected Companies Under Review**

As explained above, Commerce erred in determining the normal value of Megaa Moda's subject merchandise.  As a result, Commerce failed to make the "fair comparison" between normal value and export price required by the statue.  *See* 19 U.S.C. § 1677b(a).  Because Commerce erred in determining Megaa Moda's weighted-average dumping margin, the margin assigned to the non-selected companies under review also requires revision as this margin was determined, in part, on the margin calculated for Megaa Moda.  *See* IDM at 4 (describing Commerce's calculation of the rate assigned to the companies not selected for individual review), P.R. 202.  Accordingly, should Commerce revise Megaa Moda's weighted-average dumping margin in response to any remand from this Court, the agency should also revise the margin assigned to the companies not selected for individual review.

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, the Domestic Industry respectfully requests that this Court grant its motion for judgment on the agency record and enter judgment in their favor and remand the *Final Results* with instructions for Commerce to:

(1)     Redetermine the normal value of Megaa Moda's merchandise after excluding sales that Megaa Moda knew or should have known were not made for consumption in the home market;

(2)     Revise the weighted-average dumping margin and cash deposit rate assigned to Megaa Moda; and

**PUBLIC VERSION**

(3)     Revise the weighted-average dumping margin and cash deposit rate assigned to

the companies not selected for individual review.

Respectfully submitted,

/s/ Zachary J. Walker

Roger B. Schagrin                         Zachary J. Walker
Nicholas J. Birch                         Nathaniel Maandig Rickard

**SCHAGRIN ASSOCIATES**                   **PICARD KENTZ & ROWE LLP**
900 Seventh Street NW, Suite 500          1750 K Street NW, Suite 800
Washington, DC 20001                      Washington, D.C. 20006

*Counsel to the American Shrimp*          *Counsel to the Ad Hoc Shrimp Trade*
*Processors Association*                  *Action Committee*

Dated: February 6, 2024

PUBLIC VERSION

## CERTIFICATE OF COMPLIANCE WITH WORD LIMITATION

I, Zachary J. Walker, hereby certify that this brief, exclusive of the table of contents, table of authorities, certifications of counsel, and counsel's signature block, but including headings, footnotes, and quotations contains 7,601 words, according to the word count function of the word processing program used to prepare this brief, and therefore complies with the word limitations as set forth in ¶ 2(B) of the Standard Chambers Procedures of this Court.

/s/ Zachary J. Walker\_\_\_\_\_
Zachary J. Walker

**PICARD KENTZ & ROWE LLP**
1750 K Street NW, Suite 800
Washington, D.C. 20006

*Counsel to the Ad Hoc Shrimp Trade
Action Committee*

Dated: February 6, 2024