## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE THOMAS J. AQUILINO, JR., JUDGE

| | |
|---|---|
| **AD HOC SHRIMP TRADE ACTION COMMITTEE,** | |
| **Plaintiff,** | |
| **and** | |
| **AMERICAN SHRIMP PROCESSORS ASSOCIATION,** | |
| **Plaintiff-Intervenor,** | |
| **and** | |
| **MEGAA MODA PRIVATE LIMITED** | **PUBLIC VERSION** |
| **Consolidated Plaintiff,** | |
| **v.** | **Consol. Court No. 23-00202** |
| **UNITED STATES** | |
| **Defendant,** | |
| **and** | |
| **MEGAA MODA PRIVATE LIMITED,** | |
| **Defendant-Intervenor,** | |
| **and** | |
| **AMERICAN SHRIMP PROCESSORS ASSOCIATION, et al.,** | |
| **Defendant-Intervenors.** | |

### DEFENDANT-INTERVENOR'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT UPON THE AGENCY RECORD

Submitted by:

Robert G. Gosselink
Aqmar Rahman
Trade Pacific PLLC
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C.  20003
Tel.: (202) 223-3760

Counsel to Megaa Moda Private Limited

Dated: April 16, 2024

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

RULE 56.2 STATEMENT ....................................................................................................... 1

     A.     Administrative Decision Under Review ................................................... 1

     B.     Statement of the Issues........................................................................... 1

STATEMENT OF FACTS ....................................................................................................... 2

STANDARD OF REVIEW ...................................................................................................... 4

ARGUMENT ........................................................................................................................... 5

     I.     The Legal Framework ........................................................................... 6

     II.     Megaa Moda Had No Reason to Know That Any of Its Domestic Sales Would Not Be Consumed in India ............................................................. 9

          A.     The Administrative Record Supports a Finding of Consumption in India ........ 10

          B.     Transformation Supports a Finding of Consumption in India ................. 15

CONCLUSION ........................................................................................................................ 16

# TABLE OF AUTHORITIES

Page

## Cases

*Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607 (1966) .................................................. 5
*INS v. Elias-Zacarias,* 502 U.S. 478 (1992) .................................................................. 5
*Nucor Corp. v. United States*, 612 F. Supp. 2d 1264 (Ct. Int'l Trade 2009) ................ 5
*Matsushita Elec. Indus. Co. v. United States,* 750 F.2d 927 (Fed. Cir. 1984) .............. 5
*Allegheny Ludlum Corp. v. United States*, 215 F. Supp. 2d 1322 (Ct. Int'l Trade 2000) .............. 6
*Coalition of American Flange Producers v. United States*, 517 F. Supp. 3d 1378 (Ct. Int'l Trade 2021) ........................................................................................................ 17
*INA Walzlager Schaeffler KG v. United States,* 957 F. Supp. 251 (Ct. lnt'l Trade 1997) ............. 6
*Wonderful Chemical Indus v. United States*, 259 F. Supp. 2d 1273 (Ct. Int'l Trade 2003) ........... 8

## Statutes

19 U.S.C. § 1516a(b)(1)(B)(i) ........................................................................................ 4
19 U.S.C. § 1677b(a)(1)(B)(i) .................................................................................. 6, 10

## Administrative Determinations

*Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, et al.; Final Results of Antidumping Duty Administrative Reviews*, 60 Fed. Reg. 10900 (Dep't Commerce Feb. 28, 1995) ........................................................................... 6
*Aluminum Extrusions from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Rescission, in Part, 2010/12*, 79 Fed. Reg. 96 (Dep't Commerce Jan. 2, 2014) ................................................................................ 7
*Certain Hot-Rolled Carbon Steel Flat Products, Certain Corrosion Resistant Carbon Steel Flat Products, and Certain Cut-to-Length Carbon Steel Plate From Korea*, 58 Fed. Reg. 37182 (Dep't Commerce July 9, 1993) ............................................. 15
*DRAMs from Korea* 64 Fed. Reg. 69694 (Dep't Commerce Dec. 14, 1999) ............... 14
*Certain Circular Welded Non-Alloy Steel Pipe From Mexico: Final Results of Antidumping Duty Administrative Review*, 75 Fed. Reg. 20342 (Dep't Commerce April 19, 2010) .................... 14
*Certain Cut-to-Length Carbon Quality Steel Plate Products from Italy*, 71 Fed. Reg. 11178 (Dep't Commerce March 6, 2006) .......................................................... 7-8, 13
*Certain Crystalline Silicon Photovoltaic Products From Taiwan; 2019-2020*, 86 Fed. Reg. 49509 (Dep't Commerce Sept. 3, 2021) ......................................... 7, 13
*Certain Freight Rail Couplers and Parts Thereof from Mexico*, 88 Fed. Reg. 65153 (Dep't Commerce Sept. 21, 2023) ............................................................................... 14
*Certain Pasta From Italy: Termination of New Shipper Antidumping Duty Administrative Review*, 62 Fed. Reg. 66602 (Dep't Commerce Dec. 19, 1997) ........................... 7, 8
*Certain Frozen Warmwater Shrimp from India*, 88 Fed. Reg. 60431 (Dep't Commerce Sept. 1, 2023) ............................................................................................................... 1
*Certain In-Shell Raw Pistachios from Iran*, 70 Fed. Reg. 7470 (Feb. 14, 2005) ...... 8, 13

