**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE THOMAS J. AQUILINO, JR., JUDGE**

| | |
|---|---|
| **AD HOC SHRIMP TRADE ACTION COMMITTEE,** | |
| Plaintiff, | |
| and | |
| **AMERICAN SHRIMP PROCESSORS ASSOCIATION,** | |
| Plaintiff-Intervenor, | |
| and | |
| **MEGAA MODA PRIVATE LIMITED,** | |
| Plaintiff, | **Consol. Court No. 23-00202** |
| v. | |
| **UNITED STATES,** | |
| Defendant, | |
| and | |
| **MEGAA MODA PRIVATE LIMITED,** | |
| Defendant-Intervenor, | |
| and | |
| **AMERICAN SHRIMP PROCESSORS ASSOCIATION,** *et al.*, | |
| Defendant-Intervenors. | |

**THE AD HOC SHRIMP TRADE ACTION COMMITTEE'S AND THE AMERICAN SHRIMP PROCESSORS ASSOCIATION'S JOINT RESPONSE TO MEGAA MODA PRIVATE LIMITED'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

**SCHAGRIN ASSOCIATES**
900 Seventh Street NW, Suite 500
Washington, DC 20001

*Counsel to the American Shrimp Processors Association*

Dated: April 8, 2024

**PICARD KENTZ & ROWE LLP**
1750 K Street NW, Suite 800
Washington, DC 20006

*Counsel to the Ad Hoc Shrimp Trade Action Committee*

# TABLE OF CONTENTS

Table of Authorities.................................................................................................ii

Introduction............................................................................................................. 1

Statement Pursuant to USCIT Rule 56.2(c) ............................................................ 1

Statement of Facts................................................................................................... 2

Standard of Review................................................................................................. 5

Argument ................................................................................................................ 6

    I.   Commerce' Properly Rejected Megaa Moda's Attempt to Offset Interest
        Expenses Using a Countervailed Government Subsidy Payment................................7

    II.  Commerce Properly Rejected Megaa Moda's Still Unknown "interest on
        FD with FBL" as an Allowable Offset ........................................................ 13

Conclusion ............................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*Ansaldo Componenti, S.p.A. v. United States*, 628 F. Supp. 198 (Ct. Int'l Trade 1986) ................................................................................................ 13

*Apex Exports v. United States*, 37 C.I.T. 1823 (2013), *aff'd*, 777 F.3d 1373 (Fed. Cir. 2015) ........................................................................... 8, 11, 12

*Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938) ................................... 5

*Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607 (1966) ................................. 6

*Fischer S.A. Comercio, Industria & Agricultura v. United States*, Slip Op. 14–58, 2014 WL 2853909 (Ct. Int'l Trade 2014) ............................................ 11

*INS v. Elias-Zacarias*, 502 U.S. 478 (1992) ............................................ 6

*Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States*, 651 F. Supp. 3d 1348 (Ct. Int'l Trade 2023) ............................................................... 8, 14

*Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927 (Fed. Cir. 1984) ........... 6

*Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261 (Fed. Cir. 2002) ......... 16

*NTN Bearing Corp. of Am. v. United States*, 997 F.2d 1453 (Fed. Cir. 1993) ......... 16

*Pakfood Pub. Co. v. United States*, 34 C.I.T. 1122 (2010) ..................... 7, 12, 14

*Pakfood Pub. Co. v. United States*, 453 F. Appx. 986 (Fed. Cir. 2011) ......... 8, 10, 12

*SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) .............. 16

*Tianjin Mach. Imp. & Exp. Corp. v. United States*, 806 F. Supp. 1008 (Ct. Int'l Trade 1992) ................................................................................. 16

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) ........................... 5

**Statutes**

19 U.S.C. § 1516a(b)(1)(B) .................................................................. 5

19 U.S.C. § 1677b(b)(3) ..................................................................... 10

19 U.S.C. § 1677m(d) ......................................................................... 4

**Regulations**

19 C.F.R. § 351.401(b)(1) .................................................................. 13

**Administrative Determinations**

*Certain Carbon and Alloy Steel Cut-To-Length Plate From Italy: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2020-2021*, 87 Fed. Reg. 75,219 (Dep't Commerce Dec. 8, 2022) ................. 8

