**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE THOMAS J. AQUILINO, JR., JUDGE**

| | |
|---|---|
| AD HOC SHRIMP TRADE ACTION COMMITTEE,<br><br>        Plaintiff,<br><br>   and<br><br>AMERICAN SHRIMP PROCESSORS ASSOCIATION,<br><br>        Plaintiff-Intervenor,<br><br>   and<br><br>MEGAA MODA PRIVATE LIMITED,<br><br>        Plaintiff,<br><br>   v.<br><br>UNITED STATES,<br><br>        Defendant,<br><br>   and<br><br>MEGAA MODA PRIVATE LIMITED,<br><br>        Defendant-Intervenor,<br><br>   and<br><br>AMERICAN SHRIMP PROCESSORS ASSOCIATION, et al.,<br><br>        Defendant-Intervenors. | Consol. Court No. 23-00202<br><br><br>**<u>PUBLIC VERSION</u>** |

**<u>REPLY BRIEF IN SUPPORT OF THE RULE 56.2 MOTION FOR JUDGMENT ON THE
AGENCY RECORD OF THE AD HOC SHRIMP TRADE ACTION COMMITTEE AND
THE AMERICAN SHRIMP PROCESSORS ASSOCIATION</u>**

**SCHAGRIN ASSOCIATES**
900 Seventh Street NW, Suite 500
Washington, DC 20001

*Counsel to the American Shrimp
Processors Association*

Dated: May 14, 2024

**PICARD KENTZ & ROWE LLP**
1155 Connecticut Avenue NW, Suite 700
Washington, DC 20036

*Counsel to the Ad Hoc Shrimp Trade
Action Committee*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................ii

INTRODUCTION ...........................................................................................1

    I.    Prices of Sales Not Sold for Consumption in the Comparison Market Country May Not Be Used to Determine Normal Value ...........................................2

        A.    Defendants Misunderstand the Issue Presented in this Appeal.........................2

        B.    The Domestic Industry Exhausted Its Arguments Related to Commerce's Calculation of Normal Value...........................................................7

        C.    Home Market Sales Must Be Made for Consumption in the Exporting Country...........................................................................9

            1.    Defendants' Arguments Regarding Tax Invoices Are Unsupported by the Record.........................................................10

            2.    The Product Characteristics of the Sales in Question Were Unique and Show that the Sales Were Not for Consumption in India ...............12

            3.    Megaa Moda's Customer's Status as an Exporter Is Relevant to Whether the Sales in Question Were Properly Used to Determine Normal Value...........................................................13

            4.    The Record Must Be Considered in Its Entirety ...................14

    II.    The Court Should Reject Megaa Moda's Transformation Arguments as Impermissible Post Hoc Rationalizations .................................................18

CONCLUSION............................................................................................22

PUBLIC VERSION

## TABLE OF AUTHORITIES

### Cases

*Allegheny Ludlum Corp. v. United States,*
  116 F. Supp. 2d 1276 (Ct. Int'l Trade 2000) ................................................................ 19

*Alloy Piping Products, Inc. v. United States,*
  201 F. Supp. 2d 1267 (Ct. Int'l Trade 2002) ................................................................ 14

*American Textile Mfrs. Institute, Inc. v. Donovan,*
  452 U.S. 490 (1981) ........................................................................................................ 19

*Apex Frozen Foods Pvt. Ltd. v. United States,*
  37 F. Supp. 3d 1286 (Ct. Int'l Trade 2014) .................................................................... 8

*Apex Frozen Foods Pvt. Ltd. v. United States,*
  862 F.3d 1322 (Fed. Cir. 2017) ...................................................................................... 8

*Burlington Truck Lines, Inc. v. United States,*
  371 U.S. 156 (1962) ........................................................................................................ 19

*Coal. of Am. Flange Producers v. United States,*
  448 F. Supp. 3d 1340 (Ct. Int'l Trade 2020) .................................................................. 6

*INA Walzlager Schaeffler KG v. United States,*
  957 F. Supp. 251 (Ct. Int'l Trade 1997) .............................................................. 3, 6, 17

*LG Semicon Co. v. United States,*
  23 C.I.T. 1074 (1999) ...................................................................................................... 3

*Maverick Tube Corp. v. United States,*
  Slip Op. 16-16, 2016 WL 703575 (Ct. Int'l Trade Feb. 22, 2016) .............................. 20

*McCarthy v. Madigan,*
  503 U.S. 140 (1992) .......................................................................................................... 8

*Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Ins. Co.,*
  463 U.S. 29 (1983) .......................................................................................................... 18

*Nippon Steel Corp. v. United States,*
  458 F.3d 1345 (Fed. Cir. 2006) ................................................................................ 17, 18

*OSI Pharmaceuticals, LLC v. Apotex Inc.,*
  939 F.3d 1375 (Fed. Cir. 2019) ...................................................................................... 20

*Qingdao Ge Rui Da Rubber Co v. United States,*
  664 F. Supp. 3d 1369 (Ct. Int'l Trade 2023) .................................................................. 9

*QVD Food Co. v. United States*,
   658 F.3d 1318 (Fed. Cir. 2011) ................................................................ 12

*Shandong Rongxin Imp. & Exp. Co. v. United States*,
   163 F. Supp. 3d 1249 (Ct. Int'l Trade 2016) ........................................... 17

*Solvay Solexis S.p.A. v. United States*,
   637 F. Supp. 2d 1306 (Ct. Int'l Trade 2009) ............................................. 8

*Taizhou United Imp. & Exp. Co. v. United States*,
   560 F. Supp. 3d 1316 (Ct. Int'l Trade 2022) ........................................... 17

*USX Corp. v. United States*,
   655 F. Supp. 487 (Ct. Int'l Trade 1987) ................................................. 17

*Yue Pak, Ltd. v. United States ITA*,
   20 C.I.T. 495 (1996) ..................................................................................... 4

