A-533-840<br>
Remand:  Slip Op. 24-93<br>
POR: 02/01/2021 - 01/31/2022<br>
**PUBLIC VERSION**<br>
E&C/OIX:  AMS

*Ad Hoc Shrimp Trade Action Committee v. United States*
**Consol. Court No. 23-00202, Slip Op. 24-93 (CIT August 15, 2024)**
**Certain Frozen Warmwater Shrimp from India**

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

**I.   SUMMARY**

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the opinion and remand order of the U.S. Court of International Trade (the Court) in *Ad Hoc Shrimp Trade Action Committee v. United States*.[1]  This action arises out of the final results in the 2021-2022 administrative review of the antidumping duty (AD) order on certain frozen warmwater shrimp (shrimp) from India.[2]  The period of review (POR) of the underlying administrative review is February 1, 2021, through January 31, 2022.

In the underlying administrative review, Megaa Moda Pvt. Ltd. (Megaa Moda) made [     ] sales of unbranded shrimp, comprising the majority by volume of its home market sales during the POR, to a specific customer (*i.e.*, [                    ]).  The Ad Hoc Shrimp Trade Action Committee (the petitioner) alleged that these [    ] sales to [         ], which Megaa Moda reported as home market sales, were intended for the export market and, therefore, should be excluded from the normal value (NV) calculation.  In the

---

[1] *See Ad Hoc Shrimp Trade Action Committee v. United States*, Consol. Court No. 23-00202, Slip Op. 24-93 (CIT August 15, 2024) (*Remand Order*).
[2] *See Certain Frozen Warmwater Shrimp From India: Final Results of Antidumping Duty Administrative Review; 2021-2022*, 88 FR 60431 (September 1, 2023) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM).

absence of documentary evidence that these sales were intended for the export market, Commerce treated them as home market sales and used them in the NV calculation.[3]

The petitioner challenged the *Final Results* and Commerce's inclusion of these home market sales in its NV calculation.  The Court remanded Commerce's determination that Megaa Moda did not have either actual or constructive knowledge that certain of its home market sales were destined for export based on an inconclusive record that did not permit Commerce to "articulate a satisfactory explanation for its action."[4]  As part of the *Remand Order*, the Court also stated that:  (1) Commerce could reopen the administrative record related to this issue;[5] and (2) "{Commerce} would be statutorily obligated to recalculate the rate assigned to companies not selected for individual review if it were required to calculate a new rate for Megaa Moda."[6] Additionally, Megaa Moda challenged the *Final Results* regarding Commerce's denial of two interest income offsets related to:  (1) "short term" interest income under an interest subvention program; and (2) interest income on "interest on FD with FBL."  Regarding Megaa Moda's claimed offset for the interest subvention program, the Court upheld Commerce's denial of this offset, finding it supported by substantial evidence.[7]  Regarding Megaa Moda's claimed offset for "interest on FD with FBL," the Court held that Megaa Moda was responsible for demonstrating the short-term nature of this interest income offset, which Commerce found that it failed to do.[8]  However, the Court stated that Commerce could "revisit Megaa Moda's short-term interest claim of 'FD with FBL' on remand, should it chose to do so."[9]

---

[3] *Id.* at Comment 3.
[4] *See Remand Order* at 40 and 42-43.
[5] *Id*. at 30.
[6] *Id.* at 57.
[7] *Id*. at 53.
[8] *Id.* at 56.
[9] *Id.*

In light of the Court's opinion and order, on remand, Commerce reopened the record to address gaps in the record regarding Megaa Moda's home market sales.  Specifically, Commerce requested supplemental information with respect to Megaa Moda's claim that "sales of unbranded shrimp in India is exempted from {goods and services tax} by law."[10]  For the reasons explained below, Commerce continues to find that Megaa Moda did not know nor should have known that its home market sales of unbranded shrimp to [     ] may have been destined for export.  Additionally, on remand, Commerce has determined to exercise its discretion not to revisit Megaa Moda's short-term interest offset claim of "FD with FBL."  As a result, for purposes of these final results of redetermination, because Commerce is not revisiting Megaa Moda's short-term interest claim and because Commerce continues to find that the [     ] sales in question are appropriately treated as home market sales, Commerce has made no changes to the *Final Results*.  Therefore, the weighted-average dumping margin assigned to Megaa Moda continues to be 7.92 percent and the weighted-average dumping margin for companies not selected for individual review continues to be 3.88 percent.

