**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE THOMAS J. AQUILINO, JR., JUDGE**

| | |
|---|---|
| AD HOC SHRIMP TRADE ACTION COMMITTEE, | |
| Plaintiff, | |
| and | |
| AMERICAN SHRIMP PROCESSORS ASSOCIATION, | |
| Plaintiff-Intervenor, | |
| and | |
| MEGAA MODA PRIVATE LIMITED, | |
| Plaintiff, | Consol. Court No. 23-00202 |
| v. | <u>NON-CONFIDENTIAL VERSION</u> |
| UNITED STATES, | |
| Defendant, | |
| and | |
| MEGAA MODA PRIVATE LIMITED, | |
| Defendant-Intervenor, | |
| and | |
| AMERICAN SHRIMP PROCESSORS ASSOCIATION, et al., | |
| Defendant-Intervenors. | |

<u>COMMENTS OF THE AD HOC SHRIMP TRADE ACTION COMMITTEE AND THE</u>
<u>AMERICAN SHRIMP PROCESSORS ASSOCIATION IN OPPOSITION TO THE</u>
<u>U.S. DEPARTMENT OF COMMERCE'S REMAND REDETERMINATION</u>

**SCHAGRIN ASSOCIATES**
900 Seventh Street NW, Suite 500
Washington, DC 20001

*Counsel to the American Shrimp*
*Processors Association*

Dated: January 23, 2025

**PICARD KENTZ & ROWE LLP**
1155 Connecticut Avenue NW, Suite 700
Washington, DC 20036

*Counsel to the Ad Hoc Shrimp Trade*
*Action Committee*

NON-CONFIDENTIAL VERSION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

INTRODUCTION ............................................................................................................... 1

    I.    Background and Procedural History............................................................... 2

        A.    The *Final Results* and the Court's Remand Order .............................. 2

        B.    Commerce's Proceedings on Remand.................................................. 5

STANDARD OF REVIEW ................................................................................................. 6

ARGUMENT ....................................................................................................................... 7

    I.    Summary of Argument................................................................................... 7

    II.    The *Remand Results* Misapply Commerce's Knowledge Test in Continuing to Find that the Contested Sales Were Made for Consumption in the Exporting Country ...... 8

    III.    The *Remand Results* Are Unsupported by Substantial Evidence and Ignore Aspects of the Court's Remand Order ..................................................................... 12

CONCLUSION.................................................................................................................. 20

NON-CONFIDENTIAL VERSION

## TABLE OF AUTHORITIES

### Cases

*Ad Hoc Shrimp Trade Action Comm. v. United States*,
No. 23-00202, slip op. 24-93 (Ct. Int'l Trade Aug. 15, 2024) ........................................... *passim*

*Allegheny Ludlum Corp. v. United States*,
215 F. Supp. 2d 1322 (Ct. Int'l Trade 2000) ........................................................ 9, 18

*Consol. Edison Co. v. NLRB*,
305 U.S. 197 (1938) ............................................................................... 7

*CS Wind Vietnam Co. v. United States*,
832 F.3d 1367 (Fed. Cir. 2016) ...................................................................... 7

*Downhole Pipe & Equipment, L.P. v. United States*,
776 F.3d 1369 (Fed. Cir. 2015) ...................................................................... 7

*Federal-Mogul Corp. v. United States*,
17 C.I.T. 1015 (1993) ............................................................................ 17

*Gerald Metals, Inc. v. United States*,
132 F.3d 716 (Fed. Cir. 1997) ....................................................................... 7

*INA Walzlager Schaeffler KG v. United States*,
957 F. Supp. 251 (Ct. Int'l Trade 1997) .................................................. 10, 11, 17

*Jiangsu Jiasheng Photovoltaic Tech. Co. v. United States*,
121 F. Supp. 3d 1263 (Ct. Int'l Trade 2015) .......................................................... 6

*Motor Vehicle Mfrs. Assn. of U.S. v. State Farm Mutual Auto. Ins. Co.*,
463 U.S. 29 (1983) ................................................................................ 3

*Prosperity Tieh Enterprise Co. v. United States*,
965 F.3d 1320 (Fed. Cir. 2020) ...................................................................... 7

*Risen Energy Co. v. United States*,
122 F.4th 1348 (Fed. Cir. 2024) .................................................................... 17

*SKF USA Inc. v. United States*,
263 F.3d 1369 (Fed. Cir. 2001) .................................................................... 12

*Transactive Corp. v. United States*,
91 F.3d 232 (D.C. Cir. 1996) ...................................................................... 12

*Xinjiamei Furniture (Zhangzhou) Co. v. United States*,
968 F. Supp. 2d 1255 (Ct. Int'l Trade 2014) .......................................................... 7

**NON-CONFIDENTIAL VERSION**

*Z.A. Sea Foods Private Ltd. v. United States*,
   569 F. Supp. 3d 1338 (Ct. Int'l Trade 2022) .......................................................... 2-3

## Statutes

19 U.S.C. § 1516a .......................................................................................................... 6

