UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE THOMAS J. AQUILINO, JR., JUDGE

| | |
|---|---|
| AD HOC SHRIMP TRADE ACTION COMMITTEE,<br><br>        Plaintiff,<br><br>and<br><br>AMERICAN SHRIMP PROCESSORS ASSOCIATION,<br><br>        Plaintiff-Intervenor,<br><br>and<br><br>MEGAA MODA PRIVATE LIMITED,<br><br>        Consolidated Plaintiff,<br><br>v.<br><br>UNITED STATES<br><br>        Defendant,<br><br>and<br><br>MEGAA MODA PRIVATE LIMITED,<br><br>        Defendant-Intervenor,<br><br>and<br><br>AMERICAN SHRIMP PROCESSORS ASSOCIATION, et al.,<br><br>        Defendant-Intervenors. | Consol. Court No. 23-00202 |

**DEFENDANT-INTERVENOR'S RESPONSIVE COMMENTS
IN SUPPORT OF THE REMAND REDETERMINATION**

        **Submitted by:**

        **Robert G. Gosselink
        Aqmar Rahman
        Trade Pacific PLLC
        700 Pennsylvania Avenue, SE, Suite 500
        Washington, D.C. 20003
        Tel.: (202) 223-3760**

        **Counsel to Megaa Moda Private Limited**

**Dated: March 7, 2025**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES .................................................................................................... ii

I.     INTRODUCTION ........................................................................................................ 1

II.    ARGUMENT ................................................................................................................ 2

        A.     Standard of Review. .......................................................................................... 3

        B.     Commerce Followed Its Established Practic in Applying the Knowledge Test to Megaa Moda's Sales ..................................................................................... 3

III.   CONCLUSION ............................................................................................................. 8

**TABLE OF AUTHORITIES**

**Cases**

*Ad Hoc Shrimp Trade Action Comm. v. United States*, No. 23-00202,
slip op. 24-93 (Ct. Int'l Trade Aug. 15, 2024) .......................................................................... *passim*

*Allegheny Ludlum Corp. United States*, 215 F. Supp. 2d 1322 (Ct. Int'l Trade 2000) .................... 3

*F.lli De Cecco di Filippo Fara S. Martino S.p.A.*, 216 F.3d 1027 (Fed. Cir. 2000) ..................... 8-9

*MacLean-Fogg Co. v. United States*, 100 F. Supp 3d 1349 (Ct. Int'l Trade 2015) ......................... 3

*Micron Tech., Inc. United States*, 117 F.3d 1386 (Fed. Cir. 1997) ................................................. 9

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ............................................................................................................ 3

19 U.S.C. § 1677e ............................................................................................................................. 7

**Administrative Determinations**

*Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, et al.; Final Results of Antidumping Duty Administrative Reviews*, 60 Fed. Reg. 10,900 (Dep't Commerce Feb. 28, 1995) ............................................................................ 4, 6

*Certain Paper Shopping Bags From Colombia: Final Affirmative Determination of Sales at Less Than Fair Value*, 89 Fed. Reg. 45,843 (Dep't Commerce May 24, 2024) ..................... 5

*Certain Circular Welded Non-Alloy Steel Pipe from Mexico: Final Results of Antidumping Duty Administrative Review*, 76 Fed. Reg. 36086 (Dep't Commerce June 21, 2011) ............. 4-5

*Certain Frozen Warmwater Shrimp From India*, 88 Fed. Reg. 60,431 (Dep't Commerce Sept. 1, 2023) ........................................................................................................ 1

*Welded Line Pipe From the Republic of Korea*, 80 Fed. Reg. 61,366 (Dep't Commerce Oct. 13, 2015) ................................................................................................................. 4

