**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE THOMAS J. AQUILINO, JR., JUDGE

| | |
|---|---|
| AD HOC SHRIMP TRADE ACTION COMMITTEE, | ) ) ) |
| Plaintiff, | ) ) |
| and | ) ) |
| AMERICAN SHRIMP PROCESSORS ASSOCIATION, | ) ) ) |
| Plaintiff-Intervenor, | ) ) |
| and | ) ) |
| MEGAA MODA PRIVATED LIMITED, | ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| MEGAA MODA PRIVATED LIMITED, | ) ) |
| Defendant-Intervenor, | ) ) |
| and | ) ) |
| AMERICAN SHRIMP PROCESSORS ASSOCIATION, et al., | ) ) ) |
| Defendant-Intervenors. | ) ) |

Consol. Court No. 23-00202
PUBLIC VERSION
BPI IN BRACKETS ON PAGES
3, 6, 9, 13-20

**DEFENDANT'S COMMENTS SUPPORTING REMAND REDETERMINATION**

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. MCCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:

KARA M. WESTERCAMP

RUSLAN KLAFEHN
Attorney
Office of the Chief Counsel
For Trade Enforcement & Compliance
U.S. Department of Commerce

Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 305-7571
Email: Kara.M.Westercamp@usdoj.gov

March 7, 2025

*Attorneys for Defendant*

## TABLE OF CONTENTS

**PAGE**

BACKGROUND .................................................................................................... 2

    I.     The Administration Determination Under Review ................................. 2

    II.    Remand Order ........................................................................................ 4

    III.   Commerce's Remand Redetermination ................................................ 5

ARGUMENT ....................................................................................................... 7

    I.     Standard Of Review .............................................................................. 7

    II.    Normal Value And The Knowledge Test ............................................. 7

    III.   Commerce Complied With The Remand Order ..................................... 8

    IV.   Substantial Evidence Supports Commerce's Determination That Certain Of Megaa Moda's Sales Were Properly Reported As Home Market Sales ................. 9

        A.    AHSTAC Misapplies The Knowledge Test ................................. 9

        B.    Commerce Properly Considered All Record Evidence ........................... 14

        C.    [ ███████████████████████████████ ] Is Insufficient To Impute Knowledge To Megaa Moda That The Sales In Question Were Meant For Export ........................................................... 17

        D.    The Inapplicability Of [ ███████████████ ] To Megaa Moda's Sale Of Unbranded Shrimp, And The Record Evidence As A Whole Demonstrate That Megaa Moda Did Not Have Actual Nor Constructive Knowledge That Its Sales To [ █████ ] Were Meant For Export .................................................................................. 18

CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Ad Hoc Shrimp Trade Action Committee v. United States*,
  Consol. Ct. No. 23-00202, Slip Op. 24-93,
  2024 WL 3876483 (Ct. Int'l Trade Aug. 15, 2024)............................................................ passim

*Allegheny Ludlum Corp. v. United States*,
  215 F. Supp. 2d 1322 (Ct. Int'l Trade 2000) .................................................................... passim

*Corus Staal BV v. United States*,
  502 F.3d 1370 (Fed. Cir. 2007).......................................................................................... 9, 10

*Gov't of Argentina v. United States*,
  542 F. Supp. 3d 1380 (Ct. Int'l Trade 2021) .................................................................... 13, 15

*INA Walzlager Schaeffler KG v. United States*,
  957 F. Supp. 251 (Ct. Int'l Trade 1997) ........................................................................... passim

*Itochu Bldg. Prods. v. United States*,
  733 F.3d 1140 (Fed. Cir. 2013)................................................................................................ 10

*MacLean-Fogg Co. v. United States*,
  100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ............................................................................ 7

*NSK Ltd. v. Koyo Seiko Co.*,
  190 F.3d 1321 (Fed. Cir. 1999)................................................................................................ 19

*Paul Muller Industrie GmbH & Co. v. United States*,
  502 F. Supp. 2d 1271 (Ct. Int'l Trade 2007) .......................................................................... 10

*QVD Food Co., Ltd. v. United States*,
  658 F.3d 1318 (Fed. Cir. 2011)................................................................................................ 14

*Rhone Poulenc, Inc. v. United States*,
  899 F.2d 1185 (Fed. Cir. 1990)................................................................................................ 10

*Stupp Corp. v. United States*,
  359 F. Supp. 3d 1293 (Ct. Int'l Trade 2019) .......................................................................... 12

*Z.A. Sea Foods Priv. Ltd. v. United States*,
  606 F. Supp. 3d 1335 (Ct. Int'l Trade 2022) .......................................................................... 12

ii

**STATUTES**

19 U.S.C. § 1677b(a)(1)(B)(i) ................................................................................ 7, 11

**REGULATIONS**

19 C.F.R. § 351.309(c)(2) ......................................................................................... 9

**ADMINISTRTIVE DETERMINATIONS**

*Synthetic Indigo from the People's Republic of China*,
64 Fed. Reg. 69,727 (Dep't of Commerce Dec. 14, 1999) ...................................... 12

*Certain Circular Welded Non-Alloy Steel Pipe from Mexico*,
76 Fed. Reg. 36,086 (Dep't of Commerce June 21, 2011) ...................................... 12