*Certain Welded Carbon Steel Standard Pipes and Tubes from India: Preliminary Determination; 2022-2023*, 89 Fed. Reg. 8160 (Dep't Commerce Feb. 6, 2024) .............................. 13

*Final Determination of Sales at Less Than Fair Value: Certain Hot-Rolled Carbon Steel Flat Products, Certain Corrosion Resistant Carbon Steel Flat Products, and Certain Cut-to-Length Carbon Steel Plate From Korea*, 58 Fed. Reg. 37176 (Dep't Commerce July 9, 1993)............ 9

*Final Determination of Sales at less Than Fair Value: Dynamic Random Access Memory Semiconductors of One Megabit and Above From the Republic of Korea*, 58 Fed. Reg. 15467 (Dep't Commerce March 23, 1993)............................................................................................ 9

*Final Determination of Sales at Less Than Fair Value: Fuel Ethanol from Brazil*, 51 Fed. Reg. 5572 (Dep't Commerce Feb. 14, 1986) .......................................................................... 8

*Final Determination of Sales at Not Less Than Fair Value: Pure Magnesium From the Russian Federation*, 66 Fed. Reg. 49347 (Dep't Commerce Sept. 27, 2001) ......................................... 8

*Grain-Oriented Electrical Steel from the Czech Republic:  Final Determination of Sales at Less Than Fair Value*, 79 Fed. Reg. 58324 (Dep't Commerce Sept. 29, 2014) ................................ 8

*Preliminary Determination of Sales at Less Than Fair Value and Postponement of Final Determination: Synthetic Indigo from the People's Republic of China*, 64 Fed. Reg. 69723 (Dep't Commerce Dec. 14, 1999)................................................................................ 7

*Welded Line Pipe From the Republic of Korea*, 80 Fed. Reg. 61366 (Dep't Commerce Oct. 13, 2015) ........................................................................................................................ 16-17

**Other**

Statement of Administrative Action Accompanying the Trade Agreements Act of 1979, H.R. Rep. No. 4537, 388, 411, reprinted in 1979 U.S.C.C.A.N. 665. ................................................. 6

## INTRODUCTION

Defendant-Intervenor, Megaa Moda Private Limited ("Megaa Moda"), an Indian producer and exporter of frozen warmwater shrimp, respectfully submits this response in opposition to the Rule 56.2 motion for judgment on the agency record filed by Plaintiffs, Ad Hoc Shrimp Trade Action Committee ("AHSTAC") and American Shrimp Processors Association ("ASPA") (collectively, the "Domestic Industry"), challenging certain aspects of the final results of the U.S. Department of Commerce in the 17th administrative review of the antidumping duty order on certain frozen warmwater shrimp from India. As described below, the aspects of Commerce's decision challenged by AHSTAC and ASPA are supported by substantial evidence and are otherwise in accordance with law. Accordingly, the Court should deny the Domestic Industry's motion and enter judgment in favor of the United States.

## RULE 56.2 STATEMENT

**A.    Administrative Decision Under Review**

The administrative determination under review is the U.S. Department of Commerce's ("Commerce's") final results in the 17th administrative review of certain frozen warmwater shrimp from India. *See Certain Frozen Warmwater Shrimp from India*, 88 Fed. Reg. 60431 (Dep't Commerce Sept. 1, 2023), P.R. 205, Issues and Decision Memorandum, P.R. 202.

**B.    Statement of the Issues**

Whether Commerce's decision to base normal value for Megaa Moda on its sales of the foreign like product in India was supported by substantial evidence and in accordance with law when Megaa Moda's home market sales were substantial (i.e., viable), were delivered directly to its customers in India, were negotiated in good faith without Megaa Moda having any knowledge that the merchandise subsequently might be exported or whether the merchandise might be

resold after further processing, were representative of Megaa Moda's sales, were recorded as home market sales in the company's ordinary books and records, and where nothing on the administrative record established that the shrimp sold in India by Megaa Moda was *not* resold in India or *not* processed into merchandise outside the scope of the antidumping duty order.

## STATEMENT OF FACTS

Defendant-Intervenor generally agrees with the statement of facts presented in the brief of the Domestic Industry (ECF 40, at 2-10), and identifies the following additional facts that are relevant to the Court's consideration of this matter.