*Certain Frozen Warmwater Shrimp from India: Final Results of Antidumping Duty Administrative Review and Final No Shipment Determination*, 77 Fed. Reg. 40,848 (Dep't Commerce July 11, 2012) ................................................. 8

*Chlorinated Isocyanurates From Spain: Final Results of Antidumping Duty Administrative Review*, 72 Fed. Reg. 64,194 (Dep't Commerce Nov. 15, 2007) .............. 14

*Glycine from India: Final Determination of Sales at Less Than Fair Value*, 84 Fed. Reg. 18,487 (Dep't Commerce May 1, 2019) ........................................................... 15

*Large Diameter Welded Pipe From India: Final Affirmative Countervailing Duty Determination*, 83 Fed. Reg. 56,819 (Dep't Commerce Nov. 14, 2018) ............................ 9

*Notice of Final Results of Antidumping Duty Administrative Review: Silicon Metal from Brazil*, 71 Fed. Reg. 7517 (Dep't Commerce Feb. 13, 2006) .......................... 14

## INTRODUCTION

Defendant-Intervenors, the Ad Hoc Shrimp Trade Action Committee ("AHSTAC") and the American Shrimp Processors Association ("ASPA") (collectively, the "Domestic Industry"), respectfully submit this joint response to the motion for judgment on the agency record filed by Plaintiff Megaa Moda Private Limited ("Megaa Moda") (ECF Nos. 38 and 39). For the reasons set out below, the Domestic Industry respectfully requests that this Court deny Megaa Moda's motion for judgment on the agency record.

## STATEMENT PURSUANT TO USCIT RULE 56.2(C)

### A.     Administrative Determination to Be Reviewed

The administrative determination under review is the Department of Commerce's ("Commerce") final results in the seventeenth administrative review of the antidumping duty order on certain frozen warmwater shrimp from India. The challenged determination was published in the *Federal Register* on September 1, 2023 as *Certain Frozen Warmwater Shrimp From India: Final Results of Antidumping Duty Administrative Review; 2021-2022*, 88 Fed. Reg. 60,431 (Dep't Commerce Sept. 1, 2023) ("*Final Results*"), P.R. 205.[1] The determinations, findings, and conclusions challenged in this appeal are set out primarily in the "Issues and Decision Memorandum" accompanying the *Final Results*. *See* Issues and Decision Memorandum for the Final Results of the 2021-2022 Antidumping Duty Administrative Review of Certain Frozen Warmwater Shrimp from India (Aug. 25, 2023) ("IDM"), P.R. 202.

---

[1] Confidential documents in this response are identified with the rubric "C.R." followed by the relevant document number while public documents and public versions of confidential documents are identified by the rubric "P.R." followed by the relevant document number.

B.    **Issues of Law and Fact Presented**

Plaintiff Megaa Moda challenges Commerce's determination on the following two issues:

1)    Whether Commerce properly denied an offset to Megaa Moda's interest expenses for interest subvention.

2)    Whether Commerce properly denied an offset to Megaa Moda's interest expenses when Megaa Moda failed to provide even basic information on the proposed offset.

## STATEMENT OF FACTS

A statement of the general facts concerning the challenged administrative review at Commerce can be found on pages 2-10 of the Domestic Industry's opening brief (ECF Nos. 40 and 41). Facts related to the issues that are being challenged by Megaa Moda are set out below.

In its "Section D" response to Commerce on cost of production of the subject merchandise, Megaa Moda claimed that its net interest expense for the period of review ("POR") was negative and so Megaa Moda was not including any interest expenses in its reported costs of production. "Megaa Moda Private Limited's Response to Section D of the Original Antidumping Questionnaire" (Sept. 22, 2022) ("Megaa Moda Sec. D"), C.R. 63-66, P.R. 129-131, at D-35 and D-47. Megaa Moda provided no narrative explanation of how it calculated a negative net interest expense, but referred only to the calculation sheet it provided for its general and administrative ("G&A") expense ratio. *Id.* at D-35; *see also id.* at Exhibit D-14 (Megaa Moda's interest expense calculation worksheet).