*Z.A. Sea Foods Pvt. Ltd. v. United States*,
   569 F. Supp. 3d 1338 (Ct. Int'l Trade 2022) ........................................... 14

*Z.A. Sea Foods Pvt. Ltd. v. United States*,
   606 F. Supp. 3d 1335 (Ct. Int'l Trade 2022) ........................................... 14

**Statutes**

19 U.S.C. § 1677a ................................................................................... 3, 4

19 U.S.C. § 1677b .............................................................................. *passim*

28 U.S.C. § 2637 ........................................................................................ 8

**Regulations**

19 C.F.R. § 351.309 ................................................................................... 8

**Administrative Determinations**

*Aluminum Extrusions From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Recission, in Part, 2010-12*, 79 Fed. Reg. 96 (Dep't Commerce Jan. 2, 2014) .......................................... 6

*Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, et al.; Final Results of Antidumping Duty Administrative Reviews, Partial Termination of Administrative Reviews, and Revocation in Part of Antidumping Duty Orders*, 60 Fed. Reg. 10,900 (Dep't Commerce Feb. 28, 1995) ....................... 10

*Canned Pineapple Fruit From Thailand*, 68 Fed. Reg. 65,247 (Dep't Commerce
  Nov. 19, 2003) ................................................................................................................ 9, 14

*Certain Crystalline Silicon Photovoltaic Products From Taiwan: Final Results of Antidumping
  Duty Administrative Review; Partial Rescission of Antidumping Duty Administrative Review;
  Final Determination of No Shipments; 2019-2020*, 86 Fed. Reg. 49,509 (Dep't Commerce
  Sept. 3, 2021) .......................................................................................................................... 6

*Certain Frozen Warmwater Shrimp From India: Final Results of Antidumping Duty
  Administrative Review; 2021-2022*, 88 Fed. Reg. 60,431 (Dep't Commerce Sept. 1, 2023)
  ................................................................................................................................... *passim*

## Other Authorities

Statement of Administrative Action Accompanying the Trade Agreements Act of 1979, H.R. Rep.
  No. 4537 (1979) ...................................................................................................................... 5

## INTRODUCTION

Plaintiff, Ad Hoc Shrimp Trade Action Committee ("AHSTAC"), and Plaintiff-Intervenor, the American Shrimp Processors Association ("ASPA") (collectively, the "Domestic Industry"), respectfully submit this reply brief in support of their joint motion for judgment on the agency record in the above-captioned action.  *See* Br. in Supp. of the Rule 56.2 Mot. for J. on the Agency R. of the Ad Hoc Shrimp Trade Action Comm. and the American Shrimp Processors Ass'n, Feb. 6, 2024 ("Pls. Brief"), ECF 40 (conf.), 41 (public).  The Domestic Industry brought this action because the U.S. Department of Commerce ("Commerce") acted unlawfully when it included certain sales that had not been made for consumption in the comparison market country in the agency's determination of the normal value of Megaa Moda Private Limited's ("Megaa Moda") sales of the subject merchandise.

Defendant the United States (the "Government") and Defendant-Intervenor Megaa Moda (collectively, the "Defendants") attempt to support the determination issued by Commerce to conclude the 17th administrative review of the antidumping duty order on certain frozen warmwater shrimp from India, which was published in the *Federal Register* as *Certain Frozen Warmwater Shrimp From India: Final Results of Antidumping Duty Administrative Review; 2021-2022*, 88 Fed. Reg. 60,431 (Dep't Commerce Sept. 1, 2023) ("*Final Result*s"), P.R. 205. *See* Def.'s Resp. to Pls.' and Pl.-Intervenor's Mots. for J. on the Agency R., Apr. 16, 2024 ("Def. Br."), ECF 50 (conf.), 51 (public); Def.-Intervenor's Resp. in Opp'n to Pls.' Mot. for J. on the Agency R., Apr. 16, 2024 ("Megaa Moda Br."), ECF 47 (conf.), 48 (public).  Defendants' briefs fail to show, however, that Commerce supported its conclusion that Megaa Moda "had no knowledge" that its sales to [                                        ] were not for consumption in the home market with substantial evidence.  *See* Commerce Memorandum, "Proprietary Memorandum for the Final Results" (Aug. 25, 2023) ("Prop. Decision

1

Memorandum"), C.R. 130, P.R. 204; Issues and Decision Memorandum for the Final Results of

the 2021-2022 Antidumping Duty Administrative Review of Certain Frozen Warmwater Shrimp

from India (Aug. 25, 2023) ("IDM"), P.R. 202.  Instead, Defendants double-down on

unsupported factual conclusions or, in the case of Megaa Moda, attempt to backfill Commerce's

determination with post hoc rationalizations.  As detailed below, because Commerce's decision

to determine the normal value of Megaa Moda's sales of the subject merchandise using sales that

were not made for consumption in the home market violates section 773(a)(1)(B)(i) of the Tariff

Act of 1930, as amended (the "Act"), this Court should remand the *Final Results* with

instructions that Commerce redetermine normal value after removing the home market sales

observations corresponding to the respondent's sales to [          ].

I.    **Prices of Sales Not Sold for Consumption in the Comparison Market Country May
      Not Be Used to Determine Normal Value**

   A.    **Defendants Misunderstand the Issue Presented in this Appeal**

   The issue advanced by the Domestic Industry in this appeal is straight forward—may

Commerce include in its calculation of normal value the prices of sales that were not made for

consumption in the comparison market country (in this case, India).  As demonstrated in the

Domestic Industry's opening brief, the language of the statute answers this question directly.  *See*

Pls. Br. 11-13.  Specifically, section 773(a)(1)(B)(i) of the Act requires that, in determining

normal value using the price of home market sales, such sales must be "for consumption in the

exporting country."  19 U.S.C. § 1677b(a)(1)(B)(i).  The "for consumption" requirement ensures

that Commerce makes a fair comparison between the export price and normal value in

determining whether subject merchandise is being dumped.  *See id.* § 1677b(a) (directing

Commerce to make "a fair comparison . . . between the export price . . . and normal value").  The

price-to-price comparisons made by Commerce between prices in India and prices in the United

**PUBLIC VERSION**

States was distorted because the agency included prices of sales not actually made for consumption in the comparison market.