## II.    BACKGROUND

On July 21, 2022, Commerce selected Megaa Moda as a mandatory respondent in the above-referenced AD administrative review and issued Megaa Moda an AD questionnaire.[11]  Megaa Moda responded to the AD questionnaire in September 2022.[12]  On December 21, 2022, the petitioner submitted comments alleging that [     ] of Megaa Moda's home market sales (accounting for [     ] kilograms (kgs) of its total home market sales quantity of [     ] kgs)

---

[10] *See* Commerce's Letter, "Supplemental Questionnaire," dated September 13, 2024, at Attachment (citing Megaa Moda's Letter, "Rebuttal Brief of Megaa Moda Private Limited's," dated May 18, 2023).
[11] *See* Memorandum, "Selection of Additional Respondents for Individual Review," dated July 21, 2022.
[12] *See* Megaa Moda's Letters, "Megaa Moda Response for Section B Questionnaire," dated September 27, 2022; "Megaa Moda response for Section C Questionnaire Response," dated September 27, 2022; and "Megaa Moda Response for Section D Questionnaire Response," dated September 30, 2022.

were intended for the export market.[13]  On January 13, 2023, we issued a supplemental questionnaire to Megaa Moda regarding these sales, among other things, and requested additional information about Megaa Moda's sales to its customer [     ] and whether these sales were appropriately reported as home market sales.[14]  Specifically, in the supplemental questionnaire, we asked Megaa Moda the following:

> The vast majority of your home market sales were to [
>     ].  Provide a detailed explanation of why you believe your sales of shrimp to [     ] were for consumption in India, rather than for export to another market.[15]

In February 2023, Megaa Moda responded to this supplemental questionnaire.[16]  In its response, Megaa Moda stated:

> Megaa is submitting sample documentation for SEQU 76 pertaining to sales made to [                                    ] as Exhibit S1-8.  From purchase order (Page-1) it can be seen that the destination of the sale is [          ].  From the copy of Tax Invoice (Page-2) it can be seen that the place of delivery is [                                    ].  From e-way bill it can also be seen that the place of delivery is [
>     ].  Thus, from all the three documentation it can be seen that the material was destined to be delivered in the domestic market.  Further the order was Ex-works and the material was picked by the customer.  As the material was delivered in India and was also destined in India, Megaa classified the same as domestic sales.  <u>Megaa has no indication, knowledge or documentation to suggest that the material was destined to be consumed in export market</u>.  Moreover, the goods were packed in Unbranded pouches and cartons which under any situation may not be suitable for U.S. market.  So we can safely say that goods were sold domestically in India.[17]

Megaa Moda in its supplemental questionnaire response also provided documentation that included customer correspondence, a tax invoice, an e-way bill, accounting records showing the

---

[13] *See* Petitioner's Letter, "Comments on Megaa Moda's Response to Sections A, B, and C of the Questionnaire," dated December 21, 2022.
[14] *See* Commerce's Letter, Megaa Moda Supplemental Questionnaire, dated January 13, 2023.
[15] *Id.* at 7.
[16] *See* Megaa Moda's Letter, "Megaa Moda Private Limited's Response to 1st Supplemental Section ABC of the Original Antidumping Questionnaire," dated February 3, 2023.
[17] *Id.* at 19 (emphasis added).

recording of the sale, and payment documentation.[18] This information showed that Megaa Moda made this sale to a home market customer in India (*i.e.*, [          ]) with ex-works delivery terms.[19] The documentation provided no evidence that these sales were intended for the export market. Therefore, in the *Preliminary Results*, based on this information, we treated these sales as home market sales and used them in the calculation of NV.[20]

In its case brief, the petitioner raised various bases for Commerce to consider these sales as export sales.[21] In particular, the petitioner argued that the absence of certain sales taxes on Megaa Moda's sales invoices to [       ] for the sales at issue demonstrates that these are export sales. However, Commerce found that there was no information on the record that the combined [

                                   ] were specific to the domestic market or that the absence of these taxes is evidence of an export sale. Rather, we noted that information on the record supported Megaa Moda's assertion that these taxes do not apply to domestic sales of *unbranded* shrimp, given that they are listed on the documents for certain of its home market sales with the brand name [             ], while its sales of unbranded shrimp to [        ] do not have these taxes listed.[22]

The petitioner challenged the *Final Results* and Commerce's inclusion of Megaa Moda's sales to [       ] as home market sales in its NV calculation. On August 15, 2024, the Court remanded the *Final Results* to Commerce regarding its application of the knowledge test and its