19 U.S.C. §1677b ................................................................................................... 7, 8, 9

## Administrative Determinations

*Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France,
   et al.; Final Results of Antidumping Duty Administrative Reviews, Partial Termination of
   Administrative Reviews, and Revocation in Part of Antidumping Duty Orders*, 60 Fed.
   Reg. 10,900 (Dep't Commerce Feb. 28, 1995) .......................................................... 9

*Canned Pineapple Fruit From Thailand*, 68 Fed. Reg. 65,247 (Dep't Commerce
   Nov. 19, 2003) ............................................................................................................ 9

*Certain Cut-to-Length Carbon-Quality Steel Plate Products From Italy: Final Results and
   Partial Rescission of Antidumping Duty Administrative Review*, 71 Fed. Reg. 39,299
   (Dep't Commerce July 12, 2006) ...............................................................................11

*Certain Frozen Warmwater Shrimp From India: Final Results of Antidumping Duty
   Administrative Review; 2021-2022*, 88 Fed. Reg. 60,431 (Dep't Commerce
   Sept. 1, 2023) ......................................................................................................... 2, 3

*Grain-Oriented Electrical Steel From the Czech Republic: Final Determination of Sales at
   Less Than Fair Value and Final Affirmative Determination of Critical Circumstances*,
   79 Fed. Reg. 58,324 (Dep't Commerce Sept. 29, 2014) ......................................... 10

## INTRODUCTION

On behalf of plaintiff Ad Hoc Shrimp Trade Action Committee ("AHSTAC") and plaintiff-intervenor the American Shrimp Processors Association ("ASPA") (collectively, the "Domestic Industry"), we respectfully submit these comments in opposition to the U.S. Department of Commerce's ("Commerce") remand redetermination. *See Final Results of Redetermination Pursuant to Ct. Remand*, Nov. 25, 2024 ("*Remand Results*"), ECF 63-1 (conf.), 64-1 (public).[1] Commerce prepared the *Remand Results* following the Court's order remanding the final results of Commerce's seventeenth administrative review of the antidumping duty order on warmwater shrimp from India. *See Ad Hoc Shrimp Trade Action Comm. v. United States*, No. 23-00202, slip op. 24-93 (Ct. Int'l Trade Aug. 15, 2024) ("*AHSTAC I*"). On remand, Commerce maintained its decision to treat Megaa Moda Private Limited's ("Megaa Moda") sales to [                                              ] as sales for consumption in India for purposes of determining the normal value ("NV") of the subject merchandise. Thus, Commerce made no change to the dumping margin assigned to Megaa Moda or the 185 companies not selected for individual examination. As explained below, the Court should order a second remand as the *Remand Results* do not comply with the Court's remand order, are unsupported by substantial evidence, and are otherwise contrary to law.

---

[1] Documents on the record of the underlying administrative review are referred to within these comments by the document number assigned in the record index filed by Commerce with the Court on November 8, 2023. *See* ECF 33. Confidential documents are identified with the rubric "C.R." followed by the relevant document number while public documents and public versions of confidential documents are identified by the rubric "P.R." followed by the relevant document number. Documents on the record of the remand administrative record are identified with "R.P.R." or "R.C.R." followed by the number assigned to the relevant document in the record index filed with the court on December 9, 2024. *See* ECF 65.

NON-CONFIDENTIAL VERSION

## I.  Background and Procedural History

### A.  The *Final Results* and the Court's Remand Order

This appeal—and the contested remand redetermination—arises from Commerce's decision to determine the NV of Megaa Moda's sales of the subject merchandise using the price of sales in India (*i.e.*, the exporting country) despite evidence showing that Megaa Moda knew or should have known that certain of these sales to one specific customer that is also an Indian shrimp exporter were not sold for consumption in the Indian market.  *See Certain Frozen Warmwater Shrimp From India: Final Results of Antidumping Duty Administrative Review; 2021-2022*, 88 Fed. Reg. 60,431 (Dep't Commerce Sept. 1, 2023) ("*Final Results*"), P.R. 205.  In reaching its original determination, Commerce rejected arguments presented by AHSTAC and ASPA concerning the lack of substantial evidence establishing that Megaa Moda "knew or should have known" that its sales of shrimp to an Indian exporter customer were made for consumption in India.  *See* Issues and Decision Memorandum for the Final Results of the 2021-2022 Antidumping Duty Administrative Review of Certain Frozen Warmwater Shrimp from India (Aug. 25, 2023) ("IDM"), at 8-9, P.R. 202.  Dismissing these arguments, Commerce concluded that there was "no evidence" that could support excluding these sales from the agency's calculation of NV.  *Id.* at 9.  Commerce specifically claimed that the record demonstrated that: "(1) the destination of these sales was a location in India; and (2) there was no specific packaging or labeling for these sales indicating that they were destined for export."  *Id.*  Commerce asserted further that "the trade patterns of a company's customers" are insufficient to establish that reported home market sales cannot be used to determine NV.  *See id.* (citing *Z.A. Sea Foods Private Ltd. v. United States*, 569 F. Supp. 3d 1338, 1351 (Ct. Int'l Trade 2022) ("*ZASF I*")).