**DEFENDANT-INTERVENOR'S RESPONSIVE COMMENTS
IN SUPPORT OF THE REMAND REDETERMINATION**

**I.     INTRODUCTION**

Defendant-Intervenor, Megaa Moda Private Limited ("Megaa Moda"), an Indian producer and exporter of frozen warmwater shrimp, respectfully submits this response to the comments on the U.S. Department of Commerce's ("Commerce's") final results of redetermination, filed by Plaintiff, Ad Hoc Shrimp Trade Action Committee and Plaintiff-Intervenor, the American Shrimp Processors Association (heretofore, "AHSTAC").  *See* Comments of the Ad Hoc Shrimp Trade Action Committee and the American Shimp Processors Association in Opposition to the U.S. Department of Commerce's Remand Redetermination (January 23, 2025), ECF No. 68 ("AHSTAC Comments."); *see also Final Results of Redetermination Pursuant to Court Remand, Ad Hoc Shrimp Trade Action Committee*, Court No. 23-00202, Slip Op. 24-93 (CIT August 15, 2024), ECF No. 63 ("*Remand Results*").  The *Remand Results* cover an appeal of Commerce's final results in the 17th administrative review of the antidumping duty order on *Certain Frozen Warmwater Shrimp From India*, 88 Fed. Reg. 60,431 (Dep't Commerce Sept. 1, 2023) ("*Final Results*"), PR 205, and accompanying Issues and Decision Memorandum ("IDM"), PR 194.

On April 15, 2024, the Court remanded Commerce's conclusion in the *Final Results* that "all of Megaa Moda's home market sales were made for consumption in India."  IDM at 10 (PR 194).  In remanding to Commerce, the Court did *not* find that the particular Megaa Moda sales were *not* for consumption in India.  Rather, the Court observed "that evidence that would definitively resolve" whether the contested Megaa Moda sales were either "for consumption" or "for export" was missing from the record, and that "the question of what Megaa Moda knew or should have known with respect to whether the contested sales were 'for consumption' or 'for

1

export' cannot be concluded." *See Ad Hoc Shrimp Trade Action Comm. v. United States*, No. 23-00202, slip op. 24-93 (Ct. Int'l Trade Aug. 15, 2024) ("*AHSTAC*"), at 30.  In short, the Court determined that "{a}ll in all, considering the matter at bar, the way in which ITA probed whether Megaa Moda knew or should have known whether the contested sales were 'for consumption' in India (or 'for export', for that matter) leaves a record inconclusive as to whether the contested sales are properly considered part of normal value." *AHSTAC*, slip op. at 40.  The court thus remanded "Commerce's calculation of normal value for further proceedings consistent with this opinion." *AHSTAC*, slip op. at 43.

In its comments in opposition to the *Remand Results*, AHSTAC claims that Commerce on remand failed "to properly apply the knowledge test employed by Commerce to determine whether particular sales may be used to determine the {normal value} of the merchandise" and ignored the inquiry required under "the agency's normal practice."  AHSTAC Comments, at 7.  AHSTAC also claims that Commerce failed "to meaningfully engage with record evidence," thus reaching a decision that remains unsupported by substantial evidence.  AHSTAC Comments, at 7.  We address these issues below, and respectfully request that the Court sustain Commerce's *Remand Results* and enter final judgment.

II.     ARGUMENT

Megaa Moda concurs with the comments of Defendant, United States, also filed today, responding to the objections of AHSTAC to the *Remand Results* that (1) Commerce misapplied the knowledge test in continuing to find that the contested sales were for consumption in India; and (2) that the *Remand Results* are unsupported by substantial evidence.  Megaa Moda agrees with Commerce's longstanding practice and determination in the *Remand Results* that evidence on the administrative record did not establish that Megaa Moda knew or should have known at

the time of sale that its contested home market sales of unbranded shrimp may have been destined for export. *Remand Results*, at 3.

    A.    **Standard of Review**

In remand proceedings, the Court will sustain Commerce's determination if it is "in accordance with the remand order," is "supported by substantial evidence and otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp 3d 1349, 1355 (Ct. Int'l Trade 2015) (*citing* 19 U.S.C. § 1516a(b)(1)(B)(i)).