*Certain Frozen Warmwater Shrimp From India*,
88 Fed. Reg. 13,430 (Dep't of Commerce Mar. 3, 2023) ........................................ 3

*Certain Frozen Warmwater Shrimp From India*,
88 Fed. Reg. 60,431 (Dep't of Commerce Sept. 1, 2023) ....................................... 2

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE THOMAS J. AQUILINO, JR., JUDGE

| | |
|---|---|
| AD HOC SHRIMP TRADE ACTION COMMITTEE, | ) |
| Plaintiff, | ) |
| and | ) |
| AMERICAN SHRIMP PROCESSORS ASSOCIATION, | ) |
| Plaintiff-Intervenor, | ) |
| and | ) |
| MEGAA MODA PRIVATED LIMITED, | ) |
| Plaintiff, | ) |
| v. | ) Consol. Court No. 23-00202 |
| | ) PUBLIC VERSION BPI |
| UNITED STATES, | ) REMOVED ON PAGES 3, 6, 9, |
| Defendant, | ) 13-20 |
| and | ) |
| MEGAA MODA PRIVATED LIMITED, | ) |
| Defendant-Intervenor, | ) |
| and | ) |
| AMERICAN SHRIMP PROCESSORS ASSOCIATION, et al., | ) |
| Defendant-Intervenors. | ) |

**DEFENDANT'S COMMENTS SUPPORTING REMAND REDETERMINATION**

Defendant, the United States, respectfully submits these comments responding to the joint comments of plaintiff Ad Hoc Shrimp Trade Action Committee (AHSTAC), and plaintiff-intervenor, American Shrimp Processors Association (ASPA), AHSTAC Cmnts., ECF No. 68, concerning the Department of Commerce's remand redetermination filed in accordance with this Court's decision and remand order in *Ad Hoc Shrimp Trade Action Committee v. United States*, Consol. Ct. No. 23-00202, Slip Op. 24-93, 2024 WL 3876483 (Ct. Int'l Trade Aug. 15, 2024) (*AHSTAC*).  *See* Final Results of Redetermination Pursuant to Remand Order (Nov. 25, 2024), ECF No. 63 (Remand Results).  The Court should sustain Commerce's remand redetermination because it complies with the remand opinion and is supported by substantial evidence and otherwise in accordance with law.

## BACKGROUND

### I.    The Administration Determination Under Review

The administrative determination under review is the seventeenth administrative review of the antidumping duty order covering certain frozen warmwater shrimp (shrimp) from India. *See Certain Frozen Warmwater Shrimp From India*, 88 Fed. Reg. 60,431 (Dep't of Commerce Sept. 1, 2023) (final results) (P.R. 205),[1] and the accompanying Issues and Decision Memorandum (Dep't of Commerce Aug. 25, 2023) (IDM) (P.R. 202).  The period of review is February 1, 2021, through January 31, 2022.

In the underlying review, Commerce initially selected Devi Fisheries Group (Devi) and Nekkanti Sea Foods Limited (Nekkanti) as the mandatory respondents.  Respondent Selection

---

[1]  For ease of reference, the record citations with P.R./C.R. designate citation to the administrative record index, *see* Admin. Rec. Index (Nov. 8, 2023), ECF No. 33, and record citations with P.R.R./C.R.R. designate citation to the remand record index.  *See* Remand Rec. Index (Dec. 9, 2024), ECF No. 65.

Mem. (P.R. 34, C.R. 4).  But after the request for review of these exporters was timely

withdrawn, including Devi and Nekkanti, Commerce then selected Megaa Moda and NK Marine

Exports LLP as the mandatory respondents.  *See* Second Respondent Selection Mem. (P.R. 81,

C.R. 32).

In Megaa Moda's timely Section A questionnaire response, Megaa Moda reported that it

had a viable home market and supported this response with a quantity and value chart showing

that the volume of sales in the home market was [ ▮▮▮▮▮ ] of the volume of sales in the

U.S. market.  Megaa Moda Section A Questionnaire Resp. at Exhibit A.1 (P.R. 115, C.R. 36).  In

its Section B and C responses, Megaa Moda provided Commerce information covering

comparison market sales and U.S. sales.  Megaa Moda Section B&C Questionnaire Resp. (P.R.

118-127, C.R. 52-58).  AHSTAC thereafter submitted comments alleging that [ ▮▮▮ ] of Megaa

Moda's home market sales (accounting for [ ▮▮▮ ] kilograms of its total home market sales

quantity of [ ▮▮▮ ] kilograms) were intended for the export market because the sales were

made to [ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ] and were

aberrational compared to Megaa Moda's other home market sales.  AHSTAC Comments on

Megaa Moda's Resp. to Sections A-C of the Questionnaire (P.R. 134, C.R. 73).

On March 3, 2023, Commerce published the preliminary results and preliminarily

determined that Megaa Moda had made sales of shrimp at prices below normal value and

calculated a preliminary weighted-average dumping margin of 7.92 percent for Megaa Moda.