Prior to selecting Megaa Moda as a mandatory respondent in the review, Commerce had selected Nekkanti Sea Foods Limited ("Nekkanti") as a mandatory respondent.  Commerce Memorandum, "Respondent Selection" (May 10, 2022), C.R. 4, P.R. 34.  Subsequently, all requests for review of Nekkanti were withdrawn, and Commerce thereafter selected Megaa Moda as a replacement mandatory respondent to be individually investigated.  *See* Commerce Memorandum, "Selection of Additional Respondents for Individual Review" (July 21, 2022), C.R. 32, P.R. 81.  But before dropping out of the review, Nekkanti responded to most of Commerce's initial antidumping questionnaire.  In particular, Nekkanti provided responses to Section A of Commerce's original questionnaire (describing its organization, accounting practices, markets, and merchandise), Section B (identifying its sales in the home market or to a third country), and Section C (reporting its sales to the United States).  *See* Nekkanti Section A Response (June 2, 2022), C.R. 9-12, P.R. 43; Nekkanti Section B Response (June 23, 2022), C.R. 22, P.R. 51; and Nekkanti Section C Response (June 23, 2022), C.R. 24, P.R. 55.

In its Section A response, Nekkanti explained that the quantity and value of its reported shrimp sales did not include its sales of non-subject *breaded* shrimp.  Nekkanti Section A

Response (June 2, 2022), at Exhibit A-1, C.R. 9-12, P.R. 43.  In its Section B and Section C

responses, Nekkanti provided complete sales reconciliations that identified the volume and value

of its total export sales of non-subject breaded shrimp during the period of review.  Nekkanti

Section B Response (June 23, 2022), at Exhibit B-5, C.R. 22, P.R. 51; and Nekkanti Section C

Response (June 23, 2022), at Exhibit C-5, C.R. 24, P.R. 55.  Nekkanti did not submit a Section D

cost of production response, but it did report to Commerce that it produced "all the frozen shrimp

that it sold in the U.S. and China" during the period of review.  Nekkanti Section A Response

(June 2, 2022), at Question 10, C.R. 9-12, P.R. 43.

On January 17, 2023, Commerce issued Megaa Moda a supplemental questionnaire

seeking additional information regarding its sales in India to [                    ] and an

explanation as to why it believed such sales "were for consumption in India, rather than for

export to another market."  Letter from Commerce to Megaa Moda, "Supplemental

Questionnaire" (Jan. 17, 2023), at 7, (CR 75) (PR 139).  Specifically, in Question 15 of the

Supplemental Questionnaire, Commerce asked:

> *The vast majority of your home market sales were to [*
> *]. Provide a detailed explanation of why you believe your*
> *sales of shrimp to [        ] were for consumption in India, rather than for*
> *export to another market.* Id.

In response, Megaa Moda provided a detailed explanation to support its sales reporting, i.e., (1)

its delivery terms to [        ] were ex-works, i.e., the products were picked up by [        ]

in India; (2) the final destination of the sales in question was India; (3) Megaa Moda recorded the

sales as domestic sales in its normal books and records; (4) Megaa Moda had no knowledge,

information, or documentation that the material was destined for an export market; and (5) the

goods were packed in unbranded pouches and cartons, which under any circumstances were not

suitable for export to the U.S. market.  Letter from Megaa Moda to Commerce, "Megaa Moda

Private Limited's Response to 1st Supplemental Section ABC of the Original Antidumping

Questionnaire" (Feb. 3, 2023) ("Megaa Moda 1st Supp. Response"), at 14.  C.R. 82, P.R. 149.

       Last, in response to AHSTAC's argument that Megaa Moda's home market sales should

not be used to determine normal value, Megaa Moda explained that any claims that Megaa

Moda's sales of the foreign like product in India were not for consumption in India were based

on AHSTAC's conjecture – and not on any concrete documentation or other evidentiary

information; and that, in contrast, the administrative record contained substantial and sufficient

information that Megaa Moda's home market sales likely were for consumption in India.  *See*

Letter from Megaa Moda to Commerce, "Rebuttal Brief of Megaa Moda Private Limited" (May

18, 2023), at 1, C.R. 124, P.R. 188.  In particular, (1) sales of unbranded shrimp in India are

exempt from India's Integrated Goods and Service Tax ("IGST") by law, and a lack of sales tax

on Megaa Moda's sales to [        ] therefore did not indicate that such merchandise might be

resold for export; (2) Megaa Moda's customer, [                    ] that it

did *not* make any home market sales; (3) the market of a company's sales cannot be determined

by the descriptive nature of any words in a company's name, e.g., "international", etc.; and (4)

[        ] also was a producer of non-subject breaded shrimp products, and the shrimp sold to

[        ] by Megaa Moda could have been used to produce non-subject breaded shrimp.  *See*

Letter from Megaa Moda to Commerce, "Rebuttal Brief of Megaa Moda Private Limited" (May

18, 2023), C.R. 124, P.R. 188.

## STANDARD OF REVIEW

       The applicable standard of review is set forth in 19 U.S.C. § 1516a(b)(1)(B)(i).