Upon reviewing Megaa Moda's interest expense reporting, Commerce issued a supplemental questionnaire to the company, instructing Megaa Moda *inter alia* to show with supporting documentation that the offsets it was applying to reach that claimed net negative interest expense were derived from interest income earned on short-term assets. *See* "Megaa Moda Private Limited's Response to 2nd Supplemental Section D of the Original Antidumping

Questionnaire" (Feb. 13, 2023) ("Megaa Moda Supp. D"), C.R. 90-94, P.R. 153-155, at SD1-20 – SD1-21. In response, Megaa Moda addressed its "interest subvention" offset, explaining that this related to the "refund of interest expense on Pre {sic} shipment export finance under {sic} 'Interest Equalization Scheme for Pre and Post Shipment Rupee Export Credit' announced by {sic} Government of India." *Id.* at SD1-20. Under this government scheme, Megaa Moda stated that it had been refunded three percent of the interest it paid for pre-shipment export financing. *Id.* at SD1-20 – SD1-21. For supporting documentation, Megaa Moda provided a circular from the Reserve Bank of India on the subvention program (its Exhibit SD1-12) and screen shots of its related ledger and bank statement (its Exhibits SD1-12(a) and (b)). *Id.* Megaa Moda did not address any other offsets it applied in its interest expense calculation in its supplemental response. *See id.*

In its preliminary determination, Commerce disallowed interest expense offsets that Megaa Moda had applied. Commerce explained that Megaa Moda had failed to show that the offsets were related to short-term investments of its working capital. Decision Memorandum for the Preliminary Results of the 2021-2022 Administrative Review of the Antidumping Duty Order on Certain Frozen Warmwater Shrimp from India (Feb. 27, 2023) ("PDM"), P.R. 159, at 13. *See also* Preliminary Results Calculations for Megaa Moda (Feb. 27, 2023), C.R. 105, P.R. 164, at 2.

Following Commerce's preliminary determination, Megaa Moda submitted a case brief arguing that Commerce had improperly denied the interest expense offsets. Megaa Moda argued that because the "the packing credit loans" the interest subvention refunds were related to were short-term in nature and listed as short-term loans in its financial statement and records, Commerce must accept the interest subvention as short-term interest income and allow the offset. "Revised Case Brief of Megaa Moda Private Limited's" (June 9, 2023), C.R. 127, P.R. 197, at 7-

9 ("Megaa Moda Agency Brief"). Megaa Moda also claimed that Commerce must allow an interest expense offset for "interest on FD with FBL." *Id.* at 9-13. Megaa Moda recognized that Commerce had preliminarily denied that offset because Megaa Moda had failed to show it was short-term interest income. *Id.* at 9. In its briefing before the agency, Megaa Moda did not explain what "interest on FD with FBL" was, but instead claimed that the amount for "interest on FD with FBL" in Megaa Moda's calculations could be tied into the amount for "Cash and Cash Equivalents" reported in Megaa Moda's financial statements. *Id.* at 12-13. Megaa Moda argued that because cash and cash equivalents were recognized as short-term assets, Commerce must therefore accept that "interest on FD with FBL" was short-term interest income. *Id.* at 13. Megaa Moda also sought to blame Commerce for the state of the record, arguing that the agency had failed to notify Megaa Moda that its response had been deficient as to information on this point, which Megaa Moda claimed violated Commerce's duties to Megaa Moda under 19 U.S.C. § 1677m(d) and prevented Commerce from applying what Megaa Moda styled as adverse facts by rejecting the offset. *Id.* at 10-11.

Both AHSTAC and ASPA replied in response briefs before the agency, explaining the flaws in Megaa Moda's claims. As both domestic parties pointed out, Commerce is very familiar with the interest subvention program offered to exporters by the Indian government, as Commerce has in a number of cases found that program to be a countervailable export subsidy intended to unfairly benefit Indian exporters. *See* "Rebuttal Brief" (Apr. 18, 2023), C.R. 119, P.R. 176 at 5-8; "ASPA's Rebuttal Brief" (April 18, 2023), C.R. 120, P.R. 178, at 7-8.