In their respective response briefs, the Government and Megaa Moda confuse the issue presented in this action. The Defendants' briefs repeatedly substitute the test applied by Commerce to determine whether a sale should be used to calculate export price with that applied by the agency to determine whether a sale should be relied upon to calculate normal value. As explained below, while Commerce examines a producer's "knowledge" in determining the universe of sales used to calculate both export price and normal value, the tests address different statutory questions. Specifically, Commerce employs a knowledge test under section 772 of the Act to determine if merchandise has been sold "for exportation to the United States." *See LG Semicon Co. v. United States*, 23 C.I.T. 1074 (1999) (sustaining Commerce's finding that the respondent "knew or should have known" that merchandise it sold was destined for the United States). If a respondent "knew or should have known" that a sale was destined for exportation to the United States, it is included in Commerce's calculation of export price. *See id.* Conversely, Commerce will separately examine a respondent's knowledge to determine whether sales are for consumption in the exporting country and can be used to determine normal value. *See INA Walzlager Schaeffler KG v. United States*, 957 F. Supp. 251, 263-64 (Ct. Int'l Trade 1997).

| Export Price (Section 772 of the Act) | Normal Value (Section 773 of the Act) |
|---|---|
| "The term 'export price' means the price at which the subject merchandise is first sold . . . before the date of importation by the producer or exporter of the subject merchandise outside of the United States <u>to an unaffiliated purchaser in the United States or to an unaffiliated purchaser for exportation to the United States</u>, as adjusted under subsection (c)." 19 U.S.C. § 1677a(a) (emphasis added). | "The price referred to in subparagraph (A) is . . . the price at which the foreign like product is first sold . . . <u>for consumption in the exporting country</u>, in the usual commercial quantities and in the ordinary course of trade and, to the extent practicable, at the same level of trade as the export price or constructed export price." 19 U.S.C. § 1677b(a)(1)(B) (emphasis added). |

Thus, while Commerce probes a respondents' knowledge under both sections 772 and 773 of the Act, the inquiries are distinct and serve discrete purposes, with Commerce only evaluating the question of consumption in the exporting country for purposes of calculating normal value.

In muddling this distinction, the Government's brief states that "Commerce applies a 'knowledge test' to determine whether the respondent had knowledge of a sale that <u>was destined for the United States</u>." Def. Br. 12 (citations omitted) (emphasis added). The legal framework for calculating normal value presented in the Government's brief conflates these distinct questions, making reference to the test used to determine whether Megaa Moda knew that its sales to [      ] were destined for the United States. But section 772 of the Act does not use the term "for consumption." *See* 19 U.S.C. § 1677a. Instead, Congress created a different standard for the universe of sales used to determine normal value.

Citing to the CIT's decision in *Yue Pak*, the Government's brief attempts to frame the issue in this appeal as whether Megaa Moda knew or should have known that its sales to [      ] were exported to the United States. *See id.* at 13 (citing *Yue Pak, Ltd. v. United States ITA*, 20 C.I.T. 495, 498 (1996)). However, the issue in *Yue Pak* was what party "in the chain of distribution" first knew or should have known that the merchandise was destined for the United States. *See Yue Pak*, 20 C.I.T. at 498. Unlike *Yue Pak*, this case does not involve the

export price side of the price-to-price compassion or whether certain sales made by Megaa Moda should be treated as sales to the United States, but rather whether sales made by Megaa Moda to [            ] were made for consumption in the exporting country (and thus properly included in Commerce's determination of normal value).

Throughout its brief, Megaa Moda also discusses the test used by Commerce to determine whether a respondent knew or should have known that its sales were destined for the United States and should be used to determine export price. *See, e.g.*, Megaa Moda Br. 5 ("Megaa Moda neither knew nor should have known at the time of sale that any of the foreign like product that it sold to customers in India <u>was destined for export to the United States</u>." (emphasis added)); *id.* at 7 ("In determining whether a producer knew or should have known its goods were destined for the United States . . . ."); *id.* at 8 ("In past knowledge determinations Commerce has relied on all these factors in determining whether the producer had actual or constructive knowledge that the goods <u>were destined for the United States</u>." (emphasis added)). For instance, Megaa Moda argues that it lacked knowledge "at the time of sale that any of the foreign like product that it sold to home market customers, including [            ], was destined for the United States." *Id.* at 8-9. Similarly, Megaa Moda cites the Statement of Administrative Action Accompanying the Trade Agreements Act of 1979 for the proposition that "sales to an unrelated middleman trader can be used to <u>determine export price</u> – if the 'producer knew or had reason to know at the time of sale that the goods were for export to the United States.'" *Id.* at 6 (citing Statement of Administrative Action Accompanying the Trade Agreements Act of 1979, H.R. Rep. No. 4537, at 388, 411 (1979)) (emphasis added).