---

[18] *Id.* at Exhibit S1-8.
[19] *Id.*
[20] *See Certain Frozen Warmwater Shrimp from India: nPreliminary Results of Antidumping Duty Administrative Review; 2021-2022*, 88 FR 13430 (March 3, 2023) (*Preliminary Results*), and accompanying Preliminary Decision Memorandum at 9-10.
[21] *See* Petitioner's Letter, "Case Brief (Megaa Moda)," dated April 11, 2023.
[22] *See* Memorandum, "Proprietary Memorandum for the Final Results," dated August 25, 2023, at 5.

inclusion of Megaa Moda's sales to [       ] in the calculation of NV.[23] As part of the *Remand Order*, the Court also directed that Commerce may reopen the administrative record for additional fact finding regarding this issue.[24] On September 13, 2024, Commerce issued a supplemental questionnaire to Megaa Moda requesting the relevant laws, regulations, or other legal framework which demonstrates that its domestic sales of unbranded shrimp in India during the POR did not incur goods and services tax (GST) or other domestic Indian taxes.[25]

On September 20, 2024, Megaa Moda responded to Commerce's supplemental questionnaire.[26] In its response, Megaa Moda stated that the GST came in to effect in 2017 pursuant to the Central Goods and Service Tax Act (GST Act) and it provided Section 11 of the GST Act, which gives the power to the central government to exempt goods or services of any specified description from GST by notification.[27] Megaa Moda also provided notification 2/2017 dated June 28, 2017, which exempts goods sold under Harmonized System of Nomenclature (HSN) heading 0306,[28] a classification which includes shrimp, from GST,[29] as well as a subsequent notification dated November 14, 2017, which amended notification 2/2017 with respect to HSN 0306 to exempt the following:

> All goods other than fresh or chilled and other than those put up in unit container and, -
>
> (a) bearing a registered brand name; or
>
> (b) bearing a brand name on which an actionable claim or enforceable right in a court of law is available {}other than those where any actionable claim or

---

[23] *See Remand Order* at 30.
[24] *Id.*
[25] *See* Commerce's Letter, "Supplemental Questionnaire," dated September 13, 2024.
[26] *See* Megaa Moda's Letter, "Response to Supplemental Questionnaire on Remand on the 2021-2022 Administrative Review of the Antidumping Duty Order on Certain Frozen Warmwater Shrimp from India," dated September 20, 2024 (Megaa Moda Remand Supplemental), at 1 and Exhibit S3-1.
[27] *Id.*
[28] HSN heading 0306 includes "Crustaceans, whether in shell or not, live, fresh or chilled; crustaceans, in shell, cooked by steaming or by boiling in water live, fresh or chilled."
[29] *See* Megaa Moda Remand Supplemental at Exhibit S3-2.

6

> enforceable right I respect of such band name has been foregone voluntarily{}, subject to the conditions as in the ANNEXURE I{}.[30]

Finally, Megaa Moda provided notification 19/2021, dated December 28, 2021, which added an additional HSN heading to the exemption described above,[31] as well as a screenshot from a Government of India website listing the history of amendments to notification 2/2017 demonstrating that between notification 19/2021 and the end of the POR there had been no further amendments made.[32]

### III. ANALYSIS

<u>Legal Framework</u>

Section 773(a)(1)(B) of the Tariff Act of 1930, as amended (the Act), states that Commerce may base NV on the price at which the foreign like product is first sold (or, in the absence of a sale, offered for sale) for consumption in the exporting country, in the usual commercial quantities and in the ordinary course of trade, if such a price is representative, and the administering authority does not determine that a particular market situation in such other country prevents a proper comparison with the export price or constructed export price. Furthermore, sections 773(a)(1)(A) and (B) of the Act direct Commerce to determine whether there is a sufficient volume of sales in the home market to serve as a viable basis for calculating NV (*i.e.*, the aggregate volume of home market sales of the foreign like product is equal to or greater than five percent of the aggregate volume of U.S. sales). If Commerce determines that no viable home market exists, we may, if appropriate, use a respondent's sales of the foreign like product to a third country market as the basis for comparison market sales, in accordance with section 773(a)(1)(C) of the Act and 19 CFR 351.404.

---

[30] *Id.* at Exhibit S3-3.
[31] *Id.* at Exhibit S3-4.
[32] *Id.* at Exhibit S3-5.