NON-CONFIDENTIAL VERSION

AHSTAC commenced this action to contest the *Final Results* and Commerce's decision to include Megaa Moda's sales to [          ] in its calculation of the NV of the subject merchandise. *See AHSTAC I*, slip op. at 1. In *AHSTAC I*, the Court examined record evidence concerning the contested sales and held that Commerce's determination was "not based on or amounts to substantial evidence," *AHSTAC I*, slip op. at 30, and that the agency failed to articulate a satisfactory explanation for its action. *Id.* at 42-43 (quoting *Motor Vehicle Mfrs. Assn. of U.S. v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

The Court's opinion and remand order thoroughly scrutinized Commerce's analysis. In particular, the Court rebuffed Commerce's broadly preclusive interpretation of *ZASF I*, noting that the agency may not disregard a respondent's "knowledge of the business" of its customers. *AHSTAC I*, slip op. at 32; *see also id.* at 38 (calling Commerce's reading of *ZASF I* "unduly restrictive"). The Court noted that doing so would be particularly unreasonable when the customer in question is "a larger competitor whose operations overwhelmingly consist of shrimp exportation." *Id.* at 32. Likewise, the Court explained that *ZASF I* cannot be read to "curtail {Commerce's} consideration of other independent facts" that are relevant to whether a respondent knew or should have known that a sale was made for consumption in the exporting country. *Id.* at 39. Instead, the Court highlighted Commerce's obligation to "diligently examine the circumstances surrounding a transaction . . . to determine whether the respondent knew or should have known that the sale is for consumption in the exporting country and can be used to determine normal value." *Id.* (citations omitted).

NON-CONFIDENTIAL VERSION

After analyzing [                    ] figures relative to those of Megaa Moda,[2] the

Court rejected Commerce's conclusion that a [

                                        ]. *AHSTAC I*, slip op. at 33 (quoting

Commerce Memorandum, "Proprietary Memorandum for the Final Results" (Aug. 25, 2023),

at 4, C.R. 130, P.R. 204).  Specifically, the Court observed that [

                                        ]. *Id.* at 34.  Thus,

the Court held that information on the record did not support Commerce's inference that

[                                        ] was still of greater significance than Megaa Moda's and,

as such, this observation failed to support a conclusion that Megaa Moda's sales to [        ]

were for consumption in the Indian market.  *Id.* at 33.

In addition to rejecting Commerce's interpretation of *ZASF I* and its analysis of

[                                        ], the Court held that other aspects of Commerce's analysis were

unsupported by substantial evidence.  For example, the Court expounded that Commerce's

reliance on the "destination" of the contested sales overlooks the fact that the reported

destination corresponds to a location where [

                                        ].  *AHSTAC I*, slip op. at 40; *see also* Letter from

Picard Kentz & Rowe LLP to Commerce, "Comments on Megaa Moda's Response to Sections

A, B, and C of the Questionnaire" (Dec. 21, 2022) ("AHSTAC Comments on Megaa Moda's

Questionnaire Response"), at 11-12 ([

               ]), P.R. 134, C.R. 73.  The Court also rejected Commerce's claim that the [

_____

[2] This information was placed on the record by [
                                        ].  *See AHSTAC I*, slip op. at 3.

] of the contested sales "was not a unique characteristic," holding that the [                    ] of

Megaa Moda's sales to [            ] was both "unique" and "[                              ]

home market sale during the 12-month period of review." *AHSTAC I*, slip op. at 40. The Court's

opinion and remand order also noted that Commerce's IDM contained "no discussion"

responsive to AHSTAC's argument of whether unbranded shrimp could be sold for consumption

in India without first undergoing repackaging. *Id.* at 40-42. Finally, the Court considered the

significance of the fact that [

                                        ]. *Id.* at 41. Regarding this point, the

Court held that Commerce failed to cite any record information that would support Megaa

Moda's claim that [            ] are inapplicable to sales of unbranded shrimp product. *Id.*; *see*

*also id.* at 41 n.26 (observing that Commerce "simply accept{ed}" Megaa Moda's assertion

made for the first time in its rebuttal brief that "unbranded shrimp in India is exempted . . . by

law" from [                              ]).

Based on its review of record evidence and the "unusual nature of the contested sales,"

the Court remanded Commerce's decision to treat Megaa Moda's sales to [            ] as sales

for consumption in the exporting market. *Id.* at 43.