    B.    **Commerce Followed Its Established Practice Order in Applying the Knowledge Test to Megaa Moda's Sales**

In *Allegheny Ludlum Corp. United States*, the Court confirmed that, with respect to 19 U.S.C. §§ 1677a(a) (determination of export price) and 1677b(a) (determination of normal value), "the statutory scheme does not provide explicit criteria for determining whether a sale is for export or is a home market sale." *See* 215 F. Supp. 2d 1322, 1330-31 (Ct. Int'l Trade 2000). The Court thus explained that in identifying whether a sale is a U.S. sale under the provisions of 19 U.S.C. § 1677a(a), Commerce looks to whether the producer knew or should have known, at the time of a sale, whether or not the subject merchandise will be exported. *Id.* With respect to 19 U.S.C. § 1677b(a), the Court indicated that sales should be included within the home market database if the producer "knew or should have known that the merchandise was ... for home consumption based upon the particular facts and circumstances of the case." *Id.* (citations omitted). As such, whether a sale should be included within the U.S. or home market sales databases ultimately is based on the knowledge of the producer and "the particular facts and circumstances of the case." *See* 215 F. Supp. 2d 1322, 1330-31 (Ct. Int'l Trade 2000).

Over the course of decades, Commerce has developed and applied this "knowledge test" for purposes of determining when parties involved in importing and exporting goods are subject

to the antidumping laws and how they should report their sales. Commerce's "standard for the knowledge test is high," and Commerce repeatedly has reiterated that it will not attribute, for example, U.S. sales to a foreign producer absent the producer's *particular* knowledge *at the time of sale* that the sales were destined for the United States. *See, e.g., Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; Final Results of Antidumping Duty Administrative Reviews, Partial Termination of Administrative Reviews, and Revocation in Part of Antidumping Duty Orders*, 60 Fed. Reg. 10,900, 10,951-10,952 (Feb. 28, 1995).

In its comments on the *Remand Results*, AHSTAC claims that Commerce ignored its "normal practice" in determining whether Megaa Moda's contested sales should be considered home market sales, AHSTAC Comments, at 7. But contrary to AHSTC's assertion Commerce very carefully adhered to the same practice that it has developed and used over the course of decades. In *Welded Line Pipe From the Republic of Korea*, for example, Commerce found that:

> HYSCO sells welded line pipe to customers in Korea who may further process the product in a manner which may or may not transform the product into non-subject merchandise prior to export, may resell the pipe to another Korean customer before export, or may simply export the pipe "as is." We found no evidence at verification, nor is there any other record evidence, to demonstrate that HYSCO had control over the merchandise after sale, or other knowledge sufficient to demonstrate that it knew or should have known that the pipe sold to its local domestic sales customers would be exported to specific foreign destinations without any further processing.

80 Fed. Reg. 61,366 (Dep't Commerce Oct. 13, 2015), Issues and Decision Memorandum, at Comment 6. Based on these findings, Commerce concluded in *Welded Line Pipe From the Republic of Korea* that HYSCO's sales to its customers in Korea were appropriately reported as home market sales, *regardless of what their customers did with the merchandise*. Commerce reached a similar decision in *Certain Circular Welded Non-Alloy Steel Pipe from Mexico: Final Results of Antidumping Duty Administrative Review*, 76 Fed. Reg. 36,086 (Dep't Commerce June 21, 2011), where Commerce determined that a respondent's relevant sales to a Mexican customer

4

were properly considered home market sales where the respondent had no knowledge of specific downstream sales to the United States at the time of sale.

Very recently, in *Certain Paper Shopping Bags From Colombia: Final Affirmative Determination of Sales at Less Than Fair Value*, 89 Fed. Reg. 45,843 (Dep't Commerce May 24, 2024) ("*Final Determination*"), the respondent informed Commerce officials at the beginning of verification that it had discovered in preparation for verification a certain change on an invoice that led it to believe that the product on a reported home market sale likely was intended for resale to the United States. *Id.*, Issues and Decision Memorandum, at Comment 1. The respondent confirmed this with its home market customer, who eventually did export the merchandise. *Id.* Nonetheless, Commerce ultimately determined that the sale "was properly reported as a home market sale" and that the totality of the evidence did not support a finding that the respondent had knowledge at the time of sale that the merchandise was intended to be exported. *Id.* In that case, there was no evidence that the respondent had prepared or signed any documentation relevant to the shipping, handling, and packing of subject merchandise that indicated that the merchandise might be exported; there was no evidence that the respondent used any special labeling for the sale that reflected an export destination; and tax information was not dispositive in determining that the respondent knew that at the time of sale that the merchandise would be re-routed for export. *Id.* Thus, even when it appeared that the merchandise actually was subsequently exported, Commerce nonetheless focused on the knowledge of the respondent at the time of sale and determined that the sale in question was properly reported as a home market sale. *Id.*