*See Certain Frozen Warmwater Shrimp From India*, 88 Fed. Reg. 13,430 (Dep't of Commerce

Mar. 3, 2023) (preliminary results) (P.R. 168), and the accompanying Preliminary Decision

Memorandum (Dep't of Commerce Apr. 29, 2022) (PDM) (P.R. 159).  Commerce relied on all

of Megaa Moda's reported home market sales in its preliminary calculation of normal value.  *See*

PDM at 14.  Commerce also preliminarily denied two interest income offsets for Megaa Moda. *Id.* at 13.

In the final results, applying the "knowledge test," Commerce continued to rely on all of Megaa Moda's reported home market sales to calculate normal value.  *See* IDM.  In doing so, Commerce disagreed with AHSTAC that the totality of the evidence suggested that the sales in question were meant for export and found that Megaa Moda did not have actual or constructive knowledge that certain sales were meant for export.  *See id.* at 8-9; *see also* Proprietary Memorandum for the Final Results (Aug. 25, 2023) (P.R. 204, C.R. 130).

## II.    **Remand Order**

On August 15, 2024, the Court remanded Commerce's determination that Megaa Moda did not have either actual or constructive knowledge that certain of its home market sales were destined for export based on an inconclusive record that did not permit Commerce to "articulate a satisfactory explanation for its action."  *AHSTAC*, 2024 WL 3876483, at *15.  For example, the Court explained that "AHSTAC's recounting, taken as a whole, of the documentary record, provides sufficient circumstantial indication that it would be unreasonable to conclude, without more, that the contested sales were 'for consumption' in India."  *Id.* at *11.  The Court held, "{o}n that basis, it is likewise questionable whether Megaa Moda's position that it neither knew nor should have known that the contested sales were or might have been destined for export was reasonable, notwithstanding its normal accounting of the contested sales in its books and records."  *Id.*

In summary, the Court held that the *way* in which Commerce "probed whether Megaa Moda knew or should have known whether the contested sales were 'for consumption' in India (or 'for export,' for that matter) leaves a record inconclusive as to whether the contested sales are

properly considered part of normal value," and listed, among other things, (1) the "unusual nature of the contested sales" compared to Megaa Moda's other home market sales, (2) reliance on the destination location in India, and (3) the unbranded products being exempt from certain [███████████████████]. *Id.* at *14.

However, the Court sustained Commerce's determination to deny Megaa Moda a requested interest subvention program offset and an "interest on FD with FBL" interest income offset. *See id.* at *15-18. As for the interest subvention program, the Court held that Megaa Moda had not demonstrated record evidence supporting such an offset. *Id.* at *17. Regarding the claimed "interest with FD with FBL" interest income offset, the Court held that "{i}t is also not obvious what the tenure of that deposit is (*i.e.*, even if 'FD' is construed as a fixed deposit, it is not obvious that such an account was a 'ready' source of working capital)," and that Megaa Moda had not demonstrated the short-term nature of the loan. *Id.* at *18.

Still, the Court recognized that Commerce "retains the authority, of course, to revisit Megaa Moda's short-term interest claim of 'FD with FBL' on remand, should it choose to do so." *Id.* at *19. The Court also ordered Commerce "to recalculate the rate assigned to companies not selected for individual review if it were required to calculate a new rate for Megaa Moda." *Id.*

**III.    <u>Commerce's Remand Redetermination</u>**

On remand, to comply with the Court's remand order, Commerce addressed gaps in the record regarding Megaa Moda's home market sales. *See generally* Remand Results. As a result, and in accordance with the Court's remand order, Commerce reopened the administrative record for additional fact finding and issued a supplemental questionnaire to Megaa Moda requesting the relevant laws, regulations, or other legal framework demonstrating that its domestic sales of

unbranded shrimp in India during the period of review did not incur [███████████
████████████████████████ ].  Supplemental Questionnaire (Sept. 13, 2024) (P.R.R. 1).

Megaa Moda timely responded to Commerce's supplemental questionnaire.  Megaa Moda

Supplemental Questionnaire Response (P.R.R. 2).

After evaluating Megaa Moda's supplemental response and reconsidering the application

of the knowledge test in light of both new and existing record evidence, Commerce continued to

find that Megaa Moda had neither actual nor constructive knowledge that its sales to [████ ]

were destined for export to the United States.  Remand Results at 10, 18.  Commerce explained

that although no party argued that "Megaa Moda had *actual knowledge* that its sales to

[████████ ] were meant for export to the United States," the question was whether "Megaa

Moda had constructive knowledge that these sales were meant for export."  *Id.* at 12-13.  In other

words, whether Megaa Moda "knew or should have known that the sales were not for

consumption in the home market."  *Id.* at 14.

Commerce considered the argument that "the volume and nature of the [████████████
████████████████ ] indicate that they were not for consumption in India" and determined

that "there is insufficient evidence indicating that the [████████████████████ ] of these

sales are exclusive qualities of export sales."  *Id.* at 14-15.  Moreover, Commerce concluded that

Megaa Moda's sales to [████████ ] "differed only slightly from its other home market sales, and

nothing on the record indicates that these sales could only have been meant for export."  *Id.* at

15.