Defendant-Intervenor, Megaa Moda, agrees with the discussion of the standard of review set

forth in the brief of the Domestic Industry (ECF 40 at 10-11).  However, Defendant-Intervenor

emphasizes that in conducting its review, the Court's function is not to reweigh the record

evidence, but rather to ascertain whether Commerce's determinations are supported by

substantial evidence on the record. *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927,

936 (Fed. Cir. 1984). Whether the Court might draw a different conclusion from the record

"does not prevent an administrative agency's finding from being supported by substantial

evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607 (1966) (citation omitted). When

Congress has entrusted an agency to administer a statute that demands inherently fact intensive

inquiries, such as in this case, the agency's conclusions may be set aside only if the record

contains evidence "so compelling that no reasonable factfinder" could reach the same

conclusion. *See INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *accord Nucor Corp. v.

United States*, 612 F. Supp. 2d 1264, 1287 (Ct. Int'l Trade 2009).

## ARGUMENT

The Domestic Industry argues that Commerce violated the statute when it included

certain home market sales in the calculation of normal value for Defendant-Intervenor Megaa

Moda that its claims were "not made for consumption in the home market." Plaintiffs' Brief, at

1. But the record evidence demonstrates that Megaa Moda reported the correct market of sale

for all sales reported in its U.S. and home market sales listings. In particular, based on

Commerce's well-established practice, Megaa Moda neither knew nor should have known at the

time of sale that any of the foreign like product that it sold to customers in India was destined for

export to the United States. As such, Commerce's reliance on Megaa Moda's Indian home

market sales as the basis for calculating normal value was supported by substantial evidence and

in accordance with law. Substantial evidence also supports Commerce's determination to

include the home market sales to [          ] in the calculation of normal values.

**PUBLIC VERSION**

## I.    The Legal Framework

Section 773(a)(1)(B) of the Act defines normal value as "the price at which the foreign like product is first sold (or, in the absence of a sale, offered for sale) for consumption in the exporting country, in the usual commercial quantities and in the ordinary course of trade and, to the extent practicable, at the same level of trade as the export price or constructed export price." 19 U.S.C. §1677b(a)(1)(B)(i).  In interpreting this provision, Commerce looks to whether the producer knew or should have known, at the time of sale, whether or not the merchandise would be exported.  *See Allegheny Ludlum Corp. United States*, 215 F. Supp. 2d 1322, 1330-31 (Ct. Int'l Trade 2000).  The Court has emphasized that "the appropriate burden of proof for determining whether to exclude sales" from the calculation of normal value is whether the producer knew or should have known that the merchandise was not for consumption in the comparison market based upon the facts and circumstances surrounding the sales.  *Id.* at 1332, *citing INA Walzlager Schaeffler KG v. United States*, 957 F. Supp 251, 264 (Ct. Int'l Trade 1997).  Over the years, this standard has become known as the "knowledge test."

A producer passes the knowledge test – and its sales to an unrelated middleman trader can be used to determine export price – if the "producer knew or had reason to know at the time of sale that the goods were for export to the United States."  Statement of Administrative Action Accompanying the Trade Agreements Act of 1979, H.R. Rep. No. 4537, 388, 411, reprinted in 1979 U.S.C.C.A.N. 665, 682.  Commerce's "standard for the knowledge test is high," however, and Commerce repeatedly has reiterated that it will not attribute U.S. sales to a foreign producer absent the producer's *particular* knowledge *at the time of sale* that the sales were destined for the United States.  *See, e.g.*, *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, et al.; Final Results of Antidumping Duty Administrative Reviews*, 60 Fed. Reg. 10900, 10951-10952 (Dep't Commerce Feb. 28, 1995).

In determining whether a producer knew or should have known its goods were destined for the United States, Commerce's preference is to consider documentary or physical evidence because such evidence is more probative, reliable, and verifiable than unsubstantiated statements or individual declarations.  *See Aluminum Extrusions from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Rescission, in Part, 2010/12*, 79 Fed. Reg. 96 (Dep't Commerce Jan. 2, 2014) ( Issues and Decision Memorandum, at Comment 2) (Barcode 3170829-01).  Commerce considers, for example, whether the relevant party prepared or signed any certificates, shipping bills, contracts, or other such documentation stating that the destination of the merchandise was the United States.  *See Certain Crystalline Silicon Photovoltaic Products From Taiwan; 2019-2020*, 86 Fed. Reg. 49509 (Dep't Commerce Sept. 3, 2021) (Issues and Decision Memorandum, at Comment 2) (Barcode 4156992-02), *citing Preliminary Determination of Sales at Less Than Fair Value and Postponement of Final Determination: Synthetic Indigo from the People's Republic of China*, 64 Fed. Reg. 69723, 69727 (Dep't Commerce Dec. 14, 1999) (unchanged in final determination).