In its final determination in the review, Commerce rejected Megaa Moda's claims. Commerce explained that its practice is to "allow a respondent to offset financial expenses with short-term interest income." IDM, P.R. 202, at 14. Such short-term interest income is defined as

income "generated from the company's current assets and working capital accounts." *Id.*
Commerce recognized that, based on Megaa Moda's own description of the interest subvention
refunds at issue, this was not interest generated from the "company's current assets and working
capital accounts," but was "the refund of interest expenses from export credit," and so did not
qualify as short-term interest income that could be applied as an offset. *Id.* Commerce also
recognized that Megaa Moda had provided no supporting documentation regarding the claimed
short-term nature of "interest on FD with FBL." *Id.* As "the burden of proof rests with the party
making a claim and in possession of the needed information," Commerce held that Megaa Moda
had failed to meet its burden of production regarding information and documentation of "interest
on FD with FBL," preventing the agency from determining based on supported facts whether it
was short-term in nature. *Id.*

Megaa Moda's challenge to Commerce's determination on these two points was brought
to this Court on September 29, 2023, and consolidated into the instant case that had been
initiated by AHSTAC on November 6, 2023. *See* Consolidation Order, ECF No. 30. Megaa
Moda moved for judgment on the agency record on February 6, 2024. *See* Plaintiff's Rule 56.2
Motion for Judgment on the Agency Record and Memorandum in Support, ECF Nos. 38 and 39
("Megaa Moda Brief").

## STANDARD OF REVIEW

This Court will only "hold unlawful any determination, finding, or conclusion found . . .
to be unsupported by substantial evidence on the record, or otherwise not in accordance with
law." 19 U.S.C. § 1516a(b)(1)(B). A decision is supported by substantial evidence where there is
"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (quoting *Consol. Edison Co. v.
NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is something less than the weight of the

evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). Applying the substantial evidence standard does not require that the Court supersede the decision-making role of the agency, and so the Court does not determine what decision it would have made had it been in Commerce's position. *See Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 936 (Fed. Cir. 1984). Instead, that agency's decisions are due deference and only set aside where "no reasonable fact finder" could have reached the same conclusion. *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992).

## ARGUMENT

Commerce's rejections of Megaa Moda's unsupported and improper interest expense offsets were fully supported by substantial evidence on the record and otherwise were in full accordance with the law. In its arguments before the Court, Megaa Moda ignores Commerce's practice that requires such offsets to be based on interest income earned on a short-term asset. Megaa Moda argues instead that Commerce should be required to accept an offset based on a countervailed adjustment to the interest rate Megaa Moda paid on a liability. Megaa Moda also argues that Commerce should have accepted another offset for which even the non-abbreviated name is unknown on the record, simply because of how Megaa Moda treated that unknown account in its records. As Megaa Moda failed to meet the burden affirmatively on it to provide the information needed to determine whether the offset met the agency's requirements, Commerce's rejection of that offset was also entirely proper.

I.       **Commerce Properly Rejected Megaa Moda's Attempt to Offset Interest Expenses Using Interest Subvention**

In its brief before the Court, Megaa Moda argues that it was unreasonable for Commerce to disallow Megaa Moda's use of interest subvention amounts as an offset to Megaa Moda's interest expenses. *See* Megaa Moda Brief at 9. Megaa Moda recognizes that the interest subvention was the *refund* of interest expenses Megaa Moda *paid* for loans it had taken out. *Id.* at 10. Yet Megaa Moda argues that because those loans were short-term in nature, Commerce must accept the interest subvention as short-term interest income. *Id.* Megaa Moda seeks to bolster that reasoning by arguing that the loans "were required to be settled within 180 days." *Id.* Megaa Moda also argues that because the loans were classified as short-term borrowing in Megaa Moda's records and financial statements, the refunds of the interest must be considered "as short-term income." *Id.* at 11. Megaa Moda concludes that because "the refunds of interest expenses… were short-term in nature" and, Megaa Moda claims, "stemmed from the company's working capital," Commerce's decision to reject Megaa Moda's use of those refunds as short-term interest income was not supported by substantial evidence. *Id.* at 12.

Yet nowhere in its brief has Megaa Moda even attempted to address the central reason that Commerce rejected Megaa Moda's offset claims here. Commerce did so because the interest refunds Megaa Moda received were in no way interest *income* that was *earned* on short-term *assets*.

a.  ***Commerce's Well Established Practice Is to Limit Interest Expense Offsets to Interest Income Earned on Short-Term Assets***

This Court has long recognized that "Commerce had clearly established a practice of allowing income expense offsets *solely* for short-term income from current assets and working capital accounts." *Pakfood Pub. Co. v. United States*, 34 C.I.T. 1122, 1151 (2010) (emphasis added) ("*Pakfood I*"). *See also id.* at 1153 ("current assets and working capital accounts are