However, contrary to the Defendants' framing of the issue, the question presented in this appeal does not concern Commerce's determination of export price or whether Megaa Moda had

knowledge that its sales to [            ] were destined for the United States.  Rather, the issue

here is whether Megaa Moda knew or should have known that its sales to [            ] were not

made for consumption in the exporting country.  *See* 19 U.S.C. § 1677b(a)(1)(B)(i).  As a result,

Megaa Moda's citations to Commerce's determinations in *Aluminum Extrusions from China* and

*CSPV Products from Taiwan* are inapplicable, as those proceedings involved the treatment of

sales to the United States for purposes of determining export price.  *See Aluminum Extrusions*

*From the People's Republic of China: Final Results of Antidumping Duty Administrative Review*

*and Recission, in Part, 2010-12*, 79 Fed. Reg. 96 (Dep't Commerce Jan. 2, 2014), and

accompanying IDM at Comment 2 (considering whether a respondent or its supplier should be

treated as the exporter for purposes of determining export price); *Certain Crystalline Silicon*

*Photovoltaic Products From Taiwan: Final Results of Antidumping Duty Administrative Review;*

*Partial Rescission of Antidumping Duty Administrative Review; Final Determination of No*

*Shipments; 2019-2020*, 86 Fed. Reg. 49,509 (Dep't Commerce Sept. 3, 2021), and

accompanying IDM at Comment 2 (same).

      This Court has previously addressed this distinction.  For example, in *Coalition of*

*American Flange Producers*, this Court explained that, in order to reject sales that are not for

home market consumption, the standard is not actual knowledge of the specific export

destination of the goods by the seller.  *Coal. of Am. Flange Producers v. United States*, 448 F.

Supp. 3d 1340, 1354 (Ct. Int'l Trade 2020) (citing *INA Walzlager Schaeffler KG*, 957 F. Supp.

at 263-64).  "{A} producer need not know the final destination of merchandise sold so long as

the producer has actual or constructive knowledge it will be exported outside the home market."

*Id.* at 1354.  Because the issue in this case is not whether Megaa Moda's sales to [            ]

should have been reported by Megaa Moda as sales to the United States, the Defendants' reliance

on cases and proceedings applying Commerce's knowledge test to determine whether a producer

had knowledge or imputed knowledge that its sales were destined for the United States is

inapplicable.

**B.    The Domestic Industry Exhausted Its Arguments Related to Commerce's Calculation of Normal Value**

The Government's brief argues that the Court should find that the Domestic Industry

failed to exhaust its administrative remedies regarding arguments it presented related to the

[                 ] product characteristic.  Def. Br. 18-19.  According to the Government, the

Domestic Industry "had the opportunity before Commerce to argue that a particular [

] is more [                              ], but failed to do so."  *Id.* at 19.[1]  As detailed below, the

Government's effort to apply the exhaustion doctrine to the facts of this case should be rejected,

as the written arguments considered by the agency reasoned that the [                 ] product

characteristic supported a conclusion that Megaa Moda's sales to [          ] were not for

consumption in the home market.  Because Commerce had the opportunity to consider

arguments regarding this product characteristic in analyzing whether Megaa Moda's sales to

[                 ] were for consumption in the comparison country market, the Government's claim

that the Domestic Industry failed to exhaust its administrative remedies is unsupported.

---

[1]  Megaa Moda does not contend that the exhaustion doctrine applies to the Domestic Industry's arguments related to the [                 ] product characteristic.  *See* Megaa Moda Br. 10-15.  Megaa Moda instead claims that its sales to [          ] did not "[
]" from the merchandise sold to other Indian customers.  *Id.* at 13.  As explained in the Domestic Industry's opening brief and later in this reply, Megaa Moda is incorrect that its sales to [
].  In fact, elsewhere in its response brief, Megaa Moda acknowledges that its sales to [                                        ] and thus were [
].  *See id.* at 12.

As noted by the Government, the Court "shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d). Commerce's regulations require that interested parties raise in their case briefs all arguments that remain relevant to Commerce's final determination. 19 C.F.R. § 351.309(c)(2). The purpose of the exhaustion doctrine is to give "the agency the 'opportunity to correct its own mistakes' . . . 'before it is haled into federal court.'" *Apex Frozen Foods Pvt. Ltd. v. United States*, 37 F. Supp. 3d 1286, 1297 (Ct. Int'l Trade 2014) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). The Federal Circuit has explained that a party has discharged its obligation to exhaust its administrative remedies when the record contains "a 'suggestion' of the argument" and the agency was provided the opportunity to address it. *See Apex Frozen Foods Pvt. Ltd. v. United States*, 862 F.3d 1322, 1332 (Fed. Cir. 2017) (citation omitted); *see also Solvay Solexis S.p.A. v. United States*, 637 F. Supp. 2d 1306, 1309 n.2 (Ct. Int'l Trade 2009) (noting that parties may introduce "an extension of previously made arguments" before the Court).

In this case, the Domestic Industry made more than a "suggestion" of its argument in briefing before Commerce, and thus exhausted its administrative remedies. Specifically, the issue of the [          ] of Megaa Moda's sales to [          ] compared to its sales to other comparison market customers was argued before the agency in the case and rebuttal briefs filed on behalf of AHSTAC and ASPA.[2]  *See* Letter from Picard Kentz & Rowe LLP to Commerce,

---

[2] As noted in the Domestic Industry's opening brief, the written argument submitted by AHSTAC and ASPA to Commerce stated that Megaa Moda's sales to [

          ]. *See* Pls. Br. 16 n.11. However, the fact that Commerce's determination considered the Domestic Industry's arguments related to the [          ] demonstrates that Commerce had the opportunity to address any differences in this product characteristic between Megaa Moda's sales to [          ] versus other customers in India. Thus, the Court should reject the Government's attempt to invoke the exhaustion rule.