To designate a respondent's transactions as sales in the home market, to a third country, or to the United States, Commerce applies the "knowledge test." In applying the knowledge test, Commerce considers both a seller's actual knowledge and its constructive knowledge (*i.e.*, that it should have known) of the final destination of the merchandise at the time of sale.[33] Commerce's standard for the knowledge test is to consider, in addition to the seller's representations, documentary or physical evidence regarding the destination of the merchandise because this type of evidence is more probative, reliable, and verifiable than statements or declarations.[34] In prior cases, Commerce has considered whether the relevant party prepared or signed any certificates, shipping documents, contracts, or other such documents stating that the merchandise was destined for an export market.[35] Commerce will also consider whether the relevant party used any packaging or labeling stating that the merchandise was destined for another market,[36] or whether the features, brands, or specifications of the merchandise indicated that it was destined for that market.[37]

Discussion

Consistent with the Court's *Remand Order*, we reopened the administrative record for additional fact finding and reconsidered the application of the knowledge test in light of both the new and existing record evidence. In evaluating the totality of the evidence on the record, we

---

[33] *See Grain-Oriented Electrical Steel from the Czech Republic: Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances*, 79 FR 58324 (September 29, 2014), and accompanying IDM at Comment 2.
[34] *See Certain Circular Welded Non-Alloy Steel Pipe from Mexico: Final Results of Antidumping Duty Administrative Review*, 76 FR 36086 (June 21, 2011), and accompanying IDM at Comment 1.
[35] *See Notice of Preliminary Determination of Sales at Less Than Fair Value and Postponement of Final Determination: Synthetic Indigo from the People's Republic of China*, 64 FR 69727 (December 14, 1999), unchanged in *Synthetic Indigo from the People's Republic of China; Notice of Final Determination of Sales at Less Than Fair Value*, 65 FR 25706 (May 3, 2000).
[36] *See Certain Pasta from Italy: Termination of New Shipper Antidumping Duty Administrative Review*, 62 FR 66602 (December 19, 1997).
[37] *See, e.g., GSA, S.R.L. v. United States*, 77 F. Supp. 2d 1349 (CIT 1999).

gave particular attention to the new information Megaa Moda submitted in recognition of the Court's holding that the record was inconclusive regarding whether Megaa Moda's contested sales are properly considered part of NV, due to the lack of support for Megaa Moda's claim that certain sales taxes are inapplicable to sales of unbranded shrimp.

As Commerce explained in the *Final Results*, "there is no information on the record that the combined [                                                    ] are specific to the domestic market or that the absence of these taxes is evidence of an export sale." Rather, the record evidence demonstrated that the [                              ] depended on the type of shrimp sold.[38] Recognizing the Court's holding, Commerce requested and Megaa Moda has since provided the GST Act and relevant notifications which demonstrate that, during the POR, *unbranded*[39] shrimp under HSN heading 0306 was exempt from certain domestic sales taxes, thus corroborating its argument in the briefing stage of the underlying administrative review.[40]

Furthermore, as discussed in the *Final Results*, assuming *arguendo* that a comparison of the physical characteristics of the shrimp Megaa Moda sold in the home market and United States is meaningful to our analysis, we note that the species of Megaa Moda's home market sales to [        ] was [          ], which was the species of only [        ] of Megaa Moda's U.S. sales,[41] and that neither the [            ] nor the net weight factor for Megaa Moda's sales to [        ] are unique characteristics.[42] Thus, we continue to find that any differences in the physical characteristics of Megaa Moda's sales to [        ] are not meaningful indicators that they must be U.S. sales.

---

[38] *See* Memorandum, "Proprietary Memorandum for the Final Results," dated August 25, 2023 (BPI Memorandum), at 5.
[39] The branding here refers to Megaa Moda's "registered brand name" or a brand name enforceable in court.
[40] *See* Megaa Moda Remand Supplemental at 1 and Exhibit S3-1.
[41] *See* BPI Memorandum at 6.
[42] *Id.*

9

Therefore, on remand, we continue to find that the applicability of [

] [43] on Megaa Moda's sales of unbranded shrimp to [          ] is based on whether the shrimp is branded or unbranded, and not based on whether the shrimp was intended for consumption in the domestic market, especially considering that these taxes are applicable to the intra-State sale of goods.

Taken together with other documentary evidence on the record, on remand, we continue to find that Megaa Moda had neither actual nor constructive knowledge that its sales to [          ] were destined for export to the United States. Indeed, the record demonstrates that Megaa Moda made sales of unbranded shrimp, which are exempt under Indian law from [                           ], to an Indian customer at an Indian location, brokered by an Indian purchasing agent. Therefore, we continue to find it appropriate to treat Megaa Moda's sales to [          ] as home market sales in the calculation of NV.