**B.    Commerce's Proceedings on Remand**

On remand, Commerce issued Megaa Moda a supplemental questionnaire asking for

information related to its claim that "domestic sales of unbranded shrimp in India during the

period of review did not incur GST or other domestic Indian taxes." Letter from Commerce to

Trade Pacific PLLC, "Suppl. Questionnaire" (Sept. 13, 2024), R.P.R. 1. Megaa Moda provided

copies of various notifications issued by the Government of India's Ministry of Finance in

response to Commerce's supplemental questionnaire. *See* Letter from Megaa Moda Pvt. Ltd. to

Commerce, "Resp. to Suppl. Questionnaire" (Sept. 20, 2024), R.P.R. 2. This information

showed that shrimp not "bearing a registered trade name" were exempt from GSTs regardless of whether the product was sold for consumption in India or some other market.  *See id.*

Commerce's draft remand continued to find that Megaa Moda sales to [          ] were properly treated as home market sales and included in the calculation of NV.  *See* Draft Results of Redetermination Pursuant to Court Remand (Oct. 28, 2024), R.P.R. 3, R.C.R. 1.  The draft remand "gave particular attention to the new information Megaa Moda submitted," *id.* at 8-9, and found that the respondent's sales to [          ] were appropriately treated as sales for consumption in the home market because the sales were made "to an Indian customer at an Indian location, brokered by an Indian purchasing agent."  *Id.* at 10.  Both AHSTAC and ASPA submitted comments opposing the draft remand, arguing that Commerce's draft remand failed to address the Court's remand order in *AHSTAC I* and that the agency continued to overlook evidence that detracted from its conclusion.  *See* Letter from Picard Kentz & Rowe LLP to Commerce, "Comments on Draft Results of Redetermination Pursuant to Court Remand" (Nov. 4, 2024) ("AHSTAC Draft Remand Comments"), R.P.R. 4, R.C.R. 2; Letter from Schagrin Associates to Commerce, "ASPA's Comments on Draft Remand" (Nov. 4, 2024) ("ASPA Draft Remand Comments"), R.P.R. 5, R.C.R. 3.  The *Remand Results* rejected the arguments made by AHSTAC and ASPA and continued to find that the contested sales were properly included in Commerce's determination of the NV of Megaa Moda's sales of the subject merchandise.  *See Remand Results* at 3.

## STANDARD OF REVIEW

A remand redetermination will be set aside if it is found to be "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i); *see also Jiangsu Jiasheng Photovoltaic Tech. Co. v. United States*, 121 F. Supp. 3d 1263, 1268 (Ct. Int'l Trade 2015) (discussing the substantial evidence standard of review).  Commerce's

remand redeterminations are also reviewed for compliance with the court's remand order.  *See,*

*e.g.*, *Xinjiamei Furniture (Zhangzhou) Co. v. United States*, 968 F. Supp. 2d 1255, 1259 (Ct. Int'l

Trade 2014) (citation omitted).

      The substantial evidence standard requires Commerce to base its determination upon

such evidence that "a reasonable mind might accept as adequate to support a conclusion."

*Prosperity Tieh Enterprise Co. v. United States*, 965 F.3d 1320, 1326 (Fed. Cir. 2020) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Substantial evidence is defined as

"more than a mere scintilla," *Downhole Pipe & Equipment, L.P. v. United States*, 776 F.3d 1369,

1374 (Fed. Cir. 2015) (citation omitted), and requires that the agency take into account

"whatever in the record fairly detracts" from the weight of supportive evidence.  *CS Wind*

*Vietnam Co. v. United States*, 832 F.3d 1367, 1373 (Fed. Cir. 2016) (quoting *Gerald Metals, Inc.*

*v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997)).

## ARGUMENT

## I.    <u>Summary of Argument</u>

      In the *Remand Results*, Commerce unreasonably maintains its conclusion that Megaa

Moda knew or should have known that its sales to [     ] were made "for consumption" in

the home market.  Commerce's remand decision must be set aside for multiple reasons.  First, the

*Remand Results* fail to properly apply the knowledge test employed by Commerce to determine

whether particular sales may be used to determine the NV of the merchandise.  Instead of asking

whether Megaa Moda's sales to [     ] were made "for consumption in the exporting

country," *see* 19 U.S.C. §1677b(a)(1)(B)(i), Commerce queried whether such sales "must be U.S.

sales" and "were destined for export to the United States," ignoring the inquiry required under

the statute and the agency's normal practice.  Second, Commerce's analysis in the *Remand*

*Results* overlooks the detailed analysis in *AHSTAC I* through which the Court identified

numerous instances where the agency's factual findings were unsupported by substantial evidence on the record.  By failing to meaningfully engage with record evidence, including information that detracted from its conclusion, Commerce's decision remains unsupported by substantial evidence.

## II.    The *Remand Results* Misapply Commerce's Knowledge Test in Continuing to Find that the Contested Sales Were Made for Consumption in the Exporting Country

The statute provides Commerce with three methods for determining the NV of the subject merchandise.  *See AHSTAC I*, slip op. at 14.  Commerce's "default method" is to determine NV using the price at which the foreign like product is first sold "for consumption" in the respondent's home market.  *Id.* (citing 19 U.S.C. § 1677b(a)(1)(B)(i)).  Specifically, the statute instructs:

(1) DETERMINATION OF NORMAL VALUE.—

(A) IN GENERAL.—The normal value of the subject merchandise shall be the price described in subparagraph (B), at a time reasonably corresponding to the time of the sale used to determine the export price or constructed export price under section 1677a(a) or (b) of this title.