As all of these cases demonstrate, as part of its analysis of whether the producer knew or should have known that merchandise sold in the home market was for home consumption,

Commerce's longstanding practice also is to examine the degree to which the producer knew or should have known, at the time of the sale, whether or not the merchandise would be exported.[1] In the *Remand Results*, Commerce therefore did not apply the wrong standard or depart from its longstanding practice. In fact, Commerce specifically followed its past practice by examining both the particular facts and circumstances surrounding the sales made by Megaa Moda and whether they indicated that Megaa Moda knew or should have known that the sales at issue were for consumption in the home market *and* whether there was any evidence that the sales were intended for the export market. *See Remand Results*, at 2, 14. Unlike in the *Final Results*, where Commerce determined that "all of Megaa Moda's home market sales were made for consumption in India," IDM at 10 (PR 194), *see also AHSTAC*, slip op. at 30 ("Commerce "implicitly determined that the contested sales were indeed 'for consumption' in India"), Commerce on remand reconsidered the nature of Megaa Moda's sales at issue, in light of the additional information collected, and found that there was "insufficient evidence to indicate that Megaa Moda knew or should have known that these sales were not for consumption in the home market." *Remand Results*, at 14.

For example, Commerce found that while the contested sales were unique among Megaa Moda's home market sales, there was insufficient evidence indicated that the particular aspects of these sales were exclusive qualities of export sales. In fact, Commerce found that the

---

[1] AHSTAC cites *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Therefore From France, et al.*, 60 Fed. Reg. 10,900 (Dep't Commerce Feb. 28, 1995) for the proposition that "sales that are not for home consumption" and that also are not classifiable as U.S. sales should not be classified as home market sales for antidumping purposes. AHSTAC Comments, at 9. The conclusion in *Antifriction Bearings* is both obvious and not relevant to the current case where the record evidence – as the Court acknowledges – does not establish that the relevant sales by Megaa Moda are not for home consumption. *See AHSTAC*, slip op. at 30.

contested sales that Megaa Moda made differed only slightly from its other home market sales, and that nothing on the administrative record indicated that the sales in question only could have been meant for export. *Remand Results*, at 14. In addition, Commerce collected additional tax-related information on remand that illustrated that the unbranded shrimp that Megaa Moda sold was exempt from certain domestic sales taxes, thus confirming Commerce's original *Final Results* conclusion that the absence of such taxes on the contested sales was not evidence of an export sale. *Remand Results*, at 9, 15-16. Commerce also explained that an Indian domestic tax exemption premised on a classification system used for exportation of goods could support a conclusion that the sale of such goods was for consumption in the home market, noting that it is common practice for HTS classifications to be used to classify goods in an accessible and unified way – much as Commerce does in AD/CVD proceedings – and that such classification is not evidence of actual exportation of merchandise. *Remand Results*, at 16. Furthermore, Commerce considered anew whether there was any evidence on the record that established that Megaa Moda's sales in question were further manufactured or repackaged (there was none); and concluded that even assuming that there was, this would not undercut the conclusion that those sales were consumed in the home market. *Remand Results*, at 16.