Commerce also considered the new evidence on remand, which "confirms that unbranded

shrimp sold domestically [████████████████████████ ], is neutral, but not affirmative,

evidence that the sales to [████████ ] were for home market consumption."  *Id.*  Indeed,

Commerce explained that "even if {it} agree{s} that the lack of tax does not dispositively indicate that the sales were for home market consumption, reviewed from this same angle, the product characteristics of the sales to [ ███████ ]," "are also neutral in their capacity to substantiate a finding that the sales to [ ███████ ] were not for consumption in the home market." *Id.* at 16.  Moreover, Commerce explained that record evidence "indicates that the [ ██████████████████████████████████████ ] and absent some affirmative evidence, Commerce has no basis to determine that Megaa Moda knew or should have known these sales were destined for anything other than for consumption in the home market." *Id.*

Finally, Commerce exercised its discretion and explained that it declined to reopen the record to revisit Megaa Moda's short-term interest claim of "FD with FBL." *Id.* at 18-19. Consequently, because Commerce made no changes to its calculation regarding the treatment of Megaa Moda's home market sales, it made no changes to the margins calculated in the final results. *Id.* at 19.

## ARGUMENT

### I.   Standard Of Review

In remand proceedings, the Court will sustain Commerce's determination if it is "in accordance with the remand order," and is "supported by substantial evidence and otherwise in accordance with law." *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

### II.   Normal Value And The Knowledge Test

Commerce will typically find normal value to be the price at which the subject merchandise is sold for consumption in the exporting country.  19 U.S.C. § 1677b(a)(1)(B)(i).  A

respondent should report a sale in the home market sales database if the respondent had actual or constructive knowledge that a sale was for home consumption. *See Allegheny Ludlum Corp. v. United States*, 215 F. Supp. 2d 1322, 1330-31 (Ct. Int'l Trade 2000). Conversely, a sale should be reported as an export sale if the respondent had actual or constructive knowledge that the sale was destined for export. *Id.* at 1331.

However, when the petitioner argues that certain home market sales were not consumed in the home market but rather destined for consumption in the United States, Commerce is required "to diligently inquire into" such allegations. *Id.* at 1332. In doing so, Commerce applies the "knowledge test" which states that "the appropriate burden of proof for determining whether to exclude sales from the home market database in calculating {normal value} is whether {the respondent} knew or should have known that the merchandise was not for home consumption based on the particular facts and circumstances surrounding the sales." *INA Walzlager Schaeffler KG v. United States*, 957 F. Supp. 251, 263-64 (Ct. Int'l Trade 1997). "The knowledge test does not require Commerce to prove that the producer had actual knowledge, as such a requirement would 'eviscerate the acknowledged standard.'" *Hyundai Elecs. Indus. Co., Ltd. v. United States*, 342 F. Supp. 2d 1141, 1146 (Ct. Int'l Trade 2004) (quoting *Allegheny Ludlum*, 215 F. Supp. 2d at 1332).

## III.  <u>Commerce Complied With The Remand Order</u>

In the remand order, the Court held that Commerce did not "articulate a satisfactory explanation for its action" that Megaa Moda did not have either actual or constructive knowledge that certain of its home market sales were destined for export based on an inconclusive record. *AHSTAC*, 2024 WL 3876483, at *15.

8

Consistent with the Court's opinion, on remand, Commerce "reopened the administrative record for additional fact finding and reconsidered the application of the knowledge test in light of both the new and existing record evidence." Remand Results at 8. Commerce continued to find "that Megaa Moda had neither actual nor constructive knowledge that its sales to [ ███████ ] were destined for export to the United States. *Id.* at 10. Commerce considered that the sales of unbranded shrimp were "exempt under Indian law from [ ████████████ ██ ]" and the sales were "to an Indian customer at an Indian location, brokered by an Indian purchasing agent." *Id.* Thus, Commerce continued to treat the sales as home market sales in the calculation of normal value. *Id.* at 18. Therefore, the Court should hold that Commerce has complied with the Court's remand order. *See AHSTAC*, 2024 WL 3876483, at *19.

## IV. Substantial Evidence Supports Commerce's Determination That Certain Of Megaa Moda's Sales Were Properly Reported As Home Market Sales

Commerce's remand redetermination, considering the new documents added to the record regarding the relevant laws, regulations, or other legal framework that demonstrate that Megaa Moda's domestic sales of unbranded shrimp in India during the period of review did not incur certain [ █████████ ] and were properly considered home market sales, is supported by substantial evidence and in accordance with law. Remand Results at 8-18. AHSTAC's arguments to the contrary are meritless.

### A. AHSTAC Misapplies The Knowledge Test

First, AHSTAC contends that Commerce incorrectly "misstates and misapplies the knowledge test" because Commerce analyzed whether the sales in question were meant for export, and instead Commerce should have analyzed whether the sales in question were not for home consumption and was required to demonstrate that the sales are for home market consumption. AHSTAC Cmnts. at 9-12.