Commerce also considers whether the relevant party used any packaging or labeling stating that the merchandise was destined for the United States, or shipped the merchandise to a port or other for-export destination.  *See Certain Crystalline Silicon Photovoltaic Products From Taiwan; 2019-2020*, 86 Fed. Reg. 49509 (Dep't Commerce Sept. 3, 2021) (Issues and Decision Memorandum, at Comment 2) (Barcode 4156992-02), *citing Certain Pasta From Italy: Termination of New Shipper Antidumping Duty Administrative Review*, 62 Fed. Reg. 66602 (Dep't Commerce Dec. 19, 1997).  Furthermore, Commerce has examined whether the features or specifications of the products sold indicated that the merchandise could be used only in the United States.  *See*, *e.g.*, *Certain Cut-to-Length Carbon Quality Steel Plate Products from Italy*,

Ct. No. 23-00202                                          **PUBLIC VERSION**

71 Fed. Reg. 11178, 11180 (March 6, 2006); *Pasta from Italy*, 62 Fed. Reg. 66602 (Dec. 19, 1997).  Commerce even has imputed knowledge to suppliers where they sold to traders that *did not sell* in the home market and where all exports during the period of investigation were to the United States.  *See*, *e.g.*, *Final Determination of Sales at Less Than Fair Value: Fuel Ethanol from Brazil*, 51 Fed. Reg. 5572 (Feb. 14, 1986).  In *Certain In-Shell Raw Pistachios from Iran*, Commerce further explained its "knowledge" standards:

> It is important to note that a general knowledge or belief on the part of a producer that an exporter sells to the United States is insufficient to establish knowledge with respect to particular sale(s).  Rather, the standard for making a knowledge determination is that the producer must have reason to know *at the time of the sale* that the *specific sales* of subject merchandise were destined for the United States.  *See Final Determination of Sales at Not Less Than Fair Value: Pure Magnesium From the Russian Federation*, 66 FR 49347 (September 27, 2001) (*Magnesium from Russia*), and accompanying Issues and Decision Memorandum at Comment 3.  The possibility that the producer may have speculated that the goods might ultimately be destined for the United States is insufficient for a knowledge determination.  Rather, the standard is whether the producer knew or should have known at the time of the sale that the goods were destined for the United States.

70 Fed. Reg. 7470 (Dep't Commerce Feb. 14, 2005) (Issues and Decision Memorandum, at 11) (emphasis in original).  In past knowledge determinations Commerce has relied on all these factors in determining whether the producer had actual or constructive knowledge that the goods were destined for the United States.  *See*, *e.g.*, *Wonderful Chemical Indus v. United States*, 259 F. Supp. 2d 1273, 1279 (Ct. Int'l Trade 2003).  Equally important, in applying the knowledge test, Commerce considers a seller's actual knowledge and imputed knowledge of the final destination of the merchandise under consideration ***at the time of sale***.  *See Grain-Oriented Electrical Steel from the Czech Republic:  Final Determination of Sales at Less Than Fair Value*, 79 Fed. Reg. 58324 (Dep't Commerce Sept. 29, 2014) (Issues and Decision Memorandum, at Comment 2) (Barcode 3230597-01).  As described below, Commerce correctly concluded in the final determination based on the administrative record that the requisite factors indicating knowledge

of U.S. export were insufficient in this case, and that Megaa Moda did not know and should not have known ***at the time of sale*** that any of the foreign like product that it sold to home market customers, including [          ], was destined for the United States.

Finally, there is another legal principle at issue in this appeal. Under long-standing Commerce practice, merchandise sold to a market, even if ultimately destined for export, is "consumed" in the market if it is used there to produce non-subject merchandise prior to exportation. *See Final Determination of Sales at Less Than Fair Value: Certain Hot-Rolled Carbon Steel Flat Products, Certain Corrosion Resistant Carbon Steel Flat Products, and Certain Cut-to-Length Carbon Steel Plate From Korea*, 58 Fed. Reg. 37176, 37182 (Dep't Commerce July 9, 1993); *Final Determination of Sales at less Than Fair Value: Dynamic Random Access Memory Semiconductors of One Megabit and Above From the Republic of Korea*, 58 Fed. Reg. 15467, 15473 (Dep't Commerce March 23, 1993) ("where a product within the scope of an investigation has been transformed into a product outside that scope before exportation, we consider that product to have been 'consumed' within the country").

## II.    Megaa Moda Had No Reason to Know That Any of Its Domestic Sales Would Not Be Consumed in India

The Domestic Industry maintains that the use of Megaa Moda's Indian sales to calculate normal values requires that such sales be for consumption in India. But Commerce concluded that the evidence in fact supported a finding that Megaa Moda's home market sales were consumed in India. Moreover, the Domestic Industry did not identify sufficient evidence that would have allowed Commerce to substantiate the allegation that Megaa Moda knew or should have known that the merchandise it sold in India to a particular customer was ***not*** for consumption in India. Commerce thus reasonably found that all of Megaa Moda's sales in India were representative and suitable for use in calculating normal values.

### A.  The Administrative Record Supports a Finding of Consumption in India

The Court should conclude that Commerce correctly included all of Megaa Moda's

domestic sales of frozen shrimp in India in the calculation of Megaa Moda's normal values

because substantial evidence supports that Megaa Moda's sales to [          ] were for

consumption in India.  See 19 U.S.C. § 1677b(a)(1)(B)(i).