7

necessary to meet a company's daily cash requirements, the Department will grant offsets only where the income in question derives from such assets"); *Pakfood Pub. Co. v. United States*, 453 F. Appx. 986, 987–88 (Fed. Cir. 2011) (affirming the CIT's statements in *Pakfood I*) ("*Pakfood II*"); *Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States*, 651 F. Supp. 3d 1348, 1364 (Ct. Int'l Trade 2023) ("The first question in calculating an offset is whether the interest income is short-term or derived from current assets or working capital accounts."); *Apex Exports v. United States*, 37 C.I.T. 1823, 1830 (2013), *aff'd*, 777 F.3d 1373 (Fed. Cir. 2015) ("the practice Commerce has consistently followed is to allow 'income expense offsets solely for short-term income from current assets and working capital accounts;'" *quoting Pakfood I*). Commerce has recurrently stated this practice. *See, e.g.*, *Certain Carbon and Alloy Steel Cut-To-Length Plate From Italy: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2020-2021*, 87 Fed. Reg. 75,219 (Dep't Commerce Dec. 8, 2022), and accompanying Issues and Decision Memorandum at Comment 5 ("It is Commerce's well-established practice to allow a respondent to offset financial expenses with short-term interest income if such income is generated from current assets and working-capital accounts."); *Certain Frozen Warmwater Shrimp from India: Final Results of Antidumping Duty Administrative Review and Final No Shipment Determination*, 77 Fed. Reg. 40,848 (Dep't Commerce July 11, 2012), and accompanying Issues and Decision Memorandum at Comment 6 (explaining that Commerce's practice is to allow "interest income from short-term interest bearing assets" to be applied as an offset).

Thus, the question is not, as Megaa Moda poses it, whether the amount sought to be used as an offset can be described as "short-term" in some way or linked through multiple steps to some short-term funding. The question is whether the amount can be appropriately characterized

as interest income that was earned on a short-term asset. As Megaa Moda demonstrates, these are very different questions.

### b. *Megaa Moda's Interest Subvention Was A Refund of Interest Paid on a Liability, Not Interest Income Earned on a Short-Term Asset*

There is no question that the interest subvention program Megaa Moda received interest refunds under was not a short-term asset of any type. As the Domestic Industry pointed out in their briefs before the agency, this program is a well-known export subsidy program, put in place by the Indian government to benefit Indian exporters such as Megaa Moda. As Commerce has described, under the program the Indian government limits the interest rate that participating banks can charge on loans they provide for financing exporting activities. *See Large Diameter Welded Pipe From India: Final Affirmative Countervailing Duty Determination*, 83 Fed. Reg. 56,819 (Dep't Commerce Nov. 14, 2018), and accompanying Issues and Decision Memorandum at 18-19. If the bank charges a higher interest rate, the Indian government steps in and provides interest subvention to limit the payments its exporters incur to arrange export funding. *Id.* Commerce has countervailed this program in a number of "CVD proceedings involving India." *Id.* at 18.

As Megaa Moda itself stated, the amounts it received under this program were "refunded … interest." Megaa Moda Supp. D at SD1-12. Thus, it was interest that Megaa Moda did not have to pay on a loan taken out by Megaa Moda. A loan is not an asset: it is the opposite, a liability. Megaa Moda earned no income on those loans, it *paid* interest. The interest subvention was only a limitation on how much interest Megaa Moda paid. Thus, the interest subvention refunds Megaa Moda received were not interest *income*, were not *earned* by Megaa Moda, and did not arise from a short-term *asset*.

Megaa Moda raises no arguments that Commerce cannot limit interest expense offsets to only interest income earned on short-term assets as Commerce (and the courts) has made clear is the agency's practice. The statute does not address how Commerce is to calculate interest expenses or what Commerce must or must not allow as an offset in that calculation. Rather, the statute simply directs Commerce to include in its calculation of the cost of production for subject merchandise various costs, including the overhead costs incurred to operate the manufacturing company. *See* 19 U.S.C. § 1677b(b)(3). But how those costs are to be calculated was left by Congress to the discretion of the administering agency. *See id.*