"Case Brief (Megaa Moda)" (Apr. 10, 2023) ("AHSTAC Case Brief"), at 16 (arguing that the

[          ] of Megaa Moda's sales to [

          ]), C.R. 115, P.R. 172; Letter from Schagrin Associates to Commerce,

"ASPA's Rebuttal Brief" (Apr. 20, 2023) ("ASPA Rebuttal Brief"), at 3-4 (also arguing that the

[          ] of Megaa Moda's sales to [

          ]), C.R. 120, P.R. 178.  Commerce considered the Domestic Industry's

arguments regarding this issue in its proprietary decision memorandum, finding (incorrectly) that

this characteristic is not unique and does not show that the merchandise was not consumed in the

exporting country.  *See* Prop. Decision Memorandum at 6 (stating that "neither the [

          ] nor net weight factor reported for Megaa Moda's home market sales at issue are unique

characteristics"), C.R. 130, P.R. 204.  Thus, Commerce's consideration of this issue in the

proprietary decision memorandum demonstrates that the agency had the opportunity to consider

whether the [          ] of Megaa Moda's sales to [          ] supported a finding that such

sales were not for consumption in the home market in the first instance.  *See Qingdao Ge Rui Da*

*Rubber Co v. United States*, 664 F. Supp. 3d 1369, 1376 (Ct. Int'l Trade 2023) (declining to

excuse exhaustion when Commerce had no opportunity to consider the argument in the first

instance).  Accordingly, the Court should reject the Government's arguments related to the

exhaustion doctrine as Commerce was able to consider the Domestic Industry's arguments

related to the [          ] product characteristic of Megaa Moda's sales to [          ].

### C.    Home Market Sales Must Be Made for Consumption in the Exporting Country

Commerce has explained that "home market sales are those that are 'for consumption in

the exporting country.'"  *Canned Pineapple Fruit From Thailand*, 68 Fed. Reg. 65,247 (Dep't

Commerce Nov. 19, 2003) ("*Canned Pineapple from Thailand*"), and accompanying IDM at

Comment 1; *see also Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, et al.; Final Results of Antidumping Duty Administrative Reviews, Partial Termination of Administrative Reviews, and Revocation in Part of Antidumping Duty Orders*, 60 Fed. Reg. 10,900, 10,953 (Dep't Commerce Feb. 28, 1995) ("Section 773(a) of the Tariff Act provides that FMV be based on sales 'for home consumption.' Therefore, sales which are not for home consumption, even if they are not classifiable as U.S. sales under section 772(b), are not appropriately classified as HM sales for antidumping purposes."). As detailed in the Domestic Industry's opening brief, Commerce determines whether sales are "for consumption in the exporting country" by examining "all the circumstances and facts surrounding the sale." Pls. Br. 12 (quoting *Canned Pineapple from Thailand IDM* at Comment 1).

The Domestic Industry's opening brief examined documentary evidence to demonstrate that Megaa Moda knew or should have known that its sales to [          ] were not for consumption in the home market based on the circumstances and facts surrounding the sales that differentiated them from its sales to other customers in the home market. *See* Pls. Brief 13-18. Defendants argue in their respective response briefs that Commerce reasonably determined that Megaa Moda lacked either actual or constructive knowledge that its sales to [          ] were not sold for consumption in India. *See, e.g.*, Def. Br. 10; Megaa Moda Br. 5. As demonstrated below, contrary to the Defendants' arguments, consideration of the circumstances and facts surrounding Megaa Moda's sales to [          ] demonstrates that Commerce's conclusion that these sales were for consumption in India is unsupported by substantial evidence.

       1.     <u>Defendants' Arguments Regarding Tax Invoices Are Unsupported by the Record</u>

The Domestic Industry's opening brief analyzed sales documents provided by Megaa Moda to demonstrate that the respondent's sales to [          ] were unique from other home

market sales because the tax invoices corresponding to those sales show that Megaa Moda [

] on other reported

home market sales.  Pls. Br. 14-16.  In response to this argument, the Government attempts to

downplay the significance of this evidence, stating that "[                    ] depended

on the type of shrimp sold," rather than where the shrimp would be consumed.  Def. Br. 15

(citing Prop. Decision Memorandum at 5, C.R. 130, P.R. 204); *see also* Megaa Moda Br. 12

(arguing that [              ] "do not apply to domestic sales of unbranded shrimp").

      In support of its argument that [                              ], the

Government cites to Megaa Moda's rebuttal brief.  Def. Br. 15 (citing Letter from Megaa Moda

to Commerce, "Rebuttal Brief of Megaa Moda Private Limited" (May 18, 2023) ("Megaa Moda

Rebuttal Brief"), at R-3, C.R. 124, P.R. 188.  The Government does not cite to any factual

information on the record that supports Megaa Moda's claim that [          ] apply to only certain

types of shrimp product and are inapplicable to the unbranded shrimp sold to [              ].[3]

Instead, the Government simply accepts the unsupported assertion that Megaa Moda made for

the first time in its rebuttal brief that "unbranded shrimp in India is exempted . . . by law" from

[      ].  *See* Megaa Moda Rebuttal Brief at R-3, C.R. 124, P.R. 188.  Despite the importance of

this issue, Megaa Moda did not explain to Commerce how [                      ] or direct

---

[3] The Government's brief mistakenly claims that "Commerce found that Megaa Moda's home market sales database had [      ] listed for its branded shrimp, but did not have [      ] listed for its unbranded shrimp."  Def. Br. 22 (citing Prop. Decision Memorandum at 5) (emphasis omitted).  This statement misrepresents Commerce's findings in the proprietary decision memorandum.  *See* Prop. Decision Memorandum at 5, C.R. 130, P.R. 204.  Commerce's proprietary decision memorandum did not find that "Megaa Moda's home market sales database had [      ] listed for its branded shrimp," as neither brand nor whether [      ] were reported in Megaa Moda's home market sales database.  Thus, the factual finding that the Government claims Commerce to have made is inconsistent with the information requested by the agency and available on the record.

the agency to the governing law that it claims exempts "unbranded shrimp" from [      ] at any

point in this review.  *See QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011)

(noting that the burden of creating an adequate record lies with the interested parties (citation

omitted)).