## IV.     INTERESTED PARTY COMMENTS

On October 28, 2024, Commerce issued its Draft Results of Redetermination and provided interested parties an opportunity to comment.[44] Commerce received comments from the Ad Hoc Shrimp Trade Action Committee (AHSTAC )[45] and the American Shrimp Processors Association (ASPA).[46] These comments are addressed below. After considering these

---

[43] *See Ad Hoc Shrimp Trade Action Committee v. United States*, Consol. Court No. 23-00202, ECF No. 40 at 15.
[44] *See* Draft Results of Redetermination Pursuant to Court Remand, *Ad Hoc Shrimp Trade Action Committee v. United States,* Consol. Court No. 23-00202, Slip Op. 24-93 (CIT 2024), dated October 28, 2024 (Draft Results of Redetermination).
[45] The members of AHSTAC are Nancy Edens; Trico Shrimp Company, Inc.; Tarvin Seafood Inc.; Bosarge Boats, Inc.; Anchored Shrimp Company; Big Grapes, Inc.; Versaggi Shrimp Co.; Craig Wallis; and the Southern Shrimp Alliance. *See* AHSTAC's Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand," dated November 4, 2024 (AHSTAC Draft Remand Comments).
[46] *See* ASPA's Letter, "Comments on the Draft Remand," dated November 4, 2024 (ASPA Draft Remand Comments).

comments, we made no changes to our conclusions in the Draft Results of Redetermination for these final results of redetermination.

**Comment 1:   Record Evidence Does Not Support Treatment of Megaa Moda's Sales of Unbranded Shrimp as Home Market Sales**

The following is a verbatim executive summary of argument submitted by AHSTAC. For further details, *see* AHSTAC's Draft Remand Comments at 4-12 (internal citations omitted).

> In determining normal value, section 773 of the Tariff Act of 1930, as amended (the "Act"), explains that Commerce may rely on the price at which the foreign like product is first sold for consumption in the exporting country. If the prices at which the foreign like product is sold in the exporting country are not prices "for consumption," then they cannot be used to determine NV. In remanding the *Final Results* of the Department's administrative review, the CIT held that the Department failed to provide a satisfactory explanation for its conclusion that Megaa Moda's sales of unbranded shrimp were "for consumption" in India. The CIT's remand order directed the Department to further "probe{} whether Megaa Moda knew or should have known whether the contested sales were 'for consumption' in India." The Department's draft remand continues to "find that Megaa Moda had neither actual nor constructive knowledge that its sales to [        ] were destined for export to the United States." However, this is not the standard required by the statute to determine whether sales may be relied upon to calculate NV.
>
> Because the evidence on the record does not support the conclusion that such sales were made for consumption in the home market and because the agency has failed to apply the correct legal standard, the Department should reconsider this finding in the final results of this remand proceeding as the record cannot support a conclusion that Megaa Moda's sales of unbranded shrimp to [        ] were made "for consumption" in India, the exporting country.

The following is a verbatim executive summary of argument submitted by ASPA. For further details, *see* ASPA's Draft Remand Comments at 5-11 (internal citations omitted).

> Commerce's draft results fail to address the multiple points on which the Court has explicitly remanded Commerce's acceptance of certain of Megaa Moda's sales as made for consumption in the home market. Commerce instead only addressed one issue on which Commerce has gathered more information during the remand proceeding; but even on that point Commerce fails to explain how its conclusion on that one issue supports the overall conclusion it reached on the status of the sales in question. On the other points of evidence regarding these sales – where the Court specifically rejected Commerce's prior reasoning and instructed the agency to

address the contrary evidence that is on the record – Commerce instead simply repeated its prior factually incorrect statements and erroneous reasoning. The body of evidence on the record instead strongly confirms that these sales were not made for consumption in India, so do not meet Commerce's established standard for inclusion as home market sales. For the final results on remand, Commerce should reach the conclusion demanded by that full body of evidence and so should recalculate the dumping margin for Megaa Moda, excluding those sales from the calculation of normal value. As directed by the Court, Commerce should also revise the all-others rate based on the revised margin for Megaa Moda.

**Commerce's Position:** We disagree with AHSTAC and ASPA and continue to find it appropriate to treat Megaa Moda's sales to [     ] as home market sales in the calculation of NV. Section 773(a)(1)(B)(i) of the Act defines NV as:

> the price at which the foreign like product is first sold (or, in the absence of a sale, offered for sale) for consumption in the exporting country, in the usual commercial quantities and in the ordinary course of trade and, to the extent practicable, at the same level of trade as the export price or constructed export price.