(B) PRICE.—The price referred to in subparagraph (A) is—

(i) the price at which the foreign like product is first sold (or, in the absence of a sale, offered for sale) *for consumption* in the exporting country, in the usual commercial quantities and in the ordinary course of trade and, to the extent practicable, at the same level of trade as the export price or constructed export price.

19 U.S.C. § 1677b(a)(1) (emphasis added).  Accordingly, the statute prohibits Commerce from relying on sales not made "for consumption" when determining NV using the price of home market sales.  *Id.* § 1677b(a)(1)(B)(i).

As noted by the Court in *AHSTAC I*, Commerce employs a "knowledge test" if there is a question as to whether a particular sale was made "for consumption" in the home market and can properly be considered in determining the NV of the subject merchandise.  *AHSTAC I*, slip op.

at 14 (citing *Allegheny Ludlum Corp. v. United States*, 215 F. Supp. 2d 1322, 1330-31 (Ct. Int'l

Trade 2000)).  Commerce has observed that "home market sales are those that are 'for

consumption in the exporting country.'"  *See, e.g.*, *Canned Pineapple Fruit From Thailand*, 68

Fed. Reg. 65,247 (Dep't Commerce Nov. 19, 2003), and accompanying IDM at Comment 1

(explaining that "{u}nder the Department's practice . . . it is necessary to examine not only a

respondent's books and records, but also all the circumstances and facts surrounding the sales to

determine if a respondent knew, or should have known, that sales made in the domestic market

were for consumption in the home market").  Importantly, Commerce has explained that "sales

which are not for home consumption, even if they are not classifiable as U.S. sales under section

772(b), are not appropriately classified as {home market} sales for antidumping purposes."

*Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, et

al.; Final Results of Antidumping Duty Administrative Reviews, Partial Termination of

Administrative Reviews, and Revocation in Part of Antidumping Duty Orders*, 60 Fed.

Reg. 10,900, 10,953 (Dep't Commerce Feb. 28, 1995).  Thus, the knowledge test applied by

Commerce to establish the universe of sales used to determine NV in accordance with

section 773(a)(1)(B)(i) of the Act considers whether a respondent knew or should have known

that the sale was "for consumption" in the exporting country, rather than whether the product was

exported to the United States or some other market.  *See* 19 U.S.C. § 1677b(a)(1)(B)(i).

    Commerce's decision on remand misstates (and misapplies) the knowledge test.  The

*Remand Results* "continue{} to find that Megaa Moda did not know nor should have known that

its home market sales of unbranded shrimp . . . *may have been destined for export*."  *Remand

Results* at 3 (emphasis added).  But under the knowledge test, Commerce is to consider whether

the respondent "knew or should have known that the merchandise was not for home consumption

based on the particular facts and circumstances of the case." *INA Walzlager Schaeffler KG v. United States*, 957 F. Supp. 251, 263-64 (Ct. Int'l Trade 1997). As explained in *INA Walzlager*, there is "no reference" in section 773(a) of the Act to the destination of goods not sold for home consumption. *Id.* at 263. Rather, the focus of section 773(a) of the Act is whether the goods were "sold for home consumption." *See id.* at 263-64. By focusing on whether Megaa Moda's "sales to [          ] were destined for export to the United States," *Remand Results* at 10, Commerce misapplies the knowledge test by conflating knowledge as to whether goods sold were for export with the statutory standard of knowledge as to whether goods sold were for consumption in the home market.

Commerce's failure to properly apply the knowledge test is reflected elsewhere in the *Remand Results*. For example, Commerce cites *Grain-Oriented Electrical Steel from the Czech Republic* for the proposition that the agency "considers both a seller's actual knowledge and its constructive knowledge . . . of the final destination of the merchandise at the time of sale." *Remand Results* at 8 (citing *Grain-Oriented Electrical Steel From the Czech Republic: Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances*, 79 Fed. Reg. 58,324 (Dep't Commerce Sept. 29, 2014) ("*GOES from the Czech Republic*"), and accompanying IDM at Comment 2). Commerce's citation is inapposite as that proceeding concerned the knowledge test applied by Commerce under section 772 of the Act to determine whether a respondent had knowledge of *the U.S. destination* of the merchandise such that the sale should be included in the universe of sales used to determine export price. Unlike *GOES from the Czech Republic*, this case concerns section 773 of the Act and whether a sale was made for consumption in the exporting country and should be included in calculating the NV of the merchandise. Commerce's citations to *Certain Circular Welded Non-Alloy Steel Pipe from*

*Mexico*, *Synthetic Indigo from China*, and *Certain Cut-to-Length Carbon-Quality Steel Plate Products from Italy* also involve the knowledge test applied by Commerce under 772 of the Act and are thus equally irrelevant to the question of whether Megaa Moda knew or should have known that its sales to [          ] were for consumption in the exporting country. *See Remand Results* at 8 and 16 (citations omitted).