　　　　When necessary information is not on the record, the statute requires Commerce to use the facts otherwise available in reaching the applicable determination. *See* 19 U.S.C. § 1677e. Here, on remand, and even after collecting additional information, the record information does not definitively establish whether the contested sales shipped by Megaa Moda to its home market customer were for export or for consumption in India. But Commerce on remand no longer expressly determined that "all of Megaa Moda's home market sales were made for consumption in India." Rather, consistent with the Court's opinion, Commerce reopened the administrative

record for additional factfinding and reconsidered the application of the knowledge test in light of both the new and existing record evidence. *See Remand Results*, at 8. After evaluating the totality of the evidence on the record, Commerce followed the principles of its longstanding practice and concluded that Megaa Moda's contested sales were properly part of normal value and that Megaa Moda had neither actual nor constructive knowledge that its contested sales were destined for export. *See Remand Results*, at 8, 14. The Court should sustain this decision.

## III. CONCLUSION

There is nothing in Megaa Moda's sales documentation with its India customers or anything else on the administrative record that establishes that Megaa Moda knew or should have known that any of the merchandise it sold to India customers was for re-export rather than for the India home market or for further processing into non-subject merchandise. AHSTAC has presented no evidence establishing that Megaa Moda actually was aware of the downstream use of its shrimp merchandise other than for Indian domestic consumption. There is no evidence on the record showing that Megaa Moda's contested sales were exported from India or that, even if there were, that Megaa Moda knew at the time of sale that such shipments would ultimately be exported. Given this lack of evidence, Commerce reasonably concluded in the *Remand Results* based on the particular facts and circumstances of this case that there was no basis to find that Megaa Moda knew or should have known that its sales were meant for export. Commerce thus reasonably determined on remand that it was appropriate to treat Megaa Moda's sales as home market sales in the calculation of Megaa Moda's normal values.

The Court of Appeals has emphasized that Commerce is the master" of the antidumping law, and that "{f}actual determinations supporting anti-dumping margins are best left to the agency's expertise." *See F.lli De Cecco di Filippo Fara S. Martino S.p.A.*, 216 F.3d 1027, 1032

(Fed. Cir. 2000); *Micron Tech., Inc. United States*, 117 F.3d 1386, 1394 (Fed. Cir. 1997).  In this case, Commerce's *Remand Results* are reasonable, are defended with evidence from the administrative record, and complied with the Court's remand order.  For the foregoing reasons, we respectfully request that the Court sustain Commerce's *Remand Results* and enter final judgment for the United States.

                                       Respectfully submitted,

                                       /s/ Robert G. Gosselink
Robert G. Gosselink
Aqmar Rahman

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C.  20003
(202) 223-3760

Counsel to Megaa Moda Pvt. Ltd.

Dated:  March 7, 2025

9

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **AD HOC SHRIMP TRADE ACTION COMMITTEE,** | |
| Plaintiff, | |
| and | |
| **AMERICAN SHRIMP PROCESSORS ASSOCIATION,** | |
| Plaintiff-Intervenor, | |
| and | |
| **MEGAA MODA PRIVATE LIMITED** | Thomas J. Aquilino, Judge |
| Consolidated Plaintiff, | |
| v. | Consol. Court No. 23-00202 |
| **UNITED STATES** | |
| Defendant, | |
| and | |
| **MEGAA MODA PRIVATE LIMITED,** | |
| Defendant-Intervenor, | |
| and | |
| **AMERICAN SHRIMP PROCESSORS ASSOCIATION, et al.,** | |
| Defendant-Intervenors. | |

## CERTIFICATION OF COMPLIANCE

I, Robert G. Gosselink, certify that the accompanying Responsive Comments in Support of the Remand Redetermination, dated March 7, 2025, contain 2,677 words, excluding the table of contents, table of authorities, and counsel's signature block, and thus comply with the 10,000 word-count limitation described in part 2(B)(1)(b) of the Court's Chambers Procedures.

                                                                Respectfully submitted,

                                                                /s/ Robert G. Gosselink
                                                                Robert G. Gosselink
                                                                Trade Pacific PLLC
                                                                700 Pennsylvania Avenue, SE, Suite 500
                                                                Washington, D.C.  20003
                                                                Tel.: (202) 223-3760

Dated: March 7, 2025                           Counsel to Megaa Moda Private Limited