By failing to raise this argument before Commerce, AHSTAC has failed to exhaust its administrative remedies and is precluded from now making this argument. *See* 19 C.F.R. § 351.309(c)(2) (stating that a party's case brief to Commerce "must present all arguments that continue in the submitter's view to be relevant to {Commerce's} . . . final results."); *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007) (recognizing that the exhaustion requirement protects administrative agency authority and promotes judicial efficiency). Indeed, the Federal Circuit has held that a party's obligation to exhaust its administrative remedies in proceedings before Commerce applies both to broad issues and arguments related to those issues. *See Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990) (disagreeing with contention that courts can consider new arguments so long as the general issue was raised at the agency level); *Paul Muller Industrie GmbH & Co. v. United States,* 502 F. Supp. 2d 1271, 1275 (Ct. Int'l Trade 2007) (holding that when a party raises a general issue, but fails to incorporate a specific argument among other arguments that relate to the same issue, it fails to exhaust administrative remedies with respect to that argument). Exceptions to the exhaustion requirement are limited,[2] as such the Court "generally takes a 'strict view' of the requirement that parties exhaust their administrative remedies before the Department of Commerce in trade cases." *Corus Staal BV*, 502 F.3d at 1379.

Even if the Court determines that AHSTAC properly raises this argument, the argument fails because, as established above, the proper inquiry as to whether Commerce should exclude Megaa Moda's reported home market sales from the home market database is to determine

---

[2] None of the exceptions to the exhaustion requirement are applicable here, which include futility, pure question of law, lack of timely access to the confidential record, no administrative procedure to exhaust, or new interpretation from an intervening judicial decision. *See Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1146 (Fed. Cir. 2013).

whether Megaa Moda had actual or constructive knowledge that its sales were meant for export. *See Allegheny Ludlum*, 215 F. Supp. 2d at 1330-31; *Hyundai Elecs. Indus.*, 342 F. Supp. 2d at 1146. Indeed, AHSTAC's interpretation of the "knowledge test" is inconsistent with the Court's holding in *INA Walzlager*,[3] wherein the Court instructed that "the appropriate burden of proof for determining whether to exclude sales from the home market database in calculating {normal value} is whether {the respondent} knew or should have known *that the merchandise was not for home consumption* based on the particular facts and circumstances surrounding the sales." 957 F. Supp. at 263-64 (emphasis added). Thus, Commerce has *not* misapplied the knowledge test by "conflating knowledge as to whether goods sold were for export with the statutory standard of knowledge as to whether goods sold were for consumption in the home market." AHSTAC Cmnts. at 10. Instead, Commerce correctly interpreted *INA Walzlager,* and Commerce's determination that the [ █████████████ ] were properly reported as home market sales because Megaa Moda had no actual nor constructive knowledge that its sales were meant for export is supported by substantial evidence. *See* Remand Results at 8-18.

AHSTAC's confusion appears to come from its own inversion of the knowledge test. *See Allegheny Ludlum*, 215 F. Supp. 2d at 1332 (requiring Commerce to resolve "whether respondents were able to distinguish home market sales destined for consumption in the home market from home market sales destined for consumption in the U.S. market."). Stated simply, if the test is to determine knowledge as to whether sales were not for consumption in the home

---

[3] AHSTAC makes a passing argument that Commerce is required to identify evidence showing that Megaa Moda knew or should have known that sales "*were for consumption* in the Indian market." AHSTAC Cmnts. at 17 (emphasis added). This argument conflates the Tariff Act's definition of a home market sale with the knowledge test, which again asks whether a respondent knew or should have known that sales were not meant for home market consumption. *See* 19 U.S.C. § 1677b(a)(1)(B)(i) ("for consumption in the exporting country"); *cf. INA Walzlager*, 957 F. Supp. at 263-64 ("was not for home consumption").

market, that is equivalent to testing to determine knowledge as to whether the sales were meant for export.[4]

Second, AHSTAC's misunderstanding of the knowledge test colors its opposition comments as it attacks Commerce's reliance on various administrative decisions as irrelevant. *See* AHSTAC Cmnts. at 9-11.  The administrative decisions that Commerce relies on are relevant for establishing what type of evidence might impute knowledge to Megaa Moda that its [ ▉▉▉▉▉▉ ] were meant for export or for further explaining the operation of the knowledge test.  *See* Remand Results at 8.  For example, "{i}n prior cases, Commerce has considered whether the relevant party prepared or signed any certificates, shipping documents, contracts, or other such documents stating that the merchandise was destined for an export market."  *Id.* (citing *Synthetic Indigo from the People's Republic of China*, 64 Fed. Reg. 69,727 (Dep't of Commerce Dec. 14, 1999) (prelim. LTFV determ.)).  Commerce will examine this "documentary or physical evidence regarding the destination of the merchandise because this type of evidence is more probative, reliable, and verifiable than statements or declarations."  *Id.* (citing *Certain Circular Welded Non-Alloy Steel Pipe from Mexico*, 76 Fed. Reg. 36,086 (Dep't of Commerce June 21, 2011) (final results)).  After all, Commerce must support its reasoning for including Megaa Moda's home market sales to [ ▉▉▉▉ ] with more than just cursory analysis of the Tariff Act and bare citations to case law; the agency's careful citation of these administrative decisions accomplish exactly that.  *Cf. Z.A. Sea Foods Priv. Ltd. v. United States*, 606 F. Supp. 3d 1335, 1343 (Ct. Int'l Trade 2022) ("In essence, Domestic Shrimp's argument

---

[4]  As maintained by Commerce throughout the administrative proceeding and litigation, some subject merchandise could be exported and still consumed in the home market for purposes of calculating normal value if the customer transformed the merchandise into non-subject merchandise before exportation.  Remand Results at 16-17.

and briefing consist of no more than repeated assertions that the statute should be interpreted and applied in a certain way, without identifying the relevant authorities supporting those bare assertions.").