Specifically, there is no record evidence that Megaa Moda prepared or signed any

documentation relevant to the shipping, handling, and packing of the frozen shrimp merchandise

that it sold in India that stated that the merchandise would be exported.  One of Megaa Moda's

customers, [

                                                                                  ].  But there is

nothing on the administrative record that demonstrates with regard to the merchandise under

consideration sold to [          ] that Megaa Moda prepared any export documentation related to

the sales.  In contrast, numerous indicators in the commercial documents of Megaa Moda's sales

to [          ] establish that at the time of sale, Megaa Moda did not know and had no reason to

know that any of the shrimp merchandise sold to [          ] would not be consumed in India.

First, the initial correspondence with [          ] agent shows that the sale destination was

[          ], which is located in India.  *See* Megaa Moda 1st Supp. Response, at Exhibit S1-

8, C.R. 83, P.R. 150.  Second, the tax invoice Megaa Moda issued to [          ] similarly

identified the "Country of Final Destination" as [          ], which is an abbreviation of

[          ].  *Id.*  Third, the delivery terms of the [          ] sales were [          ], and the

products sold to [          ] were made available for pickup at Megaa Moda's processing plant.

*See* Mega Moda's Section Response (Aug. 29, 2022) at A-7, C.R. 36, P.R. 99; Megaa Moda 1st

Supp. Response, at Exhibit S1-8, C.R. 83, P.R. 150.  Fourth, there is no evidence on the record

that Megaa Moda used special labeling for its sales to [          ] that stated that the merchandise

was destined for export, and there also is no evidence that Megaa Moda used specific export

packing for these sales.  Under [          ] terms, the seller's duty of delivery is deemed fulfilled

when the buyer takes possession of the merchandise, and the seller typically does not know, nor

have reason to know, the final destination.  In this case, Commerce's finding that Megaa Moda's

sales to [          ] were in fact delivered to "a location in India" – instead of being packaged for

export and delivered to a sea port – supports the agency's conclusion that the sales in question

were for consumption in India.

      That Megaa Moda recorded the sales to [          ] as domestic sales in its normal books

and records also establishes that Megaa Moda did not know or have reason to know that the

merchandise sold to [          ] was sold for export.  All invoices issued by Megaa Moda

adhered to a uniform structure, and the invoice number for the sample sale to [          ]

provided to Commerce by Megaa Moda was [                    ], in which [



                                    ] to denote domestic sales or export sales, and a

three-digit sequential number.  *See* Megaa Moda Section B Response (Sept. 21, 2022), at B-24,

C.R. 52, P.R. 118.  The use of [      ] in the invoice number establishes that Megaa Moda

recognized this sale as a domestic sale in the ordinary course of business.  In addition, Megaa

Moda provided an accounting screenshot that shows that the company recorded the sale to

[          ] in its domestic sales account: [                              ].  *See* Megaa

Moda 1st Supp. Response, at Exhibit S1-8, C.R. 83, P.R. 150.  Nothing in any of these documents

suggests that the sales to [          ] were not for domestic consumption or that Megaa Moda

knew or should have known at the time of sale that the merchandise was for export.

While the Domestic Industry claims that other evidence suggests that Megaa Moda knew or should have known that its sales to [          ] were not for consumption in India, its arguments either are contradicted by record evidence or are based on conjecture.  For example, the Domestic Industry claims that Megaa Moda knew its sales to [          ] were not for consumption in India because Megaa Moda [                              ] on such sales.  Plaintiffs' Brief, at 14.  But the Domestic Industry ignores Commerce's finding that the record did not establish that [          ] were specific to the domestic market or that the absence of these taxes was evidence of an export sale.  Proprietary Decision Memorandum, at 5, C.R. 130, P.R. 204.  Moreover, Commerce found that the record supported Megaa Moda's claim that these taxes do not apply to domestic sales of unbranded shrimp, i.e., the type of shrimp sold by Megaa Moda to [          ].  Proprietary Decision Memorandum, at 5, C.R. 130, P.R. 204.

The Domestic Industry also argues that export knowledge should have been imputed to Megaa Moda for its sales to [          ] because the [                    ] for these transactions [                                        ].  Plaintiffs' Brief, at 16.  But information on the record does not establish that [                    ] determines the end use of such sales or where they are consumed; rather, [          ] is driven by demand.  While larger companies typically purchase [                    ] than smaller companies, and [          ] is a larger company, identifying a sales market by [          ] essentially is a speculative exercise.   In fact, Megaa Moda's [          ] not only was [          ] than its other home market sales, but also was [                              ].  *See* Megaa Moda Section B and C Responses (Sept. 21, 2022), Sales Listing Databases, C.R. 61 and 62.  Commerce therefore correctly declined to impute export knowledge to Megaa Moda based on individual sales volumes.

The Domestic Industry also suggests that Megaa Moda should have known that the shrimp it sold to [          ] would be exported because that shrimp [

          ] different from the shrimp sold to other Indian customers.  Plaintiffs' Brief, at 16-17.  But record information does not establish that the frozen warmwater shrimp sold to [          ] contained unique specifications or was of a type that indicated that the merchandise could be used only in export markets and not in India.  *See*, *e.g.*, *Certain Cut-to-Length Carbon Quality Steel Plate Products from Italy*, 71 Fed. Reg. 11178, 11180 (March 6, 2006) (Commerce examined whether the features or specifications of the products sold indicated that the merchandise could be used only in the United States).