Thus, in establishing its practice for calculating interest expenses to include in the cost of production (and its practice for allowing offsets), "Commerce engaged in authorized statutory gap-filling on an issue where the anti-dumping statute is silent." *Pakfood II*, 453 F. Appx. at 989 (stating that the court was not opining in that decision on Commerce's gap-filling). As Megaa Moda has not challenged Commerce's authority to determine how to fill that gap left in the statute, this Court need not address any such issues here. *See id.* ("Because {plaintiff} frames this appeal as relating to Commerce's impermissible deviation from established practice, this is the only issue we address."). Megaa Moda argues only that Commerce's rejection of Megaa Moda's offset here was inconsistent with Commerce's practice (*see* Megaa Moda Brief at 9-10, 12); Megaa Moda simply fails to engage with what Commerce's clearly articulated practice has actually been.

As explained above, Commerce does not simply look at whether the offset can be described as "short-term" in some way. The fact that Megaa Moda can say that something about or related to the interest subvention was "short-term" simply fails to comport with Commerce's requirement that an offset in fact be interest income earned on short-term assets. As this Court

10

has explained, Commerce's limitation is "because liquid assets in short-term, interest-bearing accounts are presumably available to finance daily operations," so are a part of normal daily business operations that generate interest income. *Fischer S.A. Comercio, Industria & Agricultura v. United States*, Slip Op. 14–58, 2014 WL 2853909 at *5 (Ct. Int'l Trade 2014) (holding that "Commerce's methodology was not arbitrary and was a reasonable exercise of statutory gap-filling on an issue where the anti-dumping statute is silent;" quotation marks omitted). Megaa Moda's liabilities for which the interest subvention program was applied were not "short-term, interest-bearing accounts … available to finance daily operations." While Megaa Moda does its best to muddy the issue by trying to tie the interest subvention that was provided on export loans to the funds that Megaa Moda received from those loans, rather than to the loans themselves (*see* Megaa Moda Brief at 9-10), Megaa Moda received no interest income on those funds. That is, Megaa Moda did not reinvest the cash it borrowed and so did not earn any interest income on anything arising from the loans it borrowed. Megaa Moda *paid* interest expenses to use that cash. In no way can the Indian government's countervailable interest subvention on loans that Megaa Moda borrowed be considered interest income earned on a short-term asset, as is required by Commerce's practice.

Where a respondent has sought to use some amount that was not interest income earned on a short-term asset to offset its interest expenses in this way, this Court has affirmed Commerce's rejection of the offset. For example, in *Apex Exports*, this Court rejected arguments similar to those Megaa Moda makes here. In *Apex Exports*, Commerce rejected the use of interest earned on antidumping duty deposits as an interest expense offset. *See Apex Exports*, 37 C.I.T. at 1828. That respondent argued that the only relevant question was whether the amount it received could be termed "short-term," and argued that because antidumping duty deposits had

11

to be refunded withing six months of liquidation, the interest on those deposits had to be considered short-term. *Id.* The Court disagreed, recognizing that because the duty deposits were not available to finance daily operations, they did not meet Commerce's requirements: *i.e.*, they were not short-term assets. *See id.*, 37 C.I.T. at 1828-29.

In *Pakfood*, the respondent argued that it should be allowed to offset interest expenses with interest that was earned on deposits it was required to maintain in the bank in order to retain a revolving line of credit. *Pakfood I*, 34 C.I.T. at 1148-49. But Commerce explained that its practice

> is to examine the underlying interest-bearing asset that generated the income to determine whether or not the interest income is considered short-term, as opposed to examining liabilities that may or may not be associated with the interest income earned due to the fungible nature of money.

*Id.* at 1151. This Court agreed that "under {Commerce's} established methodology, the first crucial question in calculating an offset is whether or not the interest income is short-term—*i.e.* derived from current assets or working capital accounts." *Id.* at 1152. Because Commerce "will grant offsets only where the income in question derives from such assets," the Court held that Commerce's rejection of the offset was supported by substantial evidence. *Id.* at 1153; *see also Pakfood II*, 453 F. Appx. at 990 (repeating and affirming the statement). As is the case here, where the interest was not earned on an asset held "to meet a company's daily cash requirements," whether the related liability was short-term or not is simply immaterial. *Pakfood I*, 34 C.I.T. at 1153.