Megaa Moda's unsupported declarations do not constitute substantial evidence.  More

importantly, however, is that Megaa Moda's commercial invoices reflect the fact that [


].  *See* Letter from Megaa Moda to Commerce, "Megaa Moda Private Limited's Response

to Section B&C of the Original Antidumping Questionnaire" (Sept. 21, 2022) ("Sections B&C

Response"), at Exhibit C.6.b ([


]), C.R. 54, P.R. 120.  The fact that Megaa Moda [

 ] also refutes Megaa Moda's claim that the commercial documents related to these

sales fail to provide any reason for Megaa Moda to know that its sales to [          ] would not

be consumed in India.  *See* Megaa Moda Br. 10.  Additionally, the fact that the shrimp product

sold to [        ] was unbranded confirms that it would need to undergo repackaging before

being sold for consumption.  Thus, the fact that the shrimp sold to [        ] were unbranded,

coupled with the fact that [                                    ], refutes Commerce's

claim that there was "no evidence" that Megaa Moda's sales were not for consumption in India.

2.    The Product Characteristics of the Sales in Question Were Unique and
      Show that the Sales Were Not for Consumption in India

The Government's brief asserts that the [            ] product characteristic "was not a

unique characteristic" because Megaa Moda "had sales in the U.S. and in the home market of

both [                        ] and [                    ]."  Def. Br. 17-18 (citation omitted).

PUBLIC VERSION

The Government's characterization of the record evidence and Megaa Moda's sales file databases is misleading.  Megaa Moda's United States sales file database reported that [

].  Sections B&C Response at Exhibit C.1, C.R. 53, P.R. 119.  Meanwhile, Megaa Moda reported [

].  *Id.* at Exhibit B.1, C.R. 52, P.R. 118.  These [

] corresponding to sales Megaa Moda made to [        ].  *Id.*  So, the [      ] home market sales observations corresponding to Megaa Moda's sales to [        ] report a [

].  *Id.*  Thus, the [      ] home market sales observations that report [

] of Megaa Moda's home market sales observations.  Accordingly, contrary to the Government's claim that [              ] "was not a unique characteristic," Def. Br. 17, the [          ] of Megaa Moda's sales to [          ] were unique and [

] home market sale made during the 12-month period of review.

    3.    <u>Megaa Moda's Customer's Status as an Exporter Is Relevant to Whether the Sales in Question Were Properly Used to Determine Normal Value</u>

The Domestic Industry's opening brief highlighted [          ] status as "an exporter" and the [              ] in its transactions with Megaa Moda.  *See* Pls. Br. 15-16.  In responding to this evidence, the Government argues that "the trade patterns of a company's customers do not provide an adequate basis for establishing that sales to such customers are not representative."  Def. Br. 16 (citing *Z.A. Sea Foods Pvt. Ltd. v. United States*, 569 F. Supp.

3d 1338, 1351 (Ct. Int'l Trade 2022) ("*ZASF I*")).[4]  The Government's focus on

representativeness is not relevant in this appeal: Commerce examines whether the price is

"representative" when considering whether to determine normal value using third country sales.

19 U.S.C. § 1677b(a)(1)(B)(ii)(I); *see also Alloy Piping Products, Inc. v. United States*, 201 F.

Supp. 2d 1267, 1276 (Ct. Int'l Trade 2002).  In this review, Commerce did not determine normal

value using third country sales, thus the Government's citation to *ZASF I* is irrelevant to the issue

of whether Megaa Moda's sales to [          ] were for consumption in the comparison market.

In fact, *ZASF I* made clear that Commerce looks to whether a producer "knew or should have

known that the merchandise was . . . for home consumption" in determining the universe of sales

that should be included in the home market database.  *See ZASF I*, 569 F. Supp. 3d at 1352

(citation omitted).

> 4.        <u>The Record Must Be Considered in Its Entirety</u>

The Domestic Industry's opening brief examined the totality of the "circumstances and

facts surrounding" Megaa Moda's sales to [          ] to demonstrate that Megaa Moda knew or

should have known that such sales were not for consumption in the home market.  Pls. Br. 13-18;

*see also Canned Pineapple from Thailand IDM* at Comment 1 (concluding after review of "all

the circumstances and facts" that the respondent "knew that the sales in question were not for

consumption in the home market").  The record information highlighted by the Domestic

Industry showed that:

- Unlike sales made to other home market customers, [
          ] on Megaa Moda's sales to [          ].

---

[4] As noted in the Domestic Industry's opening brief, the *ZASF* decisions did not resolve
"the meaning of the 'for consumption' language used in" section 773 of the Act.  Pls. Br. 22
(citing *Z.A. Sea Foods Pvt. Ltd. v. United States*, 606 F. Supp. 3d 1335, 1344 n.5 (Ct. Int'l Trade
2022) ("*ZASF II*")).

- Megaa Moda's customer [          ] was a known exporter that [
                                                    ].

- The shrimp product sold to [          ] was "unbranded," indicating that it
  would need to be repackaged prior to consumption.

- The [        ] of the [      ] home market sales observations associated with
  [                                    ] than Megaa Moda's other home market
  sales observations.

- The shrimp product sold to [          ] were Megaa Moda's [      ] home
  market sales of [              ] product.

- The shrimp product sold to [          ] were Megaa Moda's [      ] home
  market sales of [              ] product.

- The sales to [          ] were [

                            ].

Taken as whole, this evidence refutes Commerce's assertion that "nothing indicates that Megaa

Moda's sales to this customer {(*i.e.*, [          ])} were not for consumption in India," IDM

at 9, P.R. 202, and shows that Megaa Moda knew or should have known that its sales to

[          ] were not for consumption in the home market.