As explained above, to determine whether a respondent's transaction is properly regarded as a sale in the home market, Commerce applies the knowledge test. A respondent should report sales in the home market sales database if the respondent "knew or should have known that the merchandise was…for home consumption based upon the particular facts and circumstances of the case."[47] The respondent's sales should be considered for export if a company knew or should have known that, at the time of a particular sale, the product sold was destined for export.[48] In applying this "knowledge test," Commerce considers both a seller's actual knowledge and its constructive knowledge (*i.e.*, that it should have known) of the final destination of the merchandise at the time of sale.[49] As an initial matter, no party argues that Megaa Moda had

---

[47] *See Allegheny Ludlum Corp. v. United States*, 215 F. Supp. 2d 1322, 1330-31 (CIT 2000) (*Allegheny Ludlum*) (quoting *INA Walzlager Schaeffler KG v. United States*, 957 F. Supp. 251, 264 (1997), *aff'd* 108 F.3d 301 (Fed. Cir. 1997)).
[48] *See Allegheny Ludlum*, 215 F. Supp. 2d at 1331.
[49] *See Grain-Oriented Electrical Steel from the Czech Republic: Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances*, 79 FR 58324 (September 29, 2014), and accompanying IDM at Comment 2.

*actual knowledge* that its sales to [       ] were meant for export to the United States. Indeed, "the only way to determine actual knowledge is through an admission of the respondent,"[50] and in the present case Megaa Moda has disclaimed such knowledge.[51] Therefore, to determine whether these sales were properly designated as home market sales, we look to whether Megaa Moda had constructive knowledge that these sales were meant for export.

In evaluating constructive knowledge, the Court has held that Commerce must "diligently inquire into allegations of knowledge and render its conclusion based on all relevant facts and circumstances."[52] In addition, the Court has found that the concept of imputed or constructive knowledge implies that the information regarding knowledge must be derived from extrinsic sources.[53] Short of an actual contract, Commerce has considered, for example, whether the relevant party used any packaging or labeling stating that the merchandise was destined for the United States,[54] or whether any unique features, brands, or specifications of the merchandise indicated that the destination of the merchandise was the United States.[55] The Court has also held that the actions and intentions of the customer should be considered in making a determination of whether to impute knowledge to the producer.[56] Thus, as the examples above demonstrate, there must be information on the record which demonstrates that a sale could only

---

[50] *INA Walzlager*, 957 F. Supp. 251 at 265.
[51] *See* Megaa Moda's Letter, "Response to 1st Supplemental Section ABC of the Original Antidumping Questionnaire," dated February 3, 2023, at 19.
[52] *See INA Walzlager*, 957 F. Supp. 251 at 265 (quoting *Stupp Corp. v. United States*, 359 F. Supp. 3d 1293, 1310 (CIT 2019)).
[53] *Id.*
[54] *See Certain Pasta from Italy: Termination of New Shipper Antidumping Duty Administrative Review*, 62 FR 66602 (December 19, 1997).
[55] *See, e.g.*, *GSA, S.R.L. v. United States*, 77 F. Supp. 2d 1349 (CIT 1999) (upholding Commerce's finding that Company A knew the merchandise at issue was destined for the United States because Company A prepared a certificate required for U.S. entry, manufactured the labeling and packaging for the merchandise with the name and location of the importer, and used different packaging sizes and brands for its U.S. sales).
[56] *See, e.g.*, *Hiep Thanh Seafood Joint Stock Co. v. United States*, 781 F. Supp. 2d 1366, 1373 (CIT 2011) (stating that Commerce cannot reasonably identify the "price discriminator" if the actions and intent of the customer are removed from consideration).

be meant for export to determine that a respondent knew or should have known the destination of the merchandise.

We agree with AHSTAC that the applicable standard is not whether the particular facts and circumstances surrounding the sales indicate that Megaa Moda knew or should have known that the sales in question were destined for the United States, but rather whether they indicate that Megaa Moda knew or should have known that the sales were not for consumption in the home market. However, we disagree with ASPA that the Court found Commerce's assessment of the unusual nature of the sales at issue, including their [        ] and other points "faulty."[57] Rather, while the Court found the "record inconclusive as to whether the contested sales are properly considered part of normal value," acknowledging that it cannot re-weigh the evidence itself.[58] In remanding the decision to Commerce, the Court held that it can "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."[59]

In the Draft Results of Redetermination, as well as in these final results of redetermination, we considered the nature of Megaa Moda's sales at issue, in light of the additional information collected, and continue to find that there is insufficient evidence to indicate that Megaa Moda knew or should have known that these sales were not for consumption in the home market.