Indeed, Commerce argues in the *Remand Results* that its knowledge test requires that there be "affirmative evidence," "such as the commercial invoice listing a final destination other than India," to show that the respondent knew what the final destination was before Commerce will remove such sales from the universe of home market sales for calculating NV. *See Remand Results* at 16 (citing *Certain Cut-to-Length Carbon-Quality Steel Plate Products From Italy: Final Results and Partial Rescission of Antidumping Duty Administrative Review*, 71 Fed. Reg. 39,299 (Dep't Commerce July 12, 2006), and accompanying IDM at Comment 1). That has *not* been Commerce's explanation of its knowledge test for NV in other proceedings. Indeed, Commerce has previously maintained that "knowledge of the destination of the merchandise" is not required for the agency to exclude a sale from the calculation of NV so long as the respondent "knew or should have known the sales were not for home consumption." *INA Walzlager Schaeffler KG*, 957 F. Supp. at 263. The Court in that case upheld Commerce's interpretation of section 773(a) of the Act as "consistent with the statute." *Id.* That Commerce requires evidence of knowledge of the final destination in order to *include* U.S. sales under section 772 of the Act is reasonable given that goods may be exported to many markets other than the United States, so knowledge of some export alone does not address the full question as to whether it is appropriate to treat a sale made in another market as a sale for consumption in the United States, such that the sale is relied upon as a basis for export price. Commerce's

misperception here that to *exclude* home market sales under section 773 of the Act requires that the respondent likewise must have knowledge or otherwise should have known of the ultimate destination of the merchandise is unreasonable, as export of the untransformed goods to *any* foreign market necessarily eliminates any possibility of consumption in the home market.

In summary, the *Remand Results* confuse the knowledge test applied by Commerce to determine the universe of U.S. sales used to calculate export price with the knowledge test applied by Commerce to determine whether a producer knew or should have known that the merchandise was sold for consumption in the exporting country. By analyzing record evidence under the wrong standard, Commerce's decision is contrary to law. Moreover, because it applied a knowledge test for home market consumption different than that applied in other proceedings, the agency's decision is also arbitrary. *See SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) ("{I}t is well-established that 'an agency action is arbitrary when the agency offer{s} insufficient reasons for treating similar situations differently'" (quoting *Transactive Corp. v. United States*, 91 F.3d 232, 237 (D.C. Cir. 1996))). As a result, the Court must hold the *Remand Results* unlawful.

## III. The *Remand Results* Are Unsupported by Substantial Evidence and Ignore Aspects of the Court's Remand Order

The *Remand Results* continue to find that Megaa Moda's sales to [          ] were appropriately used to determine the NV of the merchandise despite the circumstances surrounding those sales. *See Remand Results* at 18. In reaching its redetermination, Commerce continues to draw many of the same unsupported conclusions that it made in the *Final Results* which were the basis for the Court's remand order in *AHSTAC I*. As detailed below, Commerce's analysis remains unreasonable and unsupported by substantial evidence on the record.

The *Remand Results* dismiss arguments presented by AHSTAC and ASPA that the shrimp product sold to [          ] was unique among Megaa Moda's home market sales "because the sales were of [              ] shrimp and sold in [              ] form." *Remand Results* at 15. According to Commerce, the record provided "insufficient evidence indicating that the [

          ]" of Megaa Moda's sales to [          ] are "exclusive qualities of export sales." *Id.*

This analysis was expressly rejected in *AHSTAC I* where the Court found that "the [          ] of the contested sales were unique and [                    ] home market sale made during the 12-moth period of review." *AHSTAC I*, slip op. at 40 (emphasis added). Moreover, with respect to [          ], the Court, in *AHSTAC I* stated:

> Noteworthy also is that the contested sales were the only sales of [
>            ] in the home market; therefore, because all the other [      ] home
> market sales observations report [                        ], and since
> Megaa Moda reported [                      ] to customers in the
> United States, similar to the [
>                                    ] not
> only in terms of volume but consisting of [
>                          ], *the inference from these
> circumstances should be obvious*.

*Id.* at 27 (citations omitted; emphasis added). Thus, the *Remand Results* flout the Court's detailed analysis of this record evidence in *AHSTAC I* in reaching a conclusion that is opposite the "inference" that "should be obvious" to any reasonable factfinder. *See id.* Indeed, Megaa Moda's sales to [          ] possess qualities that are [                    ] home market sales as they were Megaa Moda's [      ] home market sales of [

          ] product, that was [          ]. Megaa Moda did not sell [

                    ] to any of the customers Megaa Moda knew would consume the shrimp in India; it only sold those types of shrimp to [          ] for export. This record information directly contradicts Commerce's factual findings and suppositions in the

*Remand Results*.  Accordingly, the Court should reject (once again) Commerce's claim that [

                    ] of the contested sales are not "exclusive qualities" of Megaa Moda's

export sales and instruct the agency to address the clear implication of these facts.