Indeed, as Commerce explained in the remand results, this Court has held that constructive knowledge "implies that the information regarding knowledge must be derived from extrinsic sources." Remand Results at 13 (citing *Stupp Corp. v. United States*, 359 F. Supp. 3d 1293, 1310 (Ct. Int'l Trade 2019)); *see also Allegheny Ludlum*, 251 F. Supp. 2d at 1336 (finding the knowledge test was satisfied when an employee had discussed with the customer the export destination of subject merchandise). On this basis, Commerce evaluated the record evidence, including evidence regarding [⬛⬛⬛⬛⬛⬛], and found that the record supported a finding that Megaa Moda did not have constructive knowledge that its sales to [⬛⬛⬛] were meant for export. *See* Remand Results at 17-18.

Still, AHSTAC argues that Commerce has instituted a requirement that "there be 'affirmative evidence,' 'such as the commercial invoice listing a final destination other than India,' to show that the respondent knew what the final destination was before Commerce will remove such sales from the universe of home market sales for calculating {normal value}." AHSTAC Cmnts. at 11. AHSTAC, without support, argues that this has not been Commerce's explanation of the knowledge test in other proceedings. *Id.* As Commerce explains in the remand results, "there is insufficient evidence to indicate that Megaa Moda knew or should have known that these sales were not for consumption in the home market" based on the fact that Megaa Moda made sales of unbranded shrimp, which are exempt from [⬛⬛⬛⬛⬛⬛ ⬛], to an Indian customer at an Indian location, brokered by an Indian purchasing agent, and

the product characteristics are not inherently characteristics of export. *See* Remand Results at 10, 15.

Indeed, the evidence that AHSTAC argues is indicative of constructive knowledge can be interpreted to stand for the opposite position, especially considering record information submitted after Commerce reopened the record on remand demonstrates that [ ███████ ████████████████████████████████████████████████████ ]. Megaa Moda Supplemental Questionnaire Response at 1, Exhibit S3-1; *see also Gov't of Argentina v. United States*, 542 F. Supp. 3d 1380, 1395 (Ct. Int'l Trade 2021) (holding that resolving mere disagreement with Commerce's weighing of the evidence is not the function of the Court). Thus, Commerce concluded that because there is no "affirmative" evidence, *i.e.*, evidence demonstrating conclusively that Megaa Moda should have known its sales to [ ██████ ] were meant for export, then Commerce could reasonably interpret the evidence before it as supporting a finding that Megaa Moda neither had actual nor constructive knowledge. *See* Remand Results at 8-18; *see also Hyundai Elecs. Indus.*, 342 F. Supp. 2d at 1146. AHSTAC's failure to build an adequate record to support its position to the contrary should not detract from Commerce's otherwise reasonable conclusion, which is supported by substantial evidence. *See QVD Food Co., Ltd. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011) (holding that parties, not Commerce, have the burden of building the record).

**B.    Commerce Properly Considered All Record Evidence**

First, AHSTAC contends that Commerce failed to "meaningfully engage with record evidence," and ignored the Court's analysis of record evidence. AHSTAC's Cmnts. at 7, 12-19. AHSTAC cites facts that are, at best neutral, and now faults Commerce for not conclusively proving that the sales in question were for home market consumption (again failing to understand

the knowledge test).  *See id.*  As a general matter, Commerce disagreed with AHSTAC's analysis

of this evidence and determined a different result.  *See* Remand Results at 15-16 ("even if we

agree with ASPA that the lack of tax does not dispositively indicate that the sales were for home

market consumption, reviewed from this same angle, the product characteristics of the sales to [

████████ ] described above are also neutral in their capacity to substantiate a finding that the

sales to [ ████████ ] were not for consumption in the home market.").

Commerce's analysis does not "flout" the Court's analysis of the record, as AHSTAC

claims.  AHSTAC Cmnts. at 13.  The Court recognized that it cannot reweigh the evidence,

which is why the Court qualified its analysis of the record and remanded the issue.  *See*

*AHSTAC*, 2024 WL 3876483, at *15.  Instead, Commerce complied with the remand order by re-

examining the record information and engaging in additional factfinding to address the Court's

holding that the record was "inconclusive as to whether the contested sales are properly

considered part of normal value."  *Id.* at *14.  AHSTAC's mere disagreement with Commerce's

weighing of the record evidence is not a basis to overturn Commerce's determination.  *See Gov't*

*of Argentina*, 542 F. Supp. 3d at 1395.

Second, AHSTAC continues to assert that the [ ████████████████ ]

characteristics of Megaa Moda's sales to [ ████████ ] were [ ██████████████ ] home

market sales.  AHSTAC Cmnts. at 13.  Although these characteristics are unique among Megaa

Moda's home market sales, as Commerce explained in the remand results, AHSTAC has not

provided sufficient evidence that these characteristics are exclusive, or even indicative, of export

sales.  *See* Remand Results at 15.  In other words, even if the sales to [ ████████ ] differed from

Megaa Moda's other home market sales, the knowledge test requires evidence that these sales

were meant for export.  *INA Walzlager*, 957 F. Supp. at 263-64.