Last, the Domestic Industry contends that Megaa Moda knew or should have known that its sales to [          ] were not for consumption in the country of exportation because [          ] was a known exporter and the name of the [                              ]. Plaintiffs' Brief, at 17 and 21.  However, Commerce found that the use of a [

          ] in its name did not demonstrate that sales are intended for an export market.  Proprietary Decision Memorandum, at 4-5, C.R. 130, P.R. 204.  More importantly, and as described above, a general knowledge or belief on the part of the first party in the sales chain that the next party generally exports some products to the United States does *not* meet Commerce's "knowledge" standard.  *Certain Welded Carbon Steel Standard Pipes and Tubes from India: Preliminary Determination; 2022-2023*, 89 Fed. Reg. 8160 (Dep't Commerce Feb. 6, 2024) (Preliminary Decision Memorandum, *citing Certain In-Shell Raw Pistachios from Iran*, 70 Fed. Reg. 7470 (Feb. 14, 2005) (Issues and Decision Memorandum, at Comment 1)); *see also Certain Crystalline Silicon Photovoltaic Products From Taiwan; 2019-2020*, 86 Fed. Reg. 49509 (Sept. 3, 2021) (Issues and Decision Memorandum, at Comment 2).  Thus, even

when a producer speculates that its merchandise ultimately might have been destined for export because its customer often exports, that is *insufficient* for a knowledge determination. *Id.* Here, Commerce correctly refused to impute knowledge of exportation to Megaa Moda simply because [          ] also is an exporter of shrimp.

Commerce's practice requires that knowledge of ultimate exportation at the time of sale both exist and be demonstrable. See *Certain Circular Welded Non-Alloy Steel Pipe From Mexico: Final Results of Antidumping Duty Administrative Review*, 75 Fed. Reg. 20342 (Dep't Commerce April 19, 2010) (Issues and Decision Memorandum, at Comment 3) (Commerce's examination of the sales documentation showed "no evidence to suggest TUNA made sales to the United States"); *see also Certain Freight Rail Couplers and Parts Thereof from Mexico*, 88 Fed. Reg. 65153 (Dep't Commerce Sept. 21, 2023) (Issues and Decision Memorandum, at Comment 1) (Barcode 4432016-02) (Commerce's practice in applying the knowledge test is "to consider documentary or physical evidence that the producer knew or should have known at the time of sale"). Unlike in other cases in which Commerce imputed knowledge of U.S. destination to respondents based on constructive evidence, *see*, *e.g.*, *DRAMs from Korea* 64 Fed. Reg. 69694 (Dep't Commerce Dec. 14, 1999), the record in this case does not contain unambiguous, documentary evidence at the time of sale, or prior to it, that the merchandise included on the sales to [          ] was destined for the United States. To the degree that [          ] actually might have resold any of Megaa Moda's merchandise to the United States or to another export market, it thus did so without any involvement or knowledge of Megaa Moda.

For all the reasons above, Commerce correctly found that the Domestic Industry's arguments with respect to the proper market reporting of Megaa Moda's POI sales were without basis and that ***at the time of sale*** Megaa Moda did not have sufficient particular knowledge that

the merchandise sold to [          ] or any other Indian customers would be exported.  In this

case where the Domestic Industry relies mostly on conjecture, and has provided no actual

evidence that Megaa Moda's sales in India were not for consumption in India, the Court should

find that the Domestic Industry's comments and unfounded claims do not detract from the

reasonableness of Commerce's final determination.  As such, the Court should conclude that

Commerce's decision to treat all of Megaa Moda's Indian sales as sales for domestic

consumption and to use these sales to calculate normal values for comparison to Megaa Moda's

U.S. sales was supported by substantial evidence.

### B.  Transformation Supports a Finding of Consumption in India

Finally, even if the trade patterns of [          ] discussed above were relevant – and they

are not – and even if Megaa Moda knew that [          ] might export the shrimp merchandise

that it purchased from Megaa Moda – and it did not – Commerce's final determination is still

supported by substantial evidence.  Specifically, nothing on the administrative record establishes

that the shrimp sold to [          ] by Megaa Moda was not processed into merchandise *outside*

*the scope of the antidumping duty order* prior to exportation.  As discussed above, when a

product within the scope of an investigation is further processed into a product outside the scope

before exportation, Commerce consider that product to have been "consumed" within the

country.  *See Certain Hot-Rolled Carbon Steel Flat Products, Certain Corrosion Resistant*

*Carbon Steel Flat Products, and Certain Cut-to-Length Carbon Steel Plate From Korea*, 58 Fed.

Reg. at 37182 (Dep't Commerce July 9, 1993).  If Megaa Moda's Indian customers, including

[          ], processed the shrimp purchased from Megaa Moda into breaded shrimp, battered

shrimp, prepared meals, canned shrimp, or other forms of non-subject shrimp merchandise, then

those purchases were "for consumption" in India regardless of whether the downstream products

were sold in India or subsequently exported.