The record is clear, and Megaa Moda does not dispute, that the interest subvention was not interest earned on a short-term asset held by Megaa Moda to finance daily operations. It was instead a partial refund of the interest Megaa Moda paid on liabilities it incurred. Megaa Moda's attempts to paint the interest subvention as something else and its efforts to tie the interest

subvention to something other than to its liabilities cannot change those facts. Commerce's rejection of Megaa Moda's offset of its interest expenses based on interest subvention was entirely in line with Commerce's well established practice and supported by substantial evidence. The Court should therefore reject Megaa Moda's arguments and affirm Commerce's determination on this point.

## II.    Commerce Properly Rejected Megaa Moda's Still Unknown "interest on FD with FBL" as an Allowable Offset

Nowhere on the record can it be found what "interest on FD with FBL" may be. Instead of pointing to where it met the burden imposed on it to provide sufficient evidence to allow Commerce to determine whether the offset was interest income earned on a short-term asset, Megaa Moda argues that Commerce should have accepted the record as it stands as sufficient. Megaa Moda argues that because it treated "FD with FBL deposits" as "cash and cash equivalents" in its books and records, Commerce must accept that showing as sufficient. *See* Megaa Moda Brief at 14.

### a.    *The Burden to Show an Interest Expense Offset Is Interest Income Earned on a Short-Term Asset Is on the Respondent Seeking the Offset*

Commerce is in no way required to accept without further question how a respondent treats items in its records when the agency is determining what offsets can be claimed. "It is Commerce, not the respondent, that determines what information is to be provided for an administrative review." *Ansaldo Componenti, S.p.A. v. United States*, 628 F. Supp. 198, 205 (Ct. Int'l Trade 1986). Commerce in its regulations requires that a party seeking a cost adjustment and in possession of the relevant information bears the burden of sufficiently supporting that claim. 19 C.F.R. § 351.401(b)(1). Commerce has applied that requirement in examining claims for interest expense offsets, particularly to the issue of establishing that the offset meets Commerce's requirement to be interest income earned on a short-term asset. Where a respondent

13

"*did not meet its burden of proof* because it did not provide documentation adequate to support the claim that such income is short-term in nature and should be an offset to financial expenses," Commerce has denied the offset. *Notice of Final Results of Antidumping Duty Administrative Review: Silicon Metal from Brazil*, 71 Fed. Reg. 7517 (Dep't Commerce Feb. 13, 2006), and accompanying Issues and Decision Memorandum at Comment 4 (emphasis added). *See also, e.g.*, *Chlorinated Isocyanurates From Spain: Final Results of Antidumping Duty Administrative Review*, 72 Fed. Reg. 64,194 (Dep't Commerce Nov. 15, 2007), and accompanying Issues and Decision Memorandum at Comment 7 ("{The respondent} did not meet its burden of proof by providing evidence that the amounts deducted for…were short -term in nature.").

This Court has agreed that

> The burden of proof is on the respondent to substantiate and document the nature of accounts when making a claim for an offset, and Commerce will not allow an offset when a respondent cannot demonstrate that the interest income in question is short-term in nature.

*Jiangsu Senmao Bamboo*, 651 F. Supp. 3d at 1364. *See also Pakfood I*, 34 C.I.T. at 1152 ("The burden of proof to substantiate and document the nature of the accounts is on the respondent making a claim for an offset;" quotation marks omitted).

### b. *Megaa Moda Entirely Failed to Meet Its Affirmative Burden of Substantiating and Documenting the Nature of "interest on FD with FBL"*

Though Megaa Moda points to how it treated "FD with FBL deposits" in its own books, it provided nothing on why it did so or how that treatment may (or may not) comport with Commerce's practice on interest expense offsets. As the record did not allow Commerce to know what "FD with FBL" even meant, there was nothing unreasonable about Commerce finding that Megaa Moda entirely failed to meet its burden to support that as a basis for an interest rate offset. Megaa Moda did not substantiate and document the nature of that account, even when asked by Commerce in a supplemental questionnaire to provide documentation supporting its claimed

interest income offset. Megaa Moda did not even explain what the apparently highly abbreviated account name stood for. Given such a complete dearth on the record of any meaningful information on "interest on FD with FBL," Commerce's decision that Megaa Moda failed to meet the burden of proof that was on Megaa Moda is supported by substantial evidence on the record.