    The Defendants' briefs fail to reasonably examine the circumstances and facts

surrounding Megaa Moda's sales to [          ].  Rather than look at whether the record as a

whole demonstrates that Megaa Moda knew or should have known that its sales to [          ]

were consumed in India, the Defendants' briefs argue that there was no single piece of evidence

that conclusively demonstrated that Megaa Moda knew or should have known that its sales were

not consumed in India.[5]

---

[5] Megaa Moda's response brief argues that Commerce's decision was supported by
substantial evidence because Megaa Moda's sales "were delivered directly to its customers in
India."  Megaa Moda Br. 1.  However, elsewhere in its brief, Megaa Moda acknowledges that its
sales to [          ] were actually made on an ex-works basis, meaning that Megaa Moda did

For example, the Government, applying the wrong legal standard, argues that the record does "not support a finding that Megaa Moda should have known that the volume of shrimp sold to [        ] would necessarily result in export to the United States."[6]  Def. Br. 17.  The Government focuses on the volume of Megaa Moda's sales to [        ] in isolation from all other facts and circumstances surrounding the sales in question.  The Government similarly argues that the fact that these sales were [        ] while the rest of its home market sales were [        ] is insufficient to show that Megaa Moda knew or should have known that its sales to [        ] were not for consumption in the home market.  Def. Br. 17-18.  The Government's brief is equally dismissive of [        ], *id.* at 19, and the fact that Megaa Moda's sales were [        ].  *Id.* at 20.  After saying that no single piece of evidence highlighted by the Domestic Industry demonstrated that Megaa Moda knew or should have known that its sales to [        ] were not for consumption in the home market, the Government suggests that the Domestic Industry's case is nothing more than "mere disagreement" with Commerce's weighing of record evidence.  *Id.* at 25.  Megaa Moda goes even further and argues that "the record in this case does not contain <u>unambiguous</u>, documentary evidence at the time of sale, or prior to it, that the merchandise included on the sales to [        ] <u>was destined for the United States</u>."  Megaa Moda Br. 14 (emphases added).

---

not deliver the sales "directly to its customer{}" but that "the products were picked up by [        ]."  *Id.* at 3.

[6]  As discussed earlier in this reply, the question presented in this appeal is not whether Megaa Moda knew or should have known that its sales to [        ] were destined for the United States.  Instead, the question is whether Megaa Moda knew or should have known that the sales were not for consumption in India.

The Defendants' piecemeal approach in responding to the Domestic Industry's argument is contrary to agency practice and misapplies the standard of review.  As noted above, Commerce considers "the particular facts and circumstances surrounding the sales" in question in determining whether a producer knew or should have known that the merchandise was not for consumption in the home market.  *INA Walzlager Schaeffler KG*, 957 F. Supp. at 263-64.  Rather than evaluate the facts and circumstances surrounding the sales, the Government's brief examines each piece of evidence in isolation, arguing that no individual fact is, alone, sufficient to demonstrate that the sales were not consumed in India.  The Government's piecemeal response fails to identify any evidence demonstrating that Megaa Moda's sales to [          ] were for consumption in India.  Such an approach does not show that Commerce acted reasonably in reaching its conclusion as the agency must consider the record as a whole, including whatever in the record fairly detracts from its weight.  *See Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006).  In this case, Commerce's decision in the *Final Results* goes against the "clear weight" of the record evidence.  *Shandong Rongxin Imp. & Exp. Co. v. United States*, 163 F. Supp. 3d 1249, 1252 (Ct. Int'l Trade 2016) (quoting *USX Corp. v. United States*, 655 F. Supp. 487, 489 (Ct. Int'l Trade 1987)).  Commerce did not need "unambiguous" evidence that the merchandise "was destined for the United States" to determine that Megaa Moda's sales to [          ] should not have been used to determine normal value.  *See* Megaa Moda Br. 14.  Here, the facts and circumstances demonstrated that Megaa Moda knew or should have known that its sales to [          ] were not for consumption in the home market.  *See Taizhou United Imp. & Exp. Co. v. United States*, 560 F. Supp. 3d 1316, 1319 (Ct. Int'l Trade 2022) ("{W}hen reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole." (citing *Nippon*

*Steel Corp.*, 458 F.3d at 1350-51)).  As a result, Commerce failed to support with substantial evidence its determination to include the prices of Megaa Moda's sales to [          ] in determining the normal value of the subject merchandise.

## II.    The Court Should Reject Megaa Moda's Transformation Arguments as Impermissible Post Hoc Rationalizations

In an attempt to defend Commerce's determination, Megaa Moda claims that its sales to [          ] may have been consumed in the comparison market through processing into non-subject merchandise.  *See* Megaa Moda Br. 15-16.  Specifically, Megaa Moda argues that Commerce's final determination should be sustained because "nothing on the administrative record establishes that the shrimp sold to [          ] by Megaa Moda was not processed into merchandise outside the scope of the antidumping duty order prior to exportation."  *Id.* at 15 (emphasis omitted).  As explained below, however, an agency's action may be upheld, if at all, only on the grounds articulated by the agency itself.  *See, e.g.*, *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Ins. Co.*, 463 U.S. 29, 50 (1983) (citations omitted).  As a result, the Court must reject Megaa Moda's arguments as impermissible post hoc rationalization.

Megaa Moda's response brief states that a product may be "consumed" within the comparison market country for purposes of section 773(a)(1)(B)(i) of the Act if the product is transformed into merchandise outside the scope of the order prior to exportation.  Megaa Moda Br. 15 (citation omitted).  However, the challenged agency determination did not find that Megaa Moda's sales to [          ] were consumed for purposes of section 773(a)(1)(B)(i) of the Act as a result of further processing by Megaa Moda's customer.  *See* IDM at 8-9, P.R. 202; Prop.