AHSTAC and ASPA both argue that the volume and nature of the [       ] indicate that they were not for consumption in India.[60] Specifically, both parties note that the volume is in [              ] of any of Megaa Moda's other home market sales.[61]

---

[57] *See* ASPA Draft Remand Comments at 5-6.
[58] *See* Remand Order at 14-15.
[59] *Id.* at 15.
[60] *See* AHSTAC Draft Remand Comments at 10-11; and ASPA Draft Remand Comments at 10.
[61] *See* AHSTAC Draft Remand Comments at 10; and ASPA Draft Remand Comments at 10.

Further, AHSTAC and ASPA claim that the type of shrimp Mega Moda sold to [          ] is unique among Megaa Moda's home market sales because the sales were of [          ] shrimp and sold in [          ] form.[62]  Specifically, AHSTAC argues that "[


            ]" because Megaa Moda reported that [

                        ].[63]  According to AHSTAC and ASPA, these factors are sufficient to conclude that these sales were not for home market consumption.

      We find that the record evidence does not support this conclusion.  While the sales to [          ] are unique among Megaa Moda's home market sales, there is insufficient evidence indicating that the [                              ] of these sales are exclusive qualities of export sales.  AHSTAC and ASPA only offer comparisons between the [          ] sales and Megaa Moda's other POR home market sales and do not substantiate their claims that [          ] must indicate that the shrimp is not consumed in the home market.  We find that the record evidence simply indicates that Megaa Moda made sales to [          ] that differed only slightly from its other home market sales, and nothing on the record indicates that these sales could only have been meant for export.

      ASPA argues that the new record evidence Commerce collected on remand, which confirms that unbranded shrimp sold domestically [                              ], is neutral, but not affirmative, evidence that the sales to [          ] were for home market consumption.[64]  This argument stands in stark contrast to ASPA's position in its case brief that Megaa Moda's invoices showing that Megaa Moda [

---

[62] *See* AHSTAC Draft Remand Comments at 8-9.
[63] *Id.* at 9.
[64] *See* ASPA Draft Remand Comments at 6.

] prove that Megaa Moda knew these sales were not for domestic consumption.[65] Regardless, even if we agree with ASPA that the lack of tax does not dispositively indicate that the sales were for home market consumption, reviewed from this same angle, the product characteristics of the sales to [       ] described above are also neutral in their capacity to substantiate a finding that the sales to [     ] were not for consumption in the home market. As noted above, the standard of "known or should have known" relies on documented evidence that the shrimp was destined for export, such as the commercial invoice listing a final destination other than India.[66]

The evidence on the record indicates that the [

            ] and absent some affirmative evidence, Commerce has no basis to determine that Megaa Moda knew or should have known these sales were destined for anything other than for consumption in the home market.

We do not find ASPA's argument that the [     ] nature of the sales to [     ] demonstrates that the product is not ready for final consumption in India and would require final processing steps, implying that further manufacturing is likely to take place.[67] AHSTAC has also claimed that unbranded shrimp cannot be sold for consumption in India but "would have to be repackaged prior to consumption" and, thus, such sales were not made for consumption in India.[68] However, we do not agree that the fact that shrimp would need to be further processed before consumption is an indication that such sales must be destined for export. In fact, the Court specifically affirmed in *Allegheny Ludlum* that Commerce will evaluate under the same

---

[65] *See* ASPA's Letter, "ASPA's Rebuttal Brief," dated April 20, 2023, at 4-5.
[66] *See, e.g., Certain Cut-to-Length Carbon-Quality Steel Plate Products from Italy: Final Results and Partial Rescission of Antidumping Duty Administrative Review*, 71 FR 39299 (July 12, 2006), and accompanying IDM at Comment 1.
[67] *See* ASPA Draft Remand Comments at 9.
[68] *See* AHSTAC Draft Remand Comments at 10-11.

knowledge test whether a respondent knew or should have known that its domestic sales may be further manufactured before export.[69] Indeed, the Court in *Allegheny Ludlum* specifically held that "{m}erchandise sold in the home market, even if ultimately destined for export, is 'consumed' in the home market if it is used there to produce non-subject merchandise prior to exportation."[70] There is insufficient record evidence here to determine whether Megaa Moda's sales to [      ] were further manufactured or repackaged; however, even assuming, *arguendo*, that they were, we find that this would not necessarily undercut the conclusion that these sales were consumed in the home market. Thus, ASPA's argument is unavailing not only because it appears to indicate that the sales were actually consumed in the home market but also because it does not demonstrate that there was some affirmative evidence of export.