    Commerce's consideration of [        ] is similarly flawed and remains unsupported by

substantial evidence.  The *Remand Results* state that there is "insufficient evidence" indicating

that the [        ] of Megaa Moda's sales to [            ] is an "exclusive" quality of export

sales.  *Remand Results* at 15.  However, as the Court observed in *AHSTAC I*, the [



                                ].  *AHSTAC I*, slip op. at 26-27.  Indeed, the

[      ] sales observations that correspond to Megaa Moda's sales to [            ] involve sales

[                                ].  *See* Home

Market Sales Database.  Outside of these sales observations, the [

                            ].  *Id.*  Thus, the

[                        ] of Megaa Moda's sales to [

                    ] clearly detracts from the agency's conclusion that the contested

sales were made for consumption in the exporting country.  Consideration of this record evidence

is relevant to Megaa Moda's knowledge regarding whether the sales in question were made for

consumption in the home market.

    The *Remand Results* also improperly rejected arguments made by AHSTAC and ASPA

regarding whether the shrimp product was sold by Megaa Moda *for consumption*.  *See Remand

Results* at 16-17.  Specifically, Commerce rejected both ASPA's argument that the [            ]

nature of the sales to [            ] demonstrated that Megaa Moda knew or should have known

that the product was not sold for consumption, as well as AHSTAC's argument that the fact that

14

the shrimp was sold in [                    ] and in unbranded pouches shows that it was not ready for consumption without repackaging.  *Id.*  In rejecting these arguments, Commerce states that the agency "do{es} not agree that the fact that shrimp would need to be further processed *before consumption* is an indication that such sales must be destined for export."  *Id.* at 16 (emphasis added); *see also id.* at 17 (stating that further manufacturing or repackaging "would not necessarily undercut the conclusion that these sales were consumed in the home market").  This response is inconsistent with the statute, however, as the statute requires that the product be sold "for consumption" in the home market if it is to be used to determine NV.  19 U.S.C. § 1677b(a)(1)(B)(i).

Here, AHSTAC and ASPA identified explicit record evidence showing that the contested sales were not sold by Megaa Moda [            ] and packaging that can support a conclusion that the sales were made "for consumption."  For example, the fact that the product was sold in "unbranded" pouches and cartons lacking a trade name means that the product would need to be repackaged, labelled, and branded before being sold "for consumption."  *See* AHSTAC Draft Remand Comments at 9-10, R.P.R. 4, R.C.R. 2.  Indeed, the fact that the contested sales were exempt from internal consumption taxes because they lacked a registered trade name cuts against any conclusion that they were sold for consumption, as the lack of branding coupled with [                              ] suggest that the product would be repackaged under [                        ] before being sold as scope merchandise to another market.  *See id.*

Evidence highlighted by ASPA in their comments on the draft remand further demonstrates that the shrimp product sold by Megaa Moda to [          ] was not sold for consumption.  Specifically, ASPA's comments on the draft remand explained that the [                                            ] where the glaze inclusive weight

[          ] the glaze exclusive weight. *See* ASPA Draft Remand Comments at 8, R.P.R. 5, R.C.R. 3. Megaa Moda's Section A response reported that its shrimp product is [

          ]. Letter from Megaa Moda to Commerce, "Megaa Moda Private Limited's Response to Section A of the Original Antidumping Questionnaire" (Aug. 29, 2022) ("Section A Response"), at Exhibit A.11.b, P.R. 117, C.R. 39. Thus, the fact that the merchandise sold by Megaa Moda to [          ] was [          ] demonstrates that the product was not sold by the respondent for consumption as [

          ]. *See id.* This fact is especially salient when coupled with the product's unbranded packaging and record evidence showing that [

          ]. *See* AHSTAC Comments on Megaa Moda's Questionnaire Response at 11-12 ([

          ]), P.R. 134, C.R. 73. In this case, the product's [          ] and unbranded packaging refutes Commerce's conclusion that there is "insufficient record evidence" to find that Megaa Moda's sales to [          ] were repackaged prior to consumption. *Remand Results* at 17.

Commerce's declaration that this evidence was "insufficient" for the agency to determine if the sales in question were repackaged by [          ] fails to meet the substantial evidence standard required for Commerce's determinations. Commerce points to no evidence on the record that weighs against the evidence cited by AHSTAC and ASPA, showing that the type of merchandise Megaa Moda sold to [          ] would need to be repackaged. *See AHSTAC I,* slip op. at 34 (noting that speculation is not substantial evidence). As the only evidence points to that obvious inference, Commerce cannot simply waive that evidence away while relying on no other evidence that supports Commerce's alternative theory. *See, e.g., Risen Energy Co. v.*

NON-CONFIDENTIAL VERSION

*United States*, 122 F.4th 1348, 1356 (Fed. Cir. 2024) ("Speculation and guesswork are not substitutes for substantial evidence." (citations omitted)).  Throughout this proceeding, Commerce has declined to identify any evidence on the record that would support a conclusion that Megaa Moda had knowledge or should have known that sales of shrimp to another shrimp exporter were for consumption in the Indian market.  Rather, Commerce has contended that sales from Megaa Moda to its exporter customer could have been for consumption in the Indian market because they were made in India.  This is not substantial evidence.  Commerce must consider all of the evidence before the agency and come to a reasonable conclusion that takes any contrary evidence into account; Commerce is not permitted to reach a conclusion that simply ignores the specific facts before the agency.  *See CS Wind Vietnam Co.*, 832 F.3d at 1376.