Moreover, the type of evidence that Commerce has considered in its past practice has been to examine packaging and labeling, unique features, brands, or specifications, indicating that the merchandise *was meant for export*. *See* Remand Results at 13. Although AHSTAC correctly points out that there are differences between the sales to [          ] and Megaa Moda's other home market sales, AHSTAC concludes without support that the differences require Commerce to impute knowledge onto Megaa Moda that the [          ] sales were meant for export. *See e.g.*, AHSTAC Cmnts. at 13 ("Megaa Moda did not sell [          ] to any of the customers Megaa Moda knew would consume the shrimp in India; it sold those types of shrimp to only [          ] for export."). Indeed, AHSTAC's argument essentially assumes that any differences in Megaa Moda's sales are automatically sufficient to assume a sale was meant for export and places the burden on Commerce to prove otherwise. That is the exact type of speculation this Court does not accept. *See AHSTAC*, 2024 WL 3876483, at *13 n.24 ("It is well-settled that mere speculation does not amount to substantial evidence." (citation omitted)).

Relatedly, AHSTAC continues this argument with respect to [          ], as well. AHSTAC Cmnts. at 14. Again, AHSTAC does not attempt to argue why *the* [          ] would indicate that these sales must have been for export. As stated earlier, Commerce agrees that the [          ] was unique, but without more, Commerce cannot conclude that these sales must have been meant for export simply because they were of an "exceptionally unique volume."[5] *See id.*; Remand Results at 14-15.

---

[5] To underscore the speculative nature of AHSTAC's argument, the volume of sales to [          ] may be exceptionally unique in the limited vacuum of Megaa Moda's other home market sales, but it is not unusual for a company to have a large customer to which it sells much of its product. *See* Proprietary Memorandum for the Final Results at 4 ("A [          ] may be quite large relative to a company of Megaa Moda's size.").

16

Third, AHSTAC argues that the [███████████████████████████████ ████████████████████████ ] of shrimp indicates that these sales were meant for export. AHSTAC Cmnts. at 14-15. But AHSTAC's arguments appear to be inconsistent with its conclusion. For example, AHSTAC argues that [████████████████ ] indicates that shrimp were not ready for consumption without repackaging. *Id.* However, Megaa Moda reported that it [██████ ], which according to AHSTAC indicates that sales were meant for consumption, shrimp sold in both [████████████████████████████████████████ ]. Megaa Moda Section A Questionnaire Resp. (P.R. 99, C.R. 39). The conclusion then is that [██████████ ] does not indicate that shrimp were meant for export. Instead, as Commerce explained in the remand results, [███████████ ] is not a meaningful indicator that the sales in question were meant for export. *See* Remand Results at 9.

Moreover, Commerce also explained why it found "the [██████████ ] nature of the sales to [███████ ]" not to be determinative in imputing knowledge to Megaa Moda. *Id.* at 16. For example, even if [██████████ ] shrimp would need to be further processed before consumption, it does not follow, as AHSTAC contends, that sales of [██████████ ] shrimp must be destined for export. *See id.* Indeed, this Court has held that "{m}erchandise sold in the home market, even if ultimately destined for export, is 'consumed' in the home market if it is used there to produce non-subject merchandise prior to exportation." *Allegheny Ludlum*, 215 F. Supp. 2d at 1331. Still, what matters is whether Megaa Moda knew or should have known that the sales in question were meant for export. In other words, as Commerce explained in the remand results, "AHSTAC and ASPA only offer comparisons between the [██████████ ] sales and Megaa Moda's other {period of review} home market sales and do not substantiate their claims that [██████████ ] must indicate that the shrimp is not consumed in the home market." Remand Results at 15. Instead, "the record evidence simply indicates that Megaa Moda made sales to [██████████ ] that

differed only slightly from its other home market sales, and nothing on the record indicates that these sales could only have been meant for export." *Id.* Commerce cannot impute knowledge onto Megaa Moda that its sales were meant for export when there are no meaningful indicators that such sales were meant for export. *See INA Walzlager*, 957 F. Supp. at 263-64.

C.    [█████████████████████████████████████] Are Insufficient To Impute Knowledge To Megaa Moda That The Sales In Question Were Meant For Export

AHSTAC again repeats claims that [████████] status as an "exporter" and [████████] own reporting are sufficient to impute knowledge onto Megaa Moda, arguing that Megaa Moda knew that its customer was an exporter. AHSTAC Cmnts. at 17-18 (citing *INA Walzlager*, 957 F. Supp. at 265). However, unlike in *INA Walzlager*, when the respondent made sales to the customer based on the customer's "export price" list, AHSTAC merely makes a bare assertion. AHSTAC cites no evidence to substantiate its claim that Megaa Moda *knew* when it made the sales to [████████] that the sales were meant for export. To that end, [████████] own reporting is not particularly useful for determining whether *Megaa Moda* had knowledge because Megaa Moda would not know the particulars of [████████████████]. In other words, [████████] may have told Commerce that it used orders to repack for other orders, but there was no mention of Megaa Moda or communications with Megaa Moda on the record indicating that Megaa Moda's sales were used. *See* Remand Results at 17 ("There is insufficient record evidence here to determine whether Megaa Moda's sales to [████████] were further manufactured or repackaged.").