In this review, the administrative record does not establish that Megaa Moda's customers in India did not process the purchased frozen shrimp into merchandise not under consideration. To the contrary, the record establishes, in particular, that [

]. In [

]. Because subject shrimp can be used to produce non-subject breaded shrimp, Megaa Moda did not know and should not have known at the time of sale whether the subject shrimp sold to [          ] might have been further manufactured into *non-subject merchandise* prior to exportation. Because no evidence demonstrates that Megaa Moda's merchandise was re-exported either as in-scope or as **non-scope merchandise**, it was reasonable for Commerce to conclude that (1) Megaa Moda did not pass the knowledge test; (2) that "consumption" in India had occurred; and (3) that all of Megaa Moda's sales in India were suitable for establishing Megaa Moda's normal values.

## CONCLUSION

In *Welded Line Pipe From the Republic of Korea*, Commerce found that actions taken by customers in a foreign market, including transforming subject merchandise into non-subject merchandise prior to export, reselling merchandise to other customers before export, or simply exporting the merchandise "as is," did not result in the exclusion of those sales from comparison purposes if the producer that sold to those customers had no knowledge that the merchandise it sold might be exported to foreign destinations with or without any further processing.  80 Fed.

Reg. 61366 (Dep't Commerce Oct. 13, 2015) (Issues and Decision Memorandum, at Comment 6). Commerce's practice is to include all home market or third country sales in the pool of potential comparison sales unless it can be established conclusively to the satisfaction of Commerce that the seller knew, or had reason to know, at the time of sale that the merchandise would *not* be consumed in the home market or third country. *See Coalition of American Flange Producers v. United States*, 517 F. Supp. 3d 1378 (Ct. Int'l Trade 2021) (despite conflicting evidence, the Court deferred to Commerce's experience and expertise when the agency concluded that information in the sales agreement, product packaging requirements, and product logo requirements indicated that the domestic sale was intended for the export market).

In this case, there is nothing in Megaa Moda's sales documentation with its India customers or anything else on the administrative record that establishes that Megaa Moda knew or should have known that any of the merchandise it sold to India customers was for re-export rather than for the India home market or for further processing into non-subject merchandise. The Domestic Industry has presented no evidence establishing that Megaa Moda actually was aware of the downstream use of its shrimp merchandise other than for Indian domestic consumption. There is no evidence on the record showing that the shrimp that Megaa Moda sold to [          ] was exported from India or that, even if there were, that Megaa Moda knew at the time of sale that such shipments to [          ] would ultimately be exported *as subject merchandise*. Given this lack of evidence, it would have been unreasonable and unlawful for Commerce to have concluded that Megaa Moda's sales to [          ] were not for consumption in India. As such, Commerce correctly concluded that Megaa Moda's sales to [          ] and its other Indian customers were consumed in India and that Commerce should use these sales as the basis for calculating Megaa Moda's normal values.

**PUBLIC VERSION**

For the reasons addressed above, this Court should reject the Domestic Industry's challenges to Commerce's reasonable determinations and uphold Commerce's final determination as supported by substantial evidence and in accordance with law.  Megaa Moda respectfully requests that the Court deny the Domestic Industry's motion for judgment on the agency record and enter judgment for the United States.

Respectfully submitted,

/s/ Robert G. Gosselink
Robert G. Gosselink
Aqmar Rahman

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C.  20003
(202) 223-3760

Counsel to Megaa Moda Pvt. Ltd.

Dated:  April 16, 2024

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **AD HOC SHRIMP TRADE ACTION COMMITTEE,** | |
| **Plaintiff,** | |
| **and** | |
| **AMERICAN SHRIMP PROCESSORS ASSOCIATION,** | |
| **Plaintiff-Intervenor,** | |
| **and** | |
| **MEGAA MODA PRIVATE LIMITED** | **Thomas J. Aquilino, Judge** |
| **Consolidated Plaintiff,** | |
| **v.** | **Consol. Court No. 23-00202** |
| **UNITED STATES** | |
| **Defendant,** | |
| **and** | |
| **MEGAA MODA PRIVATE LIMITED,** | |
| **Defendant-Intervenor,** | |
| **and** | |
| **AMERICAN SHRIMP PROCESSORS ASSOCIATION, et al.,** | |
| **Defendant-Intervenors.** | |

## CERTIFICATION OF COMPLIANCE

The undersigned counsel at Trade Pacific PLLC hereby certifies that the accompanying Response Brief, dated April 16, 2024, complies with the 7,000 word-count limitation described in part 2(B)(1) of the Court's Chambers Procedures. The brief contains 5,570 words, excluding the table of contents, table of authorities, and counsel's signature block.

Respectfully submitted,

/s/ Robert G. Gosselink
Robert G. Gosselink
Trade Pacific PLLC
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C. 20003
Tel.: (202) 223-3760
Dated: April 16, 2024                              Counsel to Megaa Moda Private Limited