Megaa Moda argues that Commerce's practice is to accept anything a company classifies as "cash and cash equivalents" as short-term in nature and so allowable as an offset. *See* Megaa Moda Brief at 13-14. Megaa Moda cites to only one Commerce determination in support, a 2019 decision in *Glycine from India*. *Id.* That determination does not establish any practice by Commerce relevant to the question here. There, Commerce was not faced with an unknown and undecipherable account name; that record provided Commerce the detail it needed to determine what the accounts in question were. *See Glycine from India: Final Determination of Sales at Less Than Fair Value*, 84 Fed. Reg. 18,487 (Dep't Commerce May 1, 2019), and accompanying Issues and Decision Memorandum at Comment 3 (stating what the specific accounts at issue were). Megaa Moda points to nothing that would show Commerce's practice is to uncritically accept the classification of an account by a respondent when absolutely nothing more is known about the account. Instead, as has been shown above, in cases where sufficient information to allow Commerce to identify the nature of the offset amount in question was absent from the record, Commerce has found the respondent has failed to meet its burden of proof and so rejected the offset. Commerce followed that practice here and so properly rejected the still undefined "interest on FD with FBL" as an allowable interest expense offset.

Further, where the burden is on the respondent to sufficiently support the claims it makes and it fails to do so, the burden does not shift to Commerce to identify information that the

15

respondent might have that could be sufficient to meet its burden. *See NTN Bearing Corp. of Am. v. United States*, 997 F.2d 1453, 1458 (Fed. Cir. 1993) ("Even though Commerce specifically did not ask for the value-added information that would have enabled it to make such an exclusion determination for NTN's components, it was NTN's burden to supply the information in the first instance along with its request for a substantial value-added exclusion."). "{T}he burden of creating an adequate record lies with respondents and not with Commerce." *Tianjin Mach. Imp. & Exp. Corp. v. United States*, 806 F. Supp. 1008, 1015 (Ct. Int'l Trade 1992).

Megaa Moda argued before Commerce that the agency's rejection of "interest on FD with FBL" was an illegal application of adverse inferences. *See* Megaa Moda Agency Brief at 10-11. But Megaa Moda has since abandoned that argument, as it is not listed in Megaa Moda's Complaint nor addressed in Megaa Moda's opening brief before the Court. It "is well established that arguments not raised in the opening brief are waived." *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006); *see also, e.g.*, *Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("parties must give a trial court a fair opportunity to rule on an issue other than by raising that issue for the first time in a reply brief."). Should Megaa Moda seek to now press any claims that Commerce somehow applied adverse inferences to Megaa Moda or that Commerce's finding was actually that Megaa Moda's response was "deficient" and so required Commerce to give Megaa Moda yet another chance to meet its burden, the Court should reject those arguments as waived.

**CONCLUSION**

For the foregoing reasons, Commerce's rejections of Megaa Moda's claimed interest expense offsets in the *Final Determination* are supported by substantial evidence and are fully consistent with Commerce's established practices and with the law. Accordingly, Commerce's determinations on these points should be sustained and this Court should deny the relief requested by Megaa Moda.

Respectfully submitted,

/s/ Nicholas J. Birch

Nathaniel Maandig Rickard               Roger B. Schagrin
Zachary J. Walker                       Nicholas J. Birch

**PICARD KENTZ & ROWE LLP**              **SCHAGRIN ASSOCIATES**
1750 K Street NW, Suite 800              900 Seventh Street NW, Suite 500
Washington, DC 20006                     Washington, DC 20001

*Counsel to the Ad Hoc Shrimp Trade Action*   *Counsel to the American Shrimp Processors*
*Committee*                                    *Association*

Dated: April 16, 2024

17

**CERTIFICATE OF COMPLIANCE WITH WORD LIMITATION**

I, Nicholas J. Birch, hereby certify that this brief, exclusive of the table of contents, table of authorities, certifications of counsel, and counsel's signature block, but including headings, footnotes, and quotations contains 5,039 words, according to the word count function of the word processing program used to prepare this brief, and therefore complies with the word limitations as set forth in ¶ 2(B) of the Standard Chambers Procedures of this Court.

/s/ Nicholas J. Birch
Nicholas J. Birch
**SCHAGRIN ASSOCIATES**
900 Seventh Street NW, Suite 500
Washington, DC 20001
*Counsel to the American Shrimp*
*Processors Association*

Dated: April 16, 2024