Decision Memorandum at 3-5, C.R. 130, P.R. 204.  Rather, Commerce's decision made no

finding or conclusion related to further processing whatsoever.[7]

It is well-settled that post hoc rationalizations cannot serve as a substitute for agency

action.  *See, e.g.*, *American Textile Mfrs. Institute, Inc. v. Donovan*, 452 U.S. 490, 539-40 (1981)

(citations omitted).  This Court has explained, for example, that counsel may not "read into" an

agency determination a rationale not advanced by the agency itself.  *See Allegheny Ludlum Corp.*

*v. United States*, 116 F. Supp. 2d 1276, 1299 n.41 (Ct. Int'l Trade 2000) (citing *Burlington Truck*

*Lines, Inc. v. United States*, 371 U.S. 156, 168-69 (1962)).  In this case, there is nothing in the

*Final Results* that suggests that the agency reached its decision based on a factual finding that

[          ] transformed Megaa Moda's shrimp into non-subject merchandise.  *See* IDM at 8-9,

P.R. 202; Prop. Decision Memorandum at 3-5, C.R. 130, P.R. 204.  As a result, the Court should

reject the post hoc rationalizations offered by Megaa Moda.

While Megaa Moda's argument should be rejected as impermissible post hoc

rationalization, the argument also fails as Megaa Moda is incorrect that the record could

reasonably support a finding of consumption in India based on processing into merchandise

outside the scope of the antidumping duty order.  *See* Megaa Moda Br. 15-16.  Specifically, while

Megaa Moda speculates that [          ] could have consumed the shrimp by processing it into

"breaded shrimp, battered shrimp, prepared meals, canned shrimp or other forms of non-subject

shrimp merchandise," *id.* at 15, it is equally conceivable that the shrimp product sold by Megaa

---

[7]  Megaa Moda's rebuttal brief argued that the shrimp material sold to [          ] could
have been used to produce breaded shrimp.  *See* Megaa Moda Rebuttal Brief at R-11, C.R. 124,
P.R. 188.  Commerce's proprietary decision memorandum acknowledges this argument, *see*
Prop. Decision Memorandum at 3 (summarizing the arguments presented in Megaa Moda's
rebuttal brief), C.R. 130, P.R. 204, but did not otherwise analyze the record to determine whether
further processing by Megaa Moda's customer resulted in consumption in India.  *See id.* at 3-5.

Moda to [          ] was processed in a manner that did not result in consumption in the comparison market.  For example, [          ] could have simply [          ] the shrimp prior to reselling the product.[8]  Likewise, [          ] could have [                    ] or

[                    ] of the product.[9]  Such processing, if undertaken by [          ] in India, would not have resulted in consumption in the comparison market.  Moreover,

[

].  Thus, while Megaa Moda may wish to speculate and suppose what types of further processing may have been carried out by [          ], such speculation is not substantial evidence.  *See, e.g.*, *OSI Pharmaceuticals, LLC v. Apotex Inc.*, 939 F.3d 1375, 1382 (Fed. Cir. 2019) ("'Mere Speculation' is not substantial evidence" (citation omitted)); *Maverick Tube Corp. v. United States*, Slip Op. 16-16, 2016 WL 703575, at *3 (Ct. Int'l Trade Feb. 22, 2016) ("Speculation is not substantial evidence." (citations omitted)).

While this alternative rationale does not support Commerce's conclusion, Megaa Moda's entire line of argument underscores the unique characteristics of the particular sales in question.

---

[8] [          ] of Megaa Moda's sales to [          ] were [          ].  *See* Sections B&C Response at Exhibit B.1 (sample printout of Megaa Moda's home market sales database), C.R. 52, P.R. 118.

[9] [          ] of Megaa Moda's sales to [          ] were [                    ].  *See id.*

The specific nature of these sales required Commerce to assess the record evidence that fairly detracted from its conclusion.  The agency declined to do so, failing to cite to any evidence that could reasonably support a conclusion that Megaa Moda's sales to [            ] were consumed in the Indian market.  As such, Megaa Moda's alternative bases for sustaining the *Final Results* further establishes that Commerce's determination is unsupported by substantial evidence.

PUBLIC VERSION

## CONCLUSION

For the reasons stated in the Domestic Industry's opening brief and above, the Domestic Industry respectfully submits that Commerce's *Final Results* are not supported by substantial evidence or in accordance with law.  The Domestic Industry therefore respectfully requests that the Court remand the *Final Results* so that Commerce can redetermine the normal value of Megaa Moda's merchandise after excluding sales that Megaa Moda knew or should have known were not for consumption in the home market.  We also respectfully request that any change to Megaa Moda's dumping margin resulting from a remand be reflected in a revised non-selected companies' rate for the producers/exporters under review but not chosen for individual examination.

Respectfully submitted,

/s/ Zachary J. Walker

| | |
|---|---|
| Roger B. Schagrin | Zachary J. Walker |
| Nicholas J. Birch | Nathaniel Maandig Rickard |
| **SCHAGRIN ASSOCIATES** | **PICARD KENTZ & ROWE LLP** |
| 900 Seventh Street NW | 1155 Connecticut Avenue NW |
| Suite 500 | Suite 700 |
| Washington, DC 20001 | Washington, DC 20036 |
| *Counsel to the American Shrimp Processors Association* | *Counsel to the Ad Hoc Shrimp Trade Action Committee* |

Dated: May 14, 2024

**CERTIFICATE OF COMPLIANCE WITH WORD LIMITATION**

I, Zachary J. Walker, hereby certify that this brief, exclusive of the table of contents, table of authorities, certifications of counsel, and counsel's signature block, but including headings, footnotes, and quotations contains 6,950 words, according to the word count function of the word processing program used to prepare this brief, and therefore complies with the word limitations as set forth in ¶ 2(B) of the Standard Chambers Procedures of this Court.

/s/ Zachary J. Walker
Zachary J. Walker

**PICARD KENTZ & ROWE LLP**
1155 Connecticut Avenue NW, Suite 700
Washington, DC 20036

*Counsel to the Ad Hoc Shrimp Trade Action Committee*

Dated: May 14, 2024