AHSTAC argues that Commerce should explain why the application of a domestic tax would be contingent upon its classification for export, and why a GST exemption premised on a classification system used for exportation and importation of goods reasonably supports a conclusion that sales of such goods were made for consumption in the home market.[71] We note that it is not uncommon practice for harmonized tariff schedule (HTS) classifications to be used, as indicated in the name, simply to classify goods in an accessible and unified way as Commerce does in its own AD and countervailing duty proceedings, using HTS codes to identify merchandise comprising the scope of an order.[72]

---

[69] *See Allegheny Ludlum*, 215 F. Supp. 2d at 1330-31.
[70] *Id.* at 1331.
[71] *See* AHSTAC Draft Remand Comments at 10.
[72] *See, e.g., Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp from India*, 70 FR 5147 (February 1, 2005). The scope of the order underlying the instant remand states that "The products covered by this order are currently classifiable under the following HTS subheadings:  0306.13.00.03, 0306.13.00.06, 0306.13.00.09, 0306.13.00.12, 0306.13.00.15, 0306.13.00.18, 0306.13.00.21, 0306.13.00.24, 0306.13.00.27, 0306.13.00.40, 1605.20.10.10, and 1605.20.10.30.  These HTS subheadings are provided for convenience and for customs purposes only and are not dispositive, but rather the written description of the scope of this order is dispositive."

Thus, based on our examination of the record evidence, we find no basis to find that Megaa Moda knew or should have known that its sales to [     ] were destined for export because the record evidence does not include affirmative evidence that these sales were meant for export; rather, ASPA and AHSTAC engage only in speculative comparison of the Megaa Moda sales without substantiating their claims. As a result, we continue to find it appropriate to treat Megaa Moda's sales to [     ] as home market sales in the calculation of NV.

**Comment 2:  Commerce Properly Declined to Revisit the Calculation of Megaa Moda's Interest Expense**

The following is a verbatim executive summary of argument submitted by AHSTAC. For further details, *see* AHSTAC's Draft Remand Comments at 12-13 (internal citations omitted).

> In the Final Results, the Department rejected Megaa Moda's claimed interest income offset for "interest on FD with FBL." While finding that the respondent failed to meet its burden to support this claimed offset, the Court's remand order noted that the agency "retain{ed} the authority" to reconsider this aspect of its determination should it wish to do so. In its draft results of redetermination, Commerce declined to revisit this aspect of the Final Results. The Department should maintain this decision in the final results of this remand proceeding as Megaa Moda failed to demonstrate on the administrative record the short-term nature of this claimed interest income offset.

The following is a verbatim executive summary of argument submitted by ASPA. For further details, *see* ASPA's Draft Remand Comments at 3-5 (internal citations omitted).

> Commerce properly did not reopen the issue of the rejection of Megaa Moda Pvt. Ltd.'s ("Megaa Moda") financial expenses offset. The Court affirmed Commerce's conclusion on this point. Megaa Moda had been given full opportunity to meet the burden on it to support its claim to this offset during the review, but failed to meet that burden.

**Commerce's Position:** The Court held that Commerce "retains the authority, of course, to revisit Megaa Moda's short-term interest claim of 'FD with FBL' on remand, should it chose to

18

do so."[73] In the Draft Results of Redetermination, we stated our intention to exercise our discretion not to revisit Megaa Moda's short-term interest offset claim of "FD with FBL" and we find no basis to reconsider this issue in these final results of redetermination.

## V.  FINAL RESULTS OF REDETERMINATION

In accordance with the Court's *Remand Order*, we continue to find that we properly treated Megaa Moda's sales of unbranded shrimp to [     ] as home market sales and included these sales in the calculation of NV. Because we made no changes to our calculations regarding the treatment of Megaa Moda's home market sales, we did not revisit Megaa Moda's short-term interest offset claim for "FD with FBL." As a result, we made no changes to the margins calculated in the *Final Results* for either Megaa Moda or the companies not selected for individual review (*i.e.*, 7.92 percent and 3.88 percent, respectively).[74]

11/25/2024

X _____

Signed by: ABDELALI ELOUARADIA

Abdelali Elouaradia
Deputy Assistant Secretary
  for Enforcement and Compliance

---

[73] *See Remand Order* at 56.
[74] *See Final Results*, 88 FR at 60432.