The *Remand Results* again unreasonably assert that the determinative evidence on the record is that the sales were made "to an Indian company at an Indian location," *Remand Results* at 10; ignoring that Commerce must "diligently inquire" when there is information on the record that calls into question whether a respondent has knowledge that sales were made for consumption in the home market.  *See Federal-Mogul Corp. v. United States*, 17 C.I.T. 1015, 1020-21 (1993).  In this case, Megaa Moda knew that its customer was itself an exporter.  *See INA Walzlager Schaeffler KG*, 957 F. Supp. at 265 ("It is highly unlikely that FAG would have no knowledge of the activities of its buyers.").  Thus, the fact that the sales were made to "to an Indian company" is of little moment when coupled with the fact that the Indian company that was the customer was itself a known exporter and that the customer's [

            ].  *See AHSTAC I*, slip op. at 40.

In result, Commerce's inquiry into Megaa Moda's sales to [          ] is inconsistent with the agency's approach in other proceedings where a respondent made sales to exporter customers in its home market. For example, in *Alleghany Ludlum*, this Court sustained Commerce's conclusion that a respondent's sales to a customer were consumed in the home market for purposes of section 773(a)(1) of the Act based on the respondent's knowledge that the merchandise would be "consumed" through further processing in the home market into merchandise outside the scope of the antidumping order then in question. *Allegheny Ludlum Corp.*, 215 F. Supp. 2d at 1333-36. Unlike that case, there is nothing on the record of this proceeding that would support a conclusion that Megaa Moda had knowledge or should have known that [          ] consumed the shrimp through processing into some non-scope product in a manner that would result in consumption in the comparison market. *Cf. Remand Results* at 17 (Commerce claiming that the record "appears to indicate that the sales were actually consumed in the home market" without pointing to any evidence of a transformation into non-subject merchandise). Rather, [

]. Specifically, [

]. Because Commerce relied upon the customer's location in India, the agency failed to diligently analyze

the circumstances surrounding the [      ] contested sales and, as such, Commerce's application of the knowledge test must be remanded.

In conclusion, by focusing on whether the product may have been consumed at some point in India (after further processing or repackaging), Commerce failed to support its determination by substantial evidence. Commerce may only include a sale in its calculation of NV if that sale was made "for consumption." If the shrimp product sold required further processing (*i.e.*, [      ]) and repackaging (*i.e.*, into branded packages) that would not constitute consumption by the customer before resale, then there is no evidence that the contested sales were made "for consumption" in the Indian market at the time of sale. Accordingly, Commerce's conclusion that Megaa Moda knew or should have known that its sales to [      ] were for consumption in the home market is unsupported by substantial evidence and is otherwise contrary to law.

NON-CONFIDENTIAL VERSION

## CONCLUSION

For the reasons detailed above, the Domestic Industry respectfully submits that the *Remand Results* are not supported by substantial evidence or in accordance with law. The Domestic Industry therefore respectfully requests that the Court remand the *Remand Results* so that Commerce can redetermine the NV after excluding sales that Megaa Moda did not know or should have known were sold for consumption in the home market. We also respectfully submit that any change to Megaa Moda's dumping margin resulting from a second remand be reflected in a revised non-selected companies' rate for the producers/exporters under review but not chosen for individual examination.

Respectfully submitted,

/s/ Zachary J. Walker

| | |
|---|---|
| Roger B. Schagrin | Zachary J. Walker |
| Nicholas J. Birch | Nathaniel Maandig Rickard |
| | |
| **SCHAGRIN ASSOCIATES** | **PICARD KENTZ & ROWE LLP** |
| 900 Seventh Street NW | 1155 Connecticut Avenue NW |
| Suite 500 | Suite 700 |
| Washington, DC 20001 | Washington, DC 20036 |
| | |
| *Counsel to the American Shrimp* | *Counsel to the Ad Hoc Shrimp Trade* |
| *Processors Association* | *Action Committee* |

Dated: January 23, 2025

**CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATION**

I, Zachary J. Walker, hereby certify that these comments, exclusive of the table of contents, table of authorities, and counsel's signature block, but including headings, footnotes, and quotations contains 6,168 words, according to the word count function of the word processing program used to prepare these comments, and therefore complies with the word limitations as set forth in ¶ 2(B)(1)(b) of the Standard Chambers Procedures of this Court.

/s/ Zachary J. Walker
Zachary J. Walker

**PICARD KENTZ & ROWE LLP**
*Counsel to the Ad Hoc Shrimp Trade Action Committee*

Dated: January 23, 2025