**D.    The Inapplicability Of [████████████████████] To Megaa Moda's Sale Of Unbranded Shrimp, And The Record Evidence As A Whole Demonstrate That Megaa Moda Did Not Have Actual Or Constructive Knowledge That Its Sales To [██████] Were Meant For Export**

AHSTAC "suggests", again without support, that "the fact that the contested sales were exempt from internal consumption taxes because they lacked a registered trade name cuts against any conclusion that they were sold for consumption."[6]  AHSTAC Cmnts. at 15-16.  Commerce explained in the remand results why this argument lacks merit.

On remand, Commerce issued a supplemental questionnaire to Megaa Moda requesting the relevant laws, regulations, or other legal framework that demonstrate that Megaa Moda's domestic sales of unbranded shrimp in India during the period of review did not incur Indian [████████████████].  *See* Supplemental Questionnaire.  In its response, Megaa Moda provided the Central Goods and Service Tax Act which gives the Indian government the power to exempt goods or services from [████████████████] by notification.  *See* Supplemental Questionnaire Resp.  Megaa Moda also provided the notifications that relate to shrimp, demonstrating that unbranded shrimp are exempt from [████████████████] during the period of review.  *Id.*  Based on this new information, Commerce reasonably concluded that "the applicability of {[████████████████]} on Megaa Moda's sales of unbranded shrimp to [██████] is based on whether the shrimp is branded or unbranded, and not based on whether the shrimp was intended for consumption in the domestic market, especially considering that these taxes are applicable to the intra-State sale of goods."  Remand Results at 9.

---

[6] ASPA, on the other hand, argued in its comments on the draft remand that the new information is neutral evidence that sales to [██████] were for home market consumption. *See* ASPA Draft Remand Comments at 6 (P.R.R. 5, C.R.R. 3).

In any event, AHSTAC repeats several arguments based on evidence that is at best neutral as to whether a sale was meant for export or meant for home market consumption. *See* AHSTAC Cmnts. at 15-16. But the knowledge test requires that Megaa Moda have actual or constructive knowledge that its sales to [ █████ ] were not for home consumption. As this Court has held, imputed or constructive knowledge implies that the information regarding knowledge must be derived from extrinsic sources, *INA Walzlager*, 957 F. Supp. at 265, such as packaging or labeling stating that merchandise was destined for another country. Remand Results at 13, 16. It was reasonable for Commerce not to find constructive knowledge when the facts are neutral. *Id.* at 15-16. In other words, the facts were neutral because "the product characteristics of the sales to [ █████ ]" are "neutral in their capacity to substantiate a finding that the sales to [ █████ ] were not for consumption in the home market." *Id.* at 16; *see also NSK Ltd. v. Koyo Seiko Co.*, 190 F.3d 1321 (Fed. Cir. 1999) ("While the supplier might have reasonably known that a minority of all {subject merchandise} purchased by Honda would end up in the United States, there was more than adequate evidence that the individual suppliers could not have known whether any of their {subject merchandise} would be among those so exported. This evidence included that Honda consigned its purchased {subject merchandise} into a general inventory from where they were shipped, as required, to destinations in Japan and abroad. Commerce's verification found no shipping markings or peculiarities with regard to the timing of orders that could have revealed that particular antifriction bearings were intended for shipment to the United States.").

## **CONCLUSION**

For these reasons, we respectfully request that the Court sustain Commerce's remand results and enter judgment in favor of the United States.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:

/s/ Kara M. Westercamp
KARA M. WESTERCAMP
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 305-7571
Email: Kara.M.Westercamp@usdoj.gov

RUSLAN KLAFEHN
Attorney
Office of the Chief Counsel
For Trade Enforcement & Compliance
U.S. Department of Commerce

March 7, 2025

*Attorneys for Defendant*

21

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that this brief complies with the Court's order regarding type-volume limitation rules. According to the word-count calculated by the word processing system with which the brief was prepared, the brief contains a total of 5,984 words.

March 7, 2025                                                  /s/ Kara M. Westercamp
                                                                      Kara M. Westercamp

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE THOMAS J. AQUILINO, JR., JUDGE

———————————————————————

| | |
|---|---|
| AD HOC SHRIMP TRADE ACTION COMMITTEE, | ) ) ) |
| Plaintiff, | ) ) |
| and | ) ) |
| AMERICAN SHRIMP PROCESSORS ASSOCIATION, | ) ) ) |
| Plaintiff-Intervenor, | ) ) |
| and | ) ) |
| MEGAA MODA PRIVATED LIMITED, | ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| MEGAA MODA PRIVATED LIMITED, | ) ) |
| Defendant-Intervenor, | ) ) |
| and | ) ) |
| AMERICAN SHRIMP PROCESSORS ASSOCIATION, et al., | ) ) ) |
| Defendant-Intervenors. | ) ) |

Consol. Court No. 23-00202

**ORDER**

Upon consideration of the Department of Commerce's final results of redetermination pursuant to remand, defendant's response in support thereto, and all other pertinent papers, it is hereby

ORDERED that the remand results are sustained in their entirety.

Dated: _____, 2025
       New York, NY                            _____
                                